**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **CURTIS LEVAR WELLS, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION:** |
| | ) | **42 U.S.C. § 1983** |
| **JAVIER FUENTES,** | ) | |
| Badge #1666 | ) | |
| | ) | |
| **SCOTT WANEK,** | ) | |
| Badge #1137 | ) | |
| | ) | |
| **MICHAEL P. ARMSTRONG,** | ) | |
| Badge #331 | ) | |
| | ) | |
| **ASHLEY BARNICKLE,** | ) | |
| Badge #1574 | ) | |
| | ) | |
| **LAUREN LUGASI,** | ) | |
| Badge #1625 | ) | |
| | ) | |
| **KIMBERLY SOULES,** | ) | |
| Badge #1630 | ) | |
| | ) | |
| **AUSTIN KLINE,** | ) | |
| Badge #1720 | ) | |
| | ) | |
| **JOHN VANAK,** | ) | |
| Badge #1399 | ) | |
| | ) | |
| **KEITH SHEPHERD,** | ) | |
| | ) | |
| **COUNTY OF ARLINGTON,** | ) | |
| | ) | |
| **ARLINGTON COUNTY POLICE** | ) | |
| **DEPARTMENT,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOHN AND JANE DOES 1-10,** | ) | |
| Defendants. | ) | |
| | ) | |

1

**COMPLAINT**

COMES NOW Plaintiff, Curtis Wells, by and through counsel, and for his Complaint against Defendants Javier Fuentes (Badge #1666), Scott Wanek (Badge #1137), Michael P. Armstrong (Badge #331), Ashley Barnickle (Badge #1574), Lauren Lugasi (Badge #1625), Kimberly Soules (Badge #1630), Austin Kline (Badge #1720), John Vanak (Badge #1399), Keith Shepherd, and John and Jane Does 1-10, respectfully alleges the following:

**PARTIES**

1.  At the time of the events herein described, Plaintiff Curtis Wells was a 20-year-old United States Army veteran who resided in Virginia.

2.  On February 9, 2020, Defendant Officer Javier Fuentes was an officer in the Arlington County Police Department, Badge #1666; in approximately March 2020, Officer Fuentes was no longer employed by the Arlington County Police Department and, on information and belief, moved to Broward, Florida.

3.  At the time of the events herein described, Defendant Detective Scott Wanek was an officer in the Arlington County Police Department, Badge #1137.

4.  At the time of the events herein described, Defendant Michael P. Armstrong was a military police officer with the Department of Defense at Fort Meyer, Badge #331.

5.  At the time of the events herein described, Defendant Ashley Barnickle was an officer in the Arlington County Police Department, Badge #1574.

6.  At the time of the events herein described, Defendant Lauren Lugasi was an officer in the Arlington County Police Department, Badge #1625.

7.  At the time of the events herein described, Defendant Kimberly Soules was an officer in the Arlington County Police Department, Badge #1630.

8. At the time of the events herein described, Defendant Austin Kline was an officer in the Arlington County Police Department, Badge #1720.

9. At the time of the events herein described, Defendant John Vanak was an officer in the Arlington County Police Department, Badge #1399.

10. At the time of the events herein described, Defendant Keith Shepherd was a detective working for the Department of the Army.

11. At the time of the events herein described Defendants John and Jane Does 1-10 were presently unknown individuals within the Arlington County Police Department or other associated individuals, who acted in concert with the named Defendants to deprive Plaintiff of his rights as described herein.

12. The foregoing Defendants were, as used in 42 U.S.C. § 1983, each individual persons acting under color of law and within the scope of their employment and authority of the United States federal government or the County of Arlington or the Arlington County Police Department, as applicable, and abused the same authority, as alleged herein, in violation of Plaintiff's rights, as outlined herein.

13. Each Defendant listed herein is sued in his or her individual capacity, as described in more detail herein.

14. The County of Arlington Defendant is a municipal subdivision of the Commonwealth of Virginia and liable for the injuries caused to Plaintiff, as described herein, pursuant to the holding in *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

15. The Arlington County Police Department is liable for the injuries caused to Plaintiff, as described herein, pursuant to the holding in *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

3

**JURISDICTION AND VENUE**

16.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343(a)(3) because Plaintiff's claims arise under 42 U.S.C. § 1983, the Second Amendment, the Fourth Amendment, the Fifth Amendment, and the Fourteenth Amendment to the United States Constitution.

17.  Jurisdiction is proper in this Court over the state law claims pursuant to 28 U.S.C. § 1367.

18.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the primary facts related to this matter took place within this judicial district, particularly, in Arlington County, Virginia.

**FACTS**

19.  On February 9, 2020, Mr. Wells was legally parked outside of Arlington Cemetery after going for a jog.

20.  At the same time and place, Defendant Officer Michael Armstrong, Badge #331 ("Armstrong"), a Fort Meyer military police officer, left Fort Meyer and parked his cruiser behind Mr. Wells, thereby impeding Mr. Wells from leaving; at that time and place, Armstrong had no reasonable suspicion, no articulable facts, and no probable cause to believe any crime had been committed.

21.  Furthermore, at the same time and place, Armstrong, as a military police officer, had no authority or jurisdiction to detain Plaintiff when he parked his cruiser behind Wells' vehicle.

22.  In response to later questions regarding why he detained Plaintiff and contacted the Arlington County Police Department, Armstrong said, *inter alia*:

> Again, when I first got out of the vehicle and made eye contact with him through his side view mirror, it was not, I would say his posture changed,

4

but there was just may be you've been pulled over, maybe you haven't, how do I put this?

You know when your kid does something wrong and you just kind of get the feeling that something is off, you don't know quite what they did yet?

That's the kind of feeling I had with that kind of look that something was just off that the individual did not appreciate a police officer being in his space at that time.

…

It's the demeanor, the excited mannerisms, the temporary tag, the location, the fact that he - I believe he said he was a prior servicemember.

One of those things alone doesn't necessarily mean that there's criminal activity afoot.

It's a combination of those factors that led me to believe that there was something more egregious.

…

Again, it's not just the demeanor.  It's the combination of all the factors and putting them together that led me to believe that something else more egregious was taking place, about to take place, or had taken place.

…

Again, it was just that feeling that you look at somebody and they are not very appreciative of having a law enforcement or a police officer in their presence.[1]

23.   Armstrong, while relying on irrational suppositions, bare assumptions based upon his biases and prejudice, and while viewing Plaintiff like a child, unlawfully detained Plaintiff.

24.   Armstrong detained Plaintiff, approached Plaintiff's vehicle, and placed Plaintiff in apprehension of the reasonable belief that he was being detained and not free to leave.

---

[1] Mot. To Suppress Hrn'g. Tr. 43:3 – 46:12, August 17, 2020.

25. While unlawfully detaining Plaintiff, Armstrong contacted the Arlington County Police Department and requested assistance because Armstrong had no jurisdiction to detain Mr. Wells.

26. Armstrong, without a warrant, without jurisdiction, and without reasonable suspicion, searched Plaintiff's vehicle, searched and seized Plaintiff's effects including Plaintiff's soft armor carrier, opened Plaintiff's soft armor carrier and extracted the Rifle Plate, described herein, and other items from it, and otherwise searched and seized items from Plaintiff's vehicle.

27. At the said time and place, a reasonable officer in Armstrong's circumstances would have known that he did not have authority to detain Plaintiff and would not have detained Plaintiff and would not have searched or seized Plaintiff's person, Plaintiff's vehicle, or Plaintiff's effects therein; Armstrong's conduct was grossly negligent, in reckless disregard for Plaintiff's rights, or was an intentional deprivation of Plaintiff's rights, as described herein.

28. Defendant Officer Javier Fuentes ("Fuentes") from the Arlington County Police Department responded to Armstrong's call to ACPD and pulled his vehicle behind Mr. Wells' vehicle.

29. Ultimately, Fuentes cited Plaintiff for non-moving traffic infractions and was not able to articulate any reasonable suspicion that anything other than a traffic infraction had occurred; the maximum fine for violation of Va. Code §46.2-613 was $76.00 at the time the citation was issued.

30. No item searched or seized by Armstrong and the ACPD officers on February 9, 2020, had any relation or any evidentiary value to the citations issued to Plaintiff.

6

31. Plaintiff was not arrested on February 9, 2020; however, he was placed in handcuffs, he was detained, his vehicle was searched without consent, reasonable suspicion, or probable cause, and numerous items of his personal property were taken by the Arlington County Police Department ("ACPD") with no valid legal reason.

32. Despite the lack of any suspicion of anything more serious than a minor traffic infraction occurring, Fuentes removed Plaintiff from his vehicle and asked whether there were any firearms in the vehicle; Plaintiff trusted the police and answered truthfully that he had a pistol and a rifle in the vehicle.

33. Fuentes removed the pistol and rifle without any reasonable suspicion that the firearms were used in any criminal act and without any suspicion that the firearms would lead to evidence of the traffic infractions for which Plaintiff was being investigated.

34. Fuentes seized and the ACPD held Plaintiffs' firearms in violation of the Second Amendment to the United States Constitution; the firearms were not returned to Plaintiff until April 16, 2021.

35. By seizing, without permission, and not returning, Plaintiff's firearms, Fuentes, the County of Arlington, and the Arlington County Police Department violated Plaintiff's clearly established rights protected by the Second Amendment to the United States Constitution; such unlawful seizure and holding of Plaintiff's firearms was grossly negligent, in reckless disregard for Plaintiff's rights, or was an intentional deprivation of Plaintiff's rights.

36. Fuentes turned over the inventory of the vehicle to other ACPD officers.

37. Lauren Lugasi ("Lugasi") Badge #1625, Kimberly Soules ("Soules") Badge #1630, Austin Kline ("Kline") Badge #1720, John Vanak ("Vanak") Badge #1399, and other

officers worked in concert of action or unlawfully aided and abetted other Defendants to unlawfully search, without legal justification or permission, Plaintiff's Ford Mustang and seize, without legal justification or permission, numerous items from the vehicle on February 9, 2020; such conduct by Lugasi, Soules, Kline, and Vanak was grossly negligent, in reckless disregard for Plaintiff's rights, or was an intentional deprivation of Plaintiff's rights.

38.   At a later hearing pursuant to the criminal charges against Plaintiff, when asked about the bases for the stop, searches, and seizures, Fuentes and Lugasi were unable to state any specific or articulable facts that reasonably warranted their intrusion into Plaintiff's rights.

39.   Plaintiff was handcuffed and detained outside of his vehicle; nothing in the vehicle could have had any evidentiary value to the suspected traffic infractions that were the initial basis of the stop; the officers opened numerous closed containers, to include opening a soft body armor carrier that contained a particular Rifle Plate that would be the subject of the false charge against Plaintiff.

40.   On February 9, 2020, Plaintiff's Ford Mustang was not towed to a police impound lot but was towed by Redman's Towing to Plaintiff's home; that is, it was not impounded, the searches and seizures were not incident to arrest nor were they inventory or safety searches incident to impoundment; no impound form was created by any ACPD officer for the February 9, 2020 event.

41.   On February 9, 2020, the officers' searches and seizures of Plaintiff's property was not conducted pursuant to an impound inventory or safety screening procedure; the officers were unable to articulate any valid reason for the searches and seizures on February 9,

2020; no warrant had issued for such searches and seizures.

42. Plaintiff's property was taken to the ACPD and held as "safekeeping."  Exhibit 1.

43. On February 10, 2020, the day after Plaintiff's vehicle was searched and the items were seized without a warrant, without reasonable suspicion, and without permission from Plaintiff, Detective Scott Wanek ("Wanek"), without a warrant, without reasonable suspicion that the items contained evidence of the traffic citations that Plaintiff received the day prior, and without permission, converted Plaintiff's property from safekeeping to evidence.  Exhibit 2.

44. On information and belief, Wanek opened numerous sealed containers without a warrant and in violation of the Fourth Amendment to the United States Constitution and in violation of Va. Code § 19.2-59.

45. Wanek and Detective Shepherd unreasonably believed, based upon bare assumption and speculation, that one Medium Ceradyne Rifle Plate with Serial Number 2923205 ("Rifle Plate")[2] was stolen from the United States government by Plaintiff.

46. Based upon Wanek's own investigation notes and statements in Court by Wanek and Shepherd, the Rifle Plate would, most likely, have been removed from service in approximately 2016; approximately four years prior to the time that Detective Wanek guessed Plaintiff stole the Rifle Plate from the United States government.

47. Wanek unreasonably speculated that items like the Rifle Plate were not commonly sold in civilian markets and he based upon such unreasonable speculation, he concluded that Plaintiff must have stolen it from the United States government.

---

[2] The rifle plates manufactured by Ceradyne Inc is a hard piece of ceramic that is inserted inside soft body armor to protect against rifle rounds such as the 5.56 NATO and 7.62 NATO rifle cartridges.

9

48. A cursory glance through civilian markets such as www.ebay.com, www.armslist.com, and others, would have demonstrated to Wanek that virtually identical used plates were for sale from as little as $65.00 per plate and historically being sold in civilian markets going back to, at least, 2015.

49. On information and belief, the manufacturer of the Rifle Plate also sold similar plates directly to civilians as supplier overrun.

50. Furthermore, Wanek falsely stated that he received evidence that the particular Rifle Plate in question was shipped to Ft. Myer and was at Ft. Myer at the same time that Plaintiff was at Ft. Myer; in reality, Wanek was operating based upon bare assumption and speculation.

51. With no evidence or reasonable suspicion that the Rifle Plate was stolen, no evidence or reasonable suspicion that the Rifle Plate ever made it to Ft. Myer, no evidence or reasonable suspicion that Plaintiff stole the Rifle Plate or knowingly received the Rifle Plate knowing it was stolen property, Wanek, on information and belief, made false statements to the magistrate to seek and receive an arrest warrant; such warrant issued on or about February 14, 2020, to arrest Plaintiff for receipt of stolen property pursuant to Va. Code § 18.2-108.  On information and belief, no written warrant affidavit or statement was made by Wanek on February 14, 2020, to the magistrate; or, in the alternative, no such affidavit or statement was preserved in the records.

52. Additionally, when cross-examined by Plaintiff's former criminal defense counsel Andrew Clarke, Detective Shepherd admitted the whole basis for arresting Plaintiff for receiving stolen property regarding this particular Rifle Plate and the conclusion that this Rifle Plate was at Ft. Myer when Plaintiff was at Ft. Myer was based upon bare

assumption and speculation:

> Question: So, did you tell Detective Wanek, around February 13, 2020, that this particular shipment of rifle plates were received by the U.S. Army at Aberdeen Proving Ground and, then, subsequently, transferred to the U.S. Army at Ft. Myer?
>
> Answer: That was the belief.  So, they were received by the United States Army at Aberdeen Proving Ground and, then, believed to have been shipped to Fort Meyer.
>
> Question: What are you basing that belief on?
>
> Answer: Assumption.
>
> Question: So, you're speculating?
>
> Answer: Yes.[3]

53.     The reasonable police officer operating in the circumstances in which Wanek and Shepherd operated would have known that operating based upon such bare assumption and speculation was a violation of Plaintiff's constitutionally protected rights and would result in Plaintiff's false arrest, false imprisonment, and the other harms and injuries described herein.

54.     On information and belief, Wanek lied under oath or omitted material information in his statements to Magistrate Allison Arnold to receive the arrest warrant on or about February 14, 2020.[4]

55.     In the alternative, Wanek failed to inform Magistrate Allison Arnold of exculpatory information and that the conclusion that the Rifle Plate could have been at Ft. Myer at the relevant time was based upon bare assumption and speculation.

56.     If Wanek had informed Magistrate Allison Arnold of the facts known to him at the time

---

[3] Prelim. Hrn'g Tr. 43:17 – 44:8, March 16, 2020.
[4] To Plaintiff's knowledge, no written affidavit was attached to the warrant application.

11

and that his conclusions were based upon bare assumption and speculation, it is more likely than not that no warrant would have issued.

57. A reasonably competent officer acting in Wanek's circumstances would have concluded that no warrant should have issued on these facts for the arrest of Plaintiff.

58. Additionally, Detective Shepherd testified that he contacted someone from Ceradyne Industries in February 2020; however, Ceradyne closed in January 2020 when it was purchased by Avon and is now known as Avon Protection Ceradyne; on information and belief, Avon has no records of any communications with Detective Shepherd, or anyone else investigating the cases against Plaintiff.

59. On August 31, 2020, Judge Judith L. Wheat of the Circuit Court of Arlington County granted a motion to suppress the evidence collected on February 9, 2020; subsequently the charge related to receipt of stolen property was dismissed in Plaintiff's favor.

60. Additionally, as but one example of the unreasonable nature of the Defendants' conduct and perspective of Plaintiff, the seizing officer noted that part of the items seized included "a handwritten list of chemical compounds that have potential to make the human body bulletproof or even invincible."

61. Plaintiff has made no such list and had no knowledge of any chemical compounds that have the potential to make the human body bulletproof or invincible; such unreasonable conduct of the Defendants is indicative of how reckless the Defendants were when investigating Plaintiff.

62. During the detention of Plaintiff's person and unlawful seizure of Plaintiff's effects on February 9, 2020, no warrant had yet issued to seize such effects and no officer had any reasonable suspicion, articulable fact, or probable cause to believe that the searched and

seized property was involved in or evinced that any crime had been committed.

63.   On or before February 18, 2020, the day that Plaintiff was arrested, Defendant Detective Wanek learned that the value of the Subject Plate was $471.38, below the threshold for charging felonious receipt of stolen goods; Detective Wanek falsely stated the value of the Rifle Plate in order to cause the arrest and search warrants to issue, to keep Plaintiff in holding as described herein, and to ensure Plaintiff would not be released because the false charge, derived from unlawfully obtained evidence, was, if a crime at all, a misdemeanor at most.

64.   On information and belief, Wanek did not correct the record and inform the magistrate of the new information.

65.   The Ceradyne Receiving Report received by Detective Wanek stated the value of the Rifle Plate as $471.38; such evidence was, initially, withheld from Plaintiff's criminal defense counsel in violation of *Brady* disclosure requirements.

66.   The withholding of such information, or the failure to correct the record, or the reckless disregard of Plaintiff's rights to have such information disclosed to the Magistrate, constituted independent violations of Plaintiff's rights, as described herein.

**FEBRUARY 18, 2020**
**UNLAWFUL ARREST AND**
**UNLAWFUL SEARCH AND SEIZURE OF PLAINTIFF'S PONTIAC**

67.   On February 18, 2020, Plaintiff met with Detective Wanek under Wanek's false pretense that Wanek was going to return Plaintiff's property to him; Plaintiff parked his 2008 Pontiac in the courthouse parking lot and walked to the property storage area in the Arlington County Police Department.

68.   Later that day at around 1:17 PM, Plaintiff's vehicle, a 2008 Pontiac, was seized and, on

13

information and belief, was searched without warrant.  A search warrant was issued at approximately 4:30 PM.

69. The 2008 Pontiac was legally parked in a public parking lot.

70. Corporal Ashley Barnickle Badge #1574 ("Barnickle"), the officer who requested and executed the warrant, had no reasonable suspicion to believe a crime had been committed in connection with the 2008 Pontiac, had no probable cause to believe that evidence of any crime was in the 2008 Pontiac, and had no probable cause to obtain the warrant to seize the vehicle or search it.

71. After arresting Plaintiff, Wanek gave the keys to the 2008 Pontiac to Barnickle; in her notes, she stated that she took custody of the 2008 Pontiac at approximately 1:17 PM, prior to the warrant to search or seize it had issued.  At that time, Barnickle, on information and belief, sat in the vehicle prior to its movement to the police impound lot, prior to the warrant issuing, and, on information and belief, Barnickle searched the vehicle because Barnickle stated in Paragraph 13 of her affidavit attached to the warrant application that the 2008 Pontiac "contained evidence to include a personal communication device."

72. Paragraph 13 of her Statement of Material Facts in support of her application for a search warrant was written differently from the other paragraphs; instead of stating she had the belief an iPhone "may be present" or that the car "may contain" the evidence, as the other paragraphs are phrased, she affirmatively stated, in the past tense, the 2008 Pontiac "contained" the iPhone.

73. Barnickle later stated in her supplement that the iPhone was taken from the center console and, therefore, it was not in plain view and, therefore, Barnickle could not have

14

known it was present without conducting an illegal search prior to obtaining the warrant.

74. The photographs of the vehicle taken during the search on the following day do not show the location of the iPhone.

75. Barnickle's affidavit fails to state any reasonable articulable suspicion of any fact sufficient to justify the search or seizure of the Plaintiff's 2008 Pontiac.

76. Furthermore, Barnickle's affidavit fails to inform the magistrate that she had already searched the vehicle, prior to the warrant issuing.

77. Furthermore, Barnickle's affidavit contained numerous false statements, material omissions, and otherwise contained errors or bare assumption or speculation.

78. Notably, Barnickle's affidavit falsely stated that Plaintiff was pointing at Ft. Myer when he was detained on February 9, 2020, falsely stated the vehicle was inventoried for the purposes of towing the Mustang, falsely stated the value of the Rifle Plate, falsely stated or implied that the Rifle Plate was shipped to Ft. Myer, and falsely stated that Plaintiff's vehicle had, "a handwritten list of chemical compounds that have potential to make the human body bulletproof or even invincible."

79. Thereafter, the ACPD allegedly discovered a black bag in Plaintiff's Pontiac containing drugs that Plaintiff had never seen nor possessed.

80. Three new charges for drug possession were filed against Plaintiff in approximately June 2020, coinciding with the previous charge for receiving stolen property (the Rifle Plate charge) being dismissed.

81. On information and belief, Barnickle, or another officer, had the motive, means, and opportunity to plant the bag of drugs in the map pocket of the vehicle prior to the photographs being taken the day after the vehicle was impounded.

82. All charges related to drug possession were dismissed in Plaintiff's favor.

83. On information and belief, the ACPD officers thoroughly searched Plaintiff's apartment and Plaintiff's electronic devices and found no evidence of any stolen goods, drugs, drug paraphernalia, or any other evidence demonstrating Plaintiff possessed any illicit drugs or stolen property.

### FEBRUARY 18, 2020, INTERVIEW OF PLAINTIFF

84. On February 18, 2020, Detective Wanek and a federal agent interviewed Plaintiff regarding the Rifle Plate.

85. At no time did Plaintiff admit he intentionally stole the Rifle Plate or that he knowingly received stolen goods.

86. Wanek stated, falsely, to the Court that Plaintiff, "recognized that it was a serialized piece of issued equipment from Fort Myer, and he indicated that he took it from someone in the barracks."[5]

87. Plaintiff stated in the recorded interview that he purchased the Rifle Plate from a man at an airsoft facility; however, after suffering the stress of being arrested and harassed by Wanek, who did not believe the truth, Wanek stated to Plaintiff that "the truth will set you free," and Plaintiff confirmed to Wanek if he admitted the Rifle Plate was in his possessions when he out-processed from the military, then Wanek would take the Rifle Plate and release Plaintiff.

88. Wanek's actions rose to the level of a promise to Plaintiff that he would release Plaintiff if Plaintiff admitted to taking the Rifle Plate.

89. Wanek's actions rose to the level of a non-prosecution agreement that Wanek breached;

---

[5] Preliminary Hrn'g. Tr. 67:17-20, March 16, 2020.

Plaintiff accepted Wanek's offer by falsely stating the Rifle Plate was mixed up with Plaintiff's property during the extremely disorderly out-processing from the Army when Plaintiff's property was not in his control and that the Rifle Plate was placed, by other people, with Plaintiff's property.

90.   At no time did Plaintiff admit he stole the Rifle Plate or knew it was stolen and received it; Plaintiff made a written statement, at Wanek's urging, admitting to the false series of facts that Wanek crafted, practically out of whole cloth.  Exhibit 3.

91.   Plaintiff's written statement expressly stated that he did not have any intent to steal the plate and did not state that he received stolen property, even in the fantasy created by Wanek.

92.   Plaintiff truthfully articulated that during his out-processing from the military, his personal property was moved out of his barracks room and placed in the hallway in disarray by others in his unit.

93.   Plaintiff then took Wanek's lead and falsely stated that the Rifle Plate was mixed into his personal property by someone else.

94.   Despite his promise that "the truth will set you free," Wanek arrested Plaintiff on February 18, 2020.

**SUMMARY**

95.   Based upon the foregoing violations of Plaintiff's Second Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights, four charges were brought against Plaintiff in cases numbered CR20000235-00, CR20000418-00, CR20000419-00, and CR20000444-00 in Arlington County.

96.   As a direct and proximate result of Defendants' conduct described herein, Plaintiff was

maliciously prosecuted and falsely imprisoned from February 18, 2020, to September 9, 2020.

97. All Defendants described herein acted in a concert of action through a series of transactions or aided and abetted the other Defendants to deprive Plaintiff of his constitutionally and statutorily protected rights, as described herein.

98. All charges against Plaintiff in the above-listed cases were resolved in Plaintiff's favor.

99. As a direct and proximate result of Defendants' concerted conduct, as described herein, Plaintiff suffered the following injuries, losses, or damages:

    a. $134,000.00 because of lost income from Plaintiff's employer United Solutions Inc. for the duration of Plaintiff's wrongful incarceration.

    b. $4,000,000.00 because of the loss of Plaintiff's liberty for the time period of February 18, 2020, through September 9, 2020.

    c. $2,000,000.00 because of the violations of Plaintiff's Fourth Amendment rights.

    d. $500,000.00 because of the violations Plaintiff's Second Amendment rights.

## **LEGAL STANDARD**

100. The civil rights claims stated herein against Defendants are based upon 42 U.S.C. § 1983, which states, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

101. The Second Amendment to the United States Constitution provides,

> A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed.

102. The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized[.]

103. The Fifth Amendment to the United States Constitution provides, in relevant part,

> No person shall [] be deprived of life, liberty, or property, without due process of law[.]

104. The Fourteenth Amendment to the United States Constitution provides, in relevant part,

> [No state shall] deprive any person of life, liberty, or property, without due process of law[.]

<u>**COUNT ONE**</u>
**UNLAWFUL SEARCHES AND SEIZURES**
**FALSE ARREST, MALICIOUS PROSECUTION, FALSE IMPRISONMENT**
**(Violation of the Fourth Amendment, Fourteenth Amendment, 42 U.S.C. § 1983, Va. Code § 19.2-59, and under the Common Law of the Commonwealth of Virginia.)**

105. Plaintiff realleges and incorporates the foregoing paragraphs as if restated fully herein.

106. At all times relevant hereto, Plaintiff possessed the clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures and to be secure in his person, personal effects, and property.

107. At all times relevant hereto, Plaintiff possessed the clearly established rights under the Fifth Amendment and Fourteenth Amendment to the United States Constitution to be free from deprivation of his liberty or property rights without due process of law.

108. "No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer. Any officer or other person searching any place, thing or person otherwise than by virtue of and under a search

warrant, shall be guilty of malfeasance in office. Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages."  Va. Code § 19.2-59.

109.   "At the time a person is arrested, the facts and circumstances within the officer's knowledge must warrant the belief of a prudent person that the arrestee had committed or was committing an offense."  *Cromartie v. Billings*, 298 Va. 284, 300, 837 S.E.2d 247, 256 (2020).

110.   "The Supreme Court of the United States has held that an officer may not conduct a 'vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle.'  In the same case, the Court also concluded that 'circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.'"  *Cromartie v. Billings*, 298 Va. 284, 298, 837 S.E.2d 247, 254-55 (2020) (quoting *Arizona v. Gant*, 556 U.S. 332, 335, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)).

111.   On February 9, 2020, Plaintiff was being investigated for expired tags and non-moving civil infractions.

112.   Under color of law, Defendants committed acts aiding and abetting the other Defendants, as described herein, to violate, *inter alia*, Va. Code § 19.2-59 and in violation of Plaintiff's rights as described in the Common Law of the Commonwealth of Virginia to include, without limiting, unlawful searches, unlawful seizures, malicious prosecution, false arrest, and false imprisonment, as described herein.

113.   Under color of law, Defendants, acting in concert of action or through a series of related transactions or occurrences or aided and abetted other Defendants in their unlawful

conduct, deprived and infringed upon Plaintiff's clearly established rights secured by the United States Constitution, or other federal and state law to include the Common Law of the Commonwealth of Virginia, in, at least, the following ways:

a. Without probable cause, reasonable suspicion, or specific and articulable facts, or any exception applicable to the Fourth Amendment or Va. Code § 19.2-59 requirements, Defendants searched and seized Plaintiff's person and effects on February 9, 2020, including, without limiting, the items seized from Plaintiff's Ford Mustang.

b. By unlawfully seizing the Plaintiff and holding him against his will on February 9, 2020, during the search of his vehicle, Defendants deprived him of his liberty without due process of law and in violation of Va. Code § 19.2-59.

c. By unlawfully obtaining search warrants without probable cause, and on information and belief, by making false statements to the magistrate, and by withholding exculpatory evidence and information from the magistrate, Defendants caused the arrest of Plaintiff's person on February 18, 2020, the search of his home, the search of his 2008 Pontiac, and the seizure of the Plaintiff's property, as described herein.

d. Each Defendant conspired with or aided and abetted other Defendants and John and Jane Does 1-10, for the time period of February 9, 2020, through the final dismissal of all counts, to deprive Plaintiff of his rights, of impeding and hindering the due course of justice by withholding *Brady* evidence, and withholding material and relevant information from judicial officers, to include magistrates, and did so with the intent to deny Plaintiff due process under the law.

114. Detective Wanek, and the other Defendants, worked in concert to falsify warrant affidavits or recklessly omitted material information that resulted in falsehoods, made

those statements or omissions deliberately, or, in the alternative, with a reckless disregard

for the truth, and such false statements or omissions were material or necessary to the

finding of probable cause for the arrest warrant and search warrants including, without

limiting:

a. Falsely stating that Defendants had information that the Rifle Plate was not available

to civilians, or recklessly concluding that the Rifle Plate was not available to

civilians;

b. Recklessly relying upon bare assumption and speculation for the finding of probable

cause;

c. Falsely stating that the Rifle Plate was documented to be in Ft. Myer at the same time

as Plaintiff; or omitting that bare assumption and speculation were the sole basis for

the conclusion that the Rifle Plate was present at Ft. Myer when Plaintiff was; and,

d. Falsely stating or omitting evidence, or failing to correct the record, regarding the

actual value of the Rifle Plate.

115. Because of the information Wanek and Shepherd had discovered regarding the value of

the Rifle Plate, the fact that they were operating upon bare assumption and speculation,

that they were not aware of any fact that the Rifle Plate was stolen, and not aware of any

fact that Plaintiff knew or believed the Rifle Plate was stolen, it was obvious that no

reasonably competent officer would have concluded that the warrants described herein

should issue.

116. But-for Defendants' conduct in violation of Plaintiff's rights, as described herein, and

but-for Defendants' dishonest statements, material omissions, or reckless disregard for

the truth in their statements under oath to magistrates, no warrant would have issued to

arrest Plaintiff and no warrant would have issued to search his Pontiac, home, or

Mustang, and to seize his property.

117.  As a direct and proximate result of the concerted unlawful and malicious searches and

seizures described herein, Defendants and John and Jane Does 1-10 deprived Plaintiff of

his liberty and property without due process of law in violation of the Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and *inter*

*alia*, Va. Code § 19.2-59 resulting in Plaintiff being falsely imprisoned from February 18,

2020, through September 9, 2020.

118.  Defendants, acting individually and in concert, acted to initiate criminal prosecution

against Plaintiff and each Defendant made, influenced, or participated in the decision to

prosecute.

119.  There was no probable cause for the criminal prosecution against Plaintiff.

120.  Because of the criminal prosecution of Plaintiff, Plaintiff suffered a deprivation of liberty

from February 18, 2020, through September 9, 2020, and all charges were resolved in

Plaintiff's favor.

121.  The conduct of the Defendants, described herein, violated clearly established

constitutional rights of the Plaintiff that were clearly established during the timeframe

described herein.

122.  No reasonable officer would have thought that the Defendants' actions, described herein,

were constitutional; no reasonable officer would have thought that the Defendants'

actions, described herein, were in accord with Plaintiff's rights, as described herein,

during the timeframe described herein.

123.  In the alternative, and without waiving the foregoing, the searches and seizures described

herein constituted reckless or callous indifference to Plaintiff's federally protected rights.

## COUNT TWO
## UNLAWFUL SEIZURE OF PLAINTIFF'S ARMS

124. Plaintiff realleges and incorporates the foregoing paragraphs as if restated fully herein.

125. Fuentes individually and in concert with the other Defendants, unlawfully seized and held Plaintiff's firearms in violation of the Second Amendment to the United States Constitution from February 9, 2020, through April 16, 2021.

126. In *District of Columbia v. Heller*, the Supreme Court of the United States held that the right to keep and bear arms is an individual right protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

127. Thus, Fuentes' conduct, in concert with the other Defendants, as described herein, was a violation of a federally protected right as described in 42 U.S.C. § 1983; such right was clearly established for the duration of the seizure and continued deprivation and a reasonable officer would have known such right was clearly established in the Defendants' position.

128. The seizure of Plaintiff's rifle and pistol from his vehicle on February 9, 2020, was a violation of Plaintiff's clearly established constitutional right to keep and bear arms.

129. A reasonable officer in all Defendants' circumstances would have known that the seizure and continued holding of Plaintiff's rifle and pistol from February 9, 2020, through April 16, 2021, was a continuing violation of Plaintiff's clearly established Second Amendment right to keep and bear arms.

130. On information and belief, Defendants were aware, as early as February 9, 2020, that the firearms were not stolen, that Plaintiff was the lawful purchaser of both firearms, and, on information and belief, Defendant Fuentes, or another officer, ran an electronic trace on

both firearms and found them to be lawfully purchased by Plaintiff.

131. On information and belief, the reasonable police officer operating in Defendants' position would reasonably have been aware on, or as early as, February 9, 2020, that the firearms were not stolen, that Plaintiff was the lawful purchaser of both firearms, and Defendant Fuentes and Defendant Wanek, working in concert of action with the other Defendants, held the firearms through April 16, 2021, knowing Plaintiff lawfully purchased them.

132. There existed no valid legal excuse to seize Plaintiff's firearms on February 9, 2020; Plaintiff requested, and was lawfully permitted to have, the Defendants release his property to him; Plaintiff was lawfully able to open carry his firearms on February 9, 2020, and there existed no suspicion that the firearms were related to the traffic citations for which Plaintiff was being investigated.

133. In the alternative, and without waiving the foregoing, the seizure and holding of Plaintiff's rifle and pistol described herein constituted a reckless or callous indifference to Plaintiff's Second Amendment rights.

## COUNT THREE
### *BIVENS* ACTION
### Defendant Shepherd

134. Plaintiff realleges and incorporates the foregoing paragraphs as if restated fully herein.

135. On February 9, 2020, and through the duration of the investigation and actions as described herein, Plaintiff possessed the clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure.

136. On February 9, 2020, and through the duration of the investigation and actions as described herein, Plaintiff possessed the clearly established rights under the Fifth Amendment to the United States Constitution to be free from deprivation of his liberty without due process of law.

25

137. The Supreme Court of the United States has held that a plaintiff may prosecute an action for money damages for injuries caused by federal officials for violations of Fourth Amendment rights. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

138. Under color of law, Defendant Shephard, as an employee of the Department of the Army working as a detective, deprived and infringed upon Plaintiff's clearly established rights secured by the United States Constitution as described herein.

139. Defendant Shephard acted in concert of action with the other Defendants or aided and abetted the unlawful conduct of the other Defendants, as described herein, to deprive Plaintiff of his clearly established rights, or, in the alternative, and without waiving the foregoing, Defendant Shepherd's actions as described herein constituted a reckless or callous indifference to Plaintiff's Fourth and Fifth Amendment rights.

140. Defendant Shephard's conduct of relying on bare assumption and speculation in tracing the pathway of the Rifle Plate to concoct the conclusion that Plaintiff stole the Rifle Plate from the U.S. Government amounts to a violation of his Fourth and Fifth Amendment rights.

141. A reasonable officer in Defendant Shepherd's circumstances for the duration of the events described herein, would know that operating based upon bare assumption and speculation, without any reasonable suspicion or articulable fact, would amount to violations of Plaintiff's clearly established Fourth and Fifth amendment rights.

142. Because of Defendant Shepherd's conduct in concert of action and in aiding and abetting the other Defendants, as described herein, Plaintiff suffered the numerous violations of his property rights and liberty rights, as described herein, and Defendant Shepherd's conduct caused or substantially contributed to, *inter alia*, Plaintiff's

injuries described herein, to include the harm of being falsely arrested, maliciously prosecuted, and held from February 18, 2020, to September 9, 2020.

**COUNT FOUR**
***BIVENS* CLAIM**
**Defendant Armstrong**

143. Plaintiff realleges and incorporates the foregoing paragraphs as if restated fully herein.

144. On February 9, 2020, Plaintiff possessed the clearly established rights under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure.

145. On February 9, 2020, Plaintiff possessed the clearly established rights under the Fifth Amendment to the United States Constitution to be free from deprivation of his liberty without due process of law.

146. The Supreme Court of the United States has held that a plaintiff may prosecute an action for money damages for injuries caused by federal officials for violations of Fourth Amendment rights. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

147. Under color of law, Defendant Armstrong, as a military police officer, deprived and infringed upon Plaintiff's clearly established rights secured by the United States Constitution, or other federal law, by, at least, blocking Plaintiff's vehicle so as to detain Plaintiff and to search and seize Plaintiff and his effects.

148. Defendant Armstrong, as a military police officer, lacked any jurisdiction or authority to detain Plaintiff on February 9, 2020, because Plaintiff was not on federal property.

149. By his own admission, and as corroborated by Defendant Fuentes, Defendant Armstrong used his vehicle to block Plaintiff's vehicle on February 9, 2020.

150. A reasonable officer in Defendant Armstrong's circumstances on February 9, 2020,

would have known that blocking Plaintiff's vehicle as he did was a violation of Plaintiff's clearly established Fourth and Fifth amendment rights.

151. Defendant Armstrong acted in concert of action with the other Defendants, as described herein, to deprive Plaintiff of his clearly established rights, or, in the alternative, and without waiving the foregoing, Defendant Armstrong's actions as described herein constituted a reckless or callous indifference to Plaintiff's Fourth and Fifth Amendment rights.

152. Because of Defendant Armstrong's conduct, as described herein, Plaintiff suffered the numerous violations of his property rights and liberty rights, as described herein, and Defendant Armstrong caused or substantially contributed to, *inter alia*, Plaintiff's injuries described herein, to include the harm of being falsely arrested, maliciously prosecuted, and held from February 18, 2020, to September 9, 2020.

## COUNT FIVE
### *MONELL* CLAIM
### COUNTY OF ARLINGTON
### ARLINGTON COUNTY POLICE DEPARTMENT

153. Plaintiff realleges and incorporates the foregoing paragraphs as if restated fully herein.

154. A municipality and police department may be liable for the unconstitutional conduct of its law enforcement officers for its formal policies, informal customs arising to law or policy, and if it fails to train its officers. *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

155. Defendants Fuentes, Wanek, Barnickle, Lugasi, Soules, Kline, and Vanak were, at the relevant times described herein, employees or agents of the County of Arlington and the Arlington County Police Department and acted pursuant to the policies, practices, informal customs, or acted without sufficient training or supervision by

their employers or managers, and the foregoing resulted in the unconstitutional acts herein described that resulted in or substantially contributed to the harms, injuries, and damages suffered by Plaintiff as described herein.

156. The County of Arlington and Arlington County Police Department's policies, practices, informal customs, and failure to train its officers in the constitutional rights of American citizens resulted in the harms and injuries Plaintiff suffered, as described herein.

157. Specifically, the policy, practice, and customs evidenced by the manners in which Wanek and Barnickle sought and obtained the warrants described herein directly and proximately caused Plaintiff to suffer the harms and injuries, as described herein.

158. Furthermore, the lack or insufficiency of oversight, auditing, or other review of the policy, practice, or customary conduct of Wanek and Barnickle in their warrant application processes resulted in the numerous constitutional violations described herein.

159. The lack or insufficiency of a review of the ACPD's seizing and holding Plaintiff's person from February 18, 2020, to September 9, 2020, on, at most, a misdemeanor charge resulted in the numerous constitutional violations described herein.

160. The custom or practice in the ACPD that resulted in, on information and belief, Barnickle having access to Plaintiff's vehicle on February 18, 2020, prior to any photographs being taken, documenting the contents of the vehicle, resulted in, in part, the numerous constitutional violations described herein.

**WHEREFORE**, the premises considered, Plaintiff Curtis Wells prays this Honorable Court enter judgment in favor of Plaintiff Curtis Wells and against Defendants Javier Fuentes, Scott Wanek, Michael P. Armstrong, Ashley Barnickle, Lauren Lugasi, Kimberly Soules, Austin

Kline, John Vanak, Keith Shepherd, County of Arlington, Arlington County Police Department, and John and Jane Does 1-10, jointly and severally, as follows:

    a.  $6,134,000.00 in compensatory damages;

    b.  Costs related to bringing this action;

    c.  Attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988 *et seq*;

    d.  All other and additional remedies, damages, or harms as allowable by law and determined by a jury to be just in light of the circumstances; and,

    e.  Such other and additional relief as the Court may deem reasonable and just; plus,

    f.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law punitive damages against Javier Fuentes;

    g.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law punitive damages against Scott Wanek;

    h.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law punitive damages against Michael P. Armstrong;

    i.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law punitive damages against Ashley Barnickle;

    j.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law punitive damages against Lauren Lugasi;

    k.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law punitive damages against Kimberly Soules;

    l.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law punitive damages against Austin Kline;

    m.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law

punitive damages against John Vanak; and

n.  $350,000.00 in punitive damages pursuant to Va. Code § 19.2-59 and common law

punitive damages against Keith Shepherd.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES.**

**Dated February 8, 2022.**

Respectfully submitted,

Curtis Wells,

By:_____/s/_____
Counsel

Matthew A. Crist, VSB No. 85922
mcrist@MACPLLC.net
Matthew A. Crist, PLLC
10432 Balls Ford Rd., Suite 300
Manassas, VA 20109
(571) 551-6859
***Counsel for Plaintiff***