**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| CURTIS LEVAR WELLS JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:22-cv-00140-MSN-IDD |
| | ) | |
| JAVIER FUENTES, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS'**
**MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Curtis Levar Wells Jr. brings claims against Department of the Army ("DA") civilian law enforcement officers Michael P. Armstrong and Keith Shepherd, as well as against the United States of America (hereinafter collectively "Federal Defendants"), among others, relating to his arrest and subsequent investigation by local law enforcement. Specifically, Plaintiff faults Officer Armstrong for checking on his welfare, and then for reporting Plaintiff's suspicious behavior to local law enforcement, who subsequently discovered firearms and a military grade rifle plate in Plaintiff's possession. And Plaintiff subsequently faults Detective Shepherd for investigating whether Plaintiff took a rifle plate from the military—something Plaintiff himself later admitted. In his Second Amended Complaint, Plaintiff brings claims both against the officers individually under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and against the United States for the acts of the officers under the Federal Tort Claims Act ("FTCA"). However, those claims (Counts 1, 3-4, 6-7, 9) fail for myriad reasons.

As repeatedly held by the Supreme Court, *Bivens* claims are disfavored. To start, Plaintiff's claims against both officers are "meaningfully different" than those recognized in prior Supreme Court *Bivens* precedent, and there are special factors counseling hesitation against the creation of a new *Bivens* remedy under these circumstances. Even assuming the Court could extend *Bivens* to these newfound circumstances against DA civilian law enforcement officers, Officer Armstrong and Detective Shepherd are entitled to qualified immunity as Plaintiff's allegations do not establish a constitutional violation at all against these federal officers, let alone a *clearly established* constitutional violation. To the contrary, Officer Armstrong had a brief encounter with Plaintiff that did not constitute a seizure under the Fourth Amendment and that was otherwise permitted under the "community caretaker" exception. Likewise, the claims against Detective Shepherd fail to allege any specific impropriety and fault him for making a common sense inference of how Plaintiff came into possession of a military

1

grade rifle plate.

Plaintiff's FTCA claims against the United States (Counts 3-4, 9) fare no better. At the outset, Plaintiff's claims fail for lack of subject matter jurisdiction as he challenges inherently discretionary investigative and law enforcement activities. Further, the Court lacks subject matter jurisdiction over the malicious prosecution claim against Detective Shepherd under the doctrine set out in *Feres v. United States*, 340 U.S. 135 (1950), as this investigation of Plaintiff arose from and distinctly concerned Plaintiff's status as a former military member. Even if Plaintiff could avoid these jurisdictional defects, his tort claims still must be dismissed as Plaintiff fails to plausibly plead an actionable false arrest and/or malicious prosecution claim for much of the same reasons that he fails to plead claims against the officers in their individual capacities. This Court should thus dismiss all of Plaintiff's claims against Federal Defendants for failure to state a claim and for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiff Curtis Wells' Second Amended Complaint alleges a series of events relating to the search of his car by local law enforcement on February 9, 2020, and the ensuing investigation and events that followed that search. *See generally* ECF No. 48 (hereinafter "Second Amended Complaint" or "SAC").[1] As relevant to Federal Defendants, Plaintiff's claims center on the alleged conduct of DA civilian police officer Michael P. Armstrong and DA civilian detective Keith Shepherd, which Federal Defendants will focus on in reciting the facts. *See* SAC ¶¶ 10, 16.

*i. Allegations as to Officer Armstrong.*

According to Plaintiff, he was sitting in his Ford Mustang in a parking lot immediately adjacent to Arlington Cemetery on February 9, 2020, after having jogged in the area and was "drinking his

---

[1] Consistent with the standard governing motions to dismiss, the following factual discussion generally accepts all non-conclusory factual allegations in the Second Amended Complaint as true except where Plaintiff relies on incorporated material that provides additional context for his claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

smoothie peacefully." SAC ¶¶ 1, 7, 26, 35. Plaintiff alleges that Officer Michael Armstrong, a Fort Myer DA civilian police officer, drove his cruiser up to Plaintiff's vehicle and parked behind him before beginning to question him. SAC ¶¶ 35, 37-38. As discussed by Officer Armstrong at a subsequent motion to suppress hearing that Plaintiff incorporates by reference into his Second Amended Complaint, *see* SAC ¶ 38,[2] Officer Armstrong was assigned to Arlington National Cemetery on February 9, 2020, to provide law enforcement presence. *See* Ex. 1 10:10-14.

While patrolling the area, Officer Armstrong observed Plaintiff's vehicle against the fence line outside of Arlington National Cemetery and observed Plaintiff "moving around erratically" in the vehicle, which concerned Armstrong given the possibility that Plaintiff could have been suffering from a medical emergency or otherwise been in need of vehicular assistance and given Plaintiff's proximity to a military installation (Fort Myer) in case Plaintiff was emotionally disturbed. Ex. 1 11:19-12:4, 13:3-10. Officer Armstrong then parked behind Plaintiff's vehicle without turning on any sirens. Ex. 1 15:3-12. Subsequently, Officer Armstrong approached the vehicle and interacted with Plaintiff briefly to make sure that he was alright, whereupon Plaintiff said that he was in the area "to observe the beautiful scenery of the cemetery." Ex. 1 17:1-6, 42:1-11. After Officer Armstrong asked Plaintiff if he was in the military and Plaintiff confirmed that he had previously served, Officer Armstrong observed and noted for Plaintiff that the temporary tag on his car had expired in October 2019. Nevertheless, Officer Armstrong otherwise did not inform Plaintiff that he was not free to leave or that he was

---

[2] Because the Second Amended Complaint incorporates the hearing transcript by reference and quotation, it is attached as Exhibit 1. *See, e.g.*, *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020) ("Without converting a motion to dismiss into a motion for summary judgment, a court may consider the attachments to the complaint, documents incorporated in the complaint by reference, and documents 'attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" (quoting *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007))).

Plaintiff's motion to suppress was ultimately granted after the state court concluded that a subsequent inventory search conducted by state police did not meet the requirements of the Fourth Amendment under Virginia state law. *See* ECF No. 23-3.

being detained, and Armstrong did not ask Plaintiff to exit his vehicle. Ex. 1 18:1-8, 22:9-11, 48:10-13. The interaction lasted less than a minute, after which Officer Armstrong went back to his vehicle and moved it from the rear of Plaintiff's vehicle to an open parking space a few vehicle lengths back. Ex. 1 18:10-12, 20:20-21:7, 64:10-15, 66:10-16.

According to Officer Armstrong, he had concerns based on his interaction with Plaintiff as Plaintiff was sitting in an odd location near Arlington Cemetery, had an expired tag, and expressed an excitable demeanor when he saw Officer Armstrong. Ex. 1 18:19, 20:1-9. Based on these concerns, Armstrong radioed for assistance from the Arlington County Police Department ("ACPD") after he returned to his patrol vehicle and backed away from Plaintiff, reporting information on Plaintiff's vehicle and that it had expired tags. Ex. 1 20:10-15, 48:18-49:4. Following this communication, Officer Armstrong estimated that he waited about 10 minutes before an ACPD officer, Officer Fuentes, arrived, whereby Armstrong told Fuentes about his prior interaction with Plaintiff. Ex. 1 50:19-53:8.

As Plaintiff himself alleges, Officer Fuentes responded to the call and subsequently approached Plaintiff, which led to Plaintiff being handcuffed and cited by ACPD officers and his vehicle then being searched by ACPD officers. *See* SAC ¶¶ 45-58; Ex. 1 81-82.[3] In Officer Fuentes' testimony at the same motion to suppress hearing, Fuentes recounted that he saw a ballistic rifle plate (hereinafter "Rifle Plate") in Plaintiff's vehicle—something Fuentes viewed as suspicious considering that such items are used to stop bullets—which eventually prompted a search of the vehicle. Ex. 1 80:13-82:9; SAC ¶ 81 n.8. That search ultimately uncovered several firearms and some other items, including the Rifle Plate that Officer Fuentes had seen in Plaintiff's vehicle. Ex. 1 44:12-15; SAC ¶ 66.

---

[3] Plaintiff's allegations are not entirely clear as to whether Armstrong searched and detained Plaintiff's vehicle, *see* SAC ¶¶ 43-44, as the remainder of his Second Amended Complaint notes that ACPD officers were the ones who handcuffed Plaintiff and searched his vehicle, *see* SAC ¶¶ 47-54. Similarly, the motion to suppress transcript that Plaintiff references reflects that it was ACPD officers that handcuffed Plaintiff and searched his vehicle.

*ii. Allegations as to Detective Shepherd.*

While not entirely clear from Plaintiff's pleadings, he appears to allege that Detective Keith Shepherd, "a detective working for the Department of the Army" became involved in an investigation of Plaintiff on the suspicion that that the Rifle Plate recovered from Plaintiff's vehicle "was stolen from the United States government by [Plaintiff]." SAC ¶¶ 16, 81. In particular, the suspicion was that Plaintiff had stolen the Rifle Plate from Fort Myer when he left the military. *See, e.g.*, SAC ¶¶ 138-139. Plaintiff's allegations do not provide a clear timeline of Detective Shepherd's involvement, which appear to relate to Shepherd's investigation of allegations of stolen military property as a DA detective; instead, Plaintiff merely alleges that "Shepherd . . . [provided] misleading information to the Commonwealth's Attorney's office relating to what documentation he possessed and receipts falsely implying that the Rifle Plate was known to have shipped to Mr. Wells' [military] unit while he was present at that unit." SAC ¶ 213. Plaintiff, however, does not specify what "misleading information" Detective Shepherd passed on. He separately alleges that Detective Shepherd "operat[ed] based upon bare assumption and speculation" in assuming "that [Plaintiff] stole the Rifle Plate from the U.S. Government" and that the Rifle Plate had been shipped to Fort Myer. SAC ¶¶ 88, 231-232. In contradiction to his explicit use of the term "assumption," Plaintiff claims that "the Rifle Plate [found in his possession] would, most likely, have been removed from service in approximately 2016," SAC ¶ 82, but Plaintiff does not expound why that would have been so.

In addition, Plaintiff alleges that Detective Shepherd "testified that he contacted someone from Ceradyne Industries in February 2020" but that Ceradyne—the company that made the Rifle Plate, SAC, ¶ 81 & n.8—closed and merged with another entity in January 2020 and that purely "on information and belief," the successor entity to Ceradyne had "no records of any communications with Detective Shepherd." SAC ¶ 94. Plaintiff's allegations again though do not explain what the importance of this detail is or the source of Plaintiff's belief that Detective Shepherd did not contact

Ceradyne Industries or a successor entity. Despite Plaintiff's allegations in his Second Amended Complaint about the potential, alternative origins of his Rifle Plate, Plaintiff attached to his pleadings a written statement where he admitted to possessing the Rifle Plate upon leaving the military and not returning it upon being discharged. *See* ECF No. 1-3; SAC ¶ 142.

*iii. Plaintiff's Lawsuit.*

Plaintiff filed this lawsuit on February 8, 2022 against Armstrong and Shepherd among others. On August 22, 2022, Plaintiff filed the operative Second Amended Complaint adding the United States of America as a defendant. *See* SAC. This motion to dismiss on behalf of Federal Defendants follows.

## LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1).

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Lack of subject matter jurisdiction is raised in a motion under Federal Rule of Civil Procedure 12(b)(1). *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1994). Under Rules 12(b)(1) and 12(h)(3), a court must grant a motion to dismiss if it lacks subject matter jurisdiction over a claim. The burden of proving subject matter jurisdiction rests with plaintiff. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

### B.    Federal Rule of Civil Procedure 12(b)(6).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of the complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)  In considering a Rule 12(b)(6) motion, the Court should "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor." *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). The Court, however, is not required to accept legal conclusions as true. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). "[C]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

A complaint should be dismissed for failure to state a claim upon which relief may be granted if the plaintiff fails to meet his obligation to provide the grounds for entitlement to relief. *Twombly*, 550 U.S. at 555. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; rather, the plaintiff must allege facts that are sufficient "to state a claim to relief that is *plausible on its face*." *Twombly*, 550 U.S. at 555, 570 (emphasis added).

## ARGUMENT

I.   **Plaintiff's *Bivens* Claims Against Defendants Shepherd and Armstrong (Counts 6-7) Should Be Dismissed.** [4]

a.   **This Court Should Not Extend *Bivens* to these Circumstances.**

Plaintiff's claims against Shepherd and Armstrong should be dismissed at the outset because they would represent an extension of existing Supreme Court *Bivens* caselaw and there are special factors weighing against extending a *Bivens* remedy to these circumstances. The history of *Bivens* is undoubtedly familiar to this Court, but bears repeating to explain why no such implied cause of action lies here. In 1971, *Bivens* "broke new ground" by recognizing, without any statutory authorization from

---

[4] Plaintiff also includes Officer Armstrong as a named defendant under Count I brought under 42 U.S.C. § 1983, but this statutory "section is not applicable to Federal officers." *Howard v. Warden, Petersburg Reformatory*, 348 F. Supp. 1204, 1205 (E.D. Va. 1972). Count I should be dismissed in its entirety against Officer Armstrong and any claims against him in his individual capacity are only brought properly under *Bivens*. *See Giancola v. State of W.Va. Dep't of Pub. Safety*, 830 F.2d 547, 550 (4th Cir. 1987) ("[T]he allegations against the federal officials will be treated as if they were properly pled *Bivens* claims.").

Congress, an implied cause of action for damages against federal agents who allegedly violated the Fourth Amendment. *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). "In the decade that followed," the Supreme Court recognized two other limited circumstances in which there were such implied causes of action. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Those other circumstances are:

> In *Davis v. Passman*, 442 U.S. 228 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The [Supreme] Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. And in *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The [Supreme] Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment.

*Abbasi,* 137 S. Ct. at 1854-55 (citations omitted). In the last 50 years, thus, "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 1855; *see also Hernandez*, 140 S. Ct. at 742-43. Consequently, "expanding the *Bivens* remedy is . . . a 'disfavored' judicial activity." *Abbasi,* 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675)). So much so that the Supreme Court has observed that, if the trio of *Bivens* cases had been decided today, "it is doubtful" that the same result would have been reached. *Hernandez*, 140 S. Ct. at 742-43. The Fourth Circuit has heeded the Supreme Court's warning on multiple, recent occasions. *See, e.g.*, *Annappareddy v. Pascale*, 996 F.3d 120, 132-38 (4th Cir. 2021) (rejecting extension of *Bivens* to allow business owner to institute claims of prosecutorial misconduct under Fourth and Fifth Amendment); *Earle v. Shreves*, 990 F.3d 774, 778-81 (4th Cir. 2021) (declining to extend *Bivens* to allow federal inmate to bring a claim of retaliatory detention under the First Amendment); *Attkisson v. Holder*, 925 F.3d 606, 620 (4th Cir. 2019) (*Bivens* remedy unavailable for investigative reporter and her family who were allegedly surveilled unlawfully through their electronic devices in violation of the Fourth Amendment).

Because a *Bivens* remedy is almost always "disfavored," the creation of a new *Bivens* claim outside the very specific circumstances under which the Supreme Court (and *only* the Supreme Court)

has previously recognized requires satisfaction of a strict two-step test. *See Abbasi,* 137 S. Ct. at 1857-58. Under this two-step test,[5] the Court must first consider whether a case will extend a *Bivens* remedy into a "new context." *Id.* at 1857 (quoting *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 74 (2001)). "If the case is different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court, then the context is new." *Id.* at 1859.

 "To present a new context, 'a radical difference is not required.'" *Annappareddy*, 996 F.3d at 133 (quoting *Tun-Cos v. Perrotte,* 922 F.3d 514, 522 (4th Cir. 2019), *cert. denied,* 140 S. Ct. 2565 (2020)). To illustrate, the Supreme Court "has provided several examples of 'meaningful differences,' some of which are quite minor . . . ." *Tun-Cos,* 922 F.3d at 523. They include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* (quoting *Abbasi,* 137 S. Ct. at 1859–60). If the case does not present a new context, then the *Bivens* remedy is available, and there is no need to proceed to the second step. *Annappareddy,* 996 F.3d at 133 (citing *Tun-Cos,* 922 F.3d at 522–23); *see also Abbasi,* 137 S. Ct. at 1857.

If a case does present a new context, then the second step requires the Court to evaluate whether there are "special factors counselling hesitation" to extend *Bivens* "in the absence of affirmative action by Congress." *Annappareddy,* 996 F.3d at 133 (citing *Tun-Cos,* 922 F.3d at 523); *see also Abbasi,* 137 S. Ct. at 1857. One such special factor is "that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert,* 142 S. Ct. at 1804 (quoting *Abbasi,* 137 S. Ct. at 1858.). Another special factor is

---

[5] However, the Supreme Court has newly signaled that while its "cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule,* 142 S. Ct. 1793, 1803 (2022).

the "uncertainty of the systemwide consequences of recognizing a cause of actions under *Bivens*." *Id.* (quotation omitted). Plaintiff's constitutional claims here against both Defendants Armstrong and Shepherd do not pass the two-step test for implying a new *Bivens* remedy.

#### i.   Plaintiff's Claims Present a New Context That Is Distinct from Prior *Bivens* Caselaw.

Under recent Fourth Circuit authority, Plaintiff's claims unquestionably present a wholly new context from *Bivens*, *Carlson*, or *Davis*, and thus the Court here must move to the second step of the *Bivens* analysis of whether there are special factors counseling hesitation. *See Annappareddy*, 996 F.3d at 133. Plaintiff's claims relate to an alleged stop of his vehicle by a DA civilian police officer and a subsequent investigation by a DA civilian detective into whether he stole military equipment, raising Fourth Amendment and Fifth Amendment claims against them. *See* SAC ¶¶ 226-227, 236-237. To start with, Plaintiff's claims present a new context because he is "seek[ing] to extend *Bivens* liability to a new category of defendants," namely DA civilian police and detectives. *Tun-Cos*, 922 F.3d at 525. "As part of the new-context analysis, the *Abbasi* Court 'refused to extend *Bivens* to any . . . *new category* of defendants,' and pointed out categories that had been found to be meaningfully distinct from the three *Bivens* cases." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857). Department of the Army civilian police officers are not found anywhere in any of the categories enumerated in *Abbasi* —in fact, the *Abbasi* court observed that the Supreme Court had twice explicitly declined to extend *Bivens* to claims against military or military adjacent officers. *See Abbasi*, 137 S. Ct. at 1857 (citing *Chappell v. Wallace*, 462 U.S. 296 (1983) and *United States v. Stanley*, 483 U.S. 669 (1987)). As such, the Fourth Circuit has recognized that even Fourth Amendment claims otherwise akin to *Bivens* present a new context where the "defendants were officers in the United States Navy *or employees of the Department of Defense, operating under naval regulations.*" *Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019) (emphasis added); *see also Tun-Cos*, 922 F.3d at 525.

As to the claims against Detective Shepherd, in particular, binding Fourth Circuit precedent has not extended *Bivens* to claims against federal investigators under the Fourth Amendment or the Fifth Amendment. *See Annappareddy*, 996 F.3d at 132-38. As to Fourth Amendment claims, the Court found that "[s]peaking 'to witnesses, draft[ing] reports, and shar[ing] information with prosecutors and other investigators' are 'information-gathering and case-building activities' that represent 'a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*.'" *Id.* at 136 (quoting *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019)); *see also Williams v. Keller*, 2021 WL 4486392, at *4 (10th Cir. Oct. 1, 2021) (adopting the reasoning of *Annappareddy*); *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (similar reasoning). Further, as to Plaintiff's Fifth Amendment claim, the Fourth Circuit held that "*Bivens* ha[d] never 'been extended to a Fifth Amendment due process claim.'" *Annappareddy*, 996 F.3d at 134.

While Plaintiff may argue that his claim against Officer Armstrong is facially similar to *Bivens* in that it is against a line officer for his alleged involvement in a search and seizure, both the Supreme Court and the Fourth Circuit have squarely held that this is not enough to bring a claim within *Bivens*. As the Supreme Court noted in *Abbasi*, "a case might differ in a meaningful way [from *Bivens*]" because of the particular situation at issue, judicial guidance, or the "statutory or other legal mandate under which the officer was operating." 137 S. Ct. at 1860. And more recently the Supreme Court has instructed that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*." *Egbert*, 142 S. Ct. at 1809. In the instant case, Officer Armstrong was operating as a DA civilian police officer, who responded to what he saw as a potential medical emergency, spoke to Plaintiff sitting in his vehicle, and then phoned ACPD upon believing that there was something amiss in light of Plaintiff's circumstances. That is noticeably different from *Bivens* itself, which involved "a claim against FBI agents for handcuffing a man in his own home without a warrant." *Abbasi*, 137 S. Ct. at 1860. Indeed, Officer Armstrong was not initially engaged in a traffic stop of Plaintiff for any kind of

criminal behavior, but rather approached him to determine whether Plaintiff was experiencing a medical emergency, after which Officer Armstrong and Plaintiff had a brief one minute interaction. That is a situation far different from the warrantless search and seizure that occurred in *Bivens*.[6] Accordingly, Plaintiff's claims would open up a *Bivens* remedy into "new contexts."

### ii. Special factors counsel against implying new *Bivens* claims here.

Given that Plaintiff's constitutional claims present "new contexts" for a *Bivens* remedy, the Court must consider whether there are special factors counselling hesitation to permit Plaintiff to proceed on those claims. *See Abbasi*, 137 S. Ct. at 1857-58. Multiple special factors are present here.

Perhaps the most important special factor counseling hesitation here is that Plaintiff is bringing suit against DA civilian personnel, and the Supreme Court has repeatedly emphasized that suits against the military constitute special factors counseling hesitation. *See Cioca v. Rumsfeld*, 720 F.3d 505, 510 (4th Cir. 2013) ("[T]he Supreme Court has only twice, in the more than forty years since deciding *Bivens*, recognized a new implied monetary remedy against federal officials, and it has never done so in the military context."). In *Chappell v. Wallace*, the Court recognized "[t]he special status of the military" under the Constitution, "the unique disciplinary structure of the military establishment and Congress' activity in the field" as special factors that precluded the extension of *Bivens* to an employment discrimination claim brought by military service members against their superiors. 462 U.S. at 303-304. Then in *United States v. Stanley*, the Supreme Court extended this to claims by "civilian personnel" under *Bivens* against military officers, noting that the same concerns of the unique status and structure

---

[6] A few courts have recognized the applicability of *Bivens* to police traffic stops. Crucially, these cases involved circumstances more akin to *Bivens* and were investigatory stops unlike the circumstances here where Officer Armstrong approached Plaintiff as a "caretaker" to determine whether he was suffering a medical emergency. *Cf. Schultz v. Braga*, 455 F.3d 470, 479 (4th Cir. 2006) (excessive force claim where officer shot at, removed, and handcuffed individual at a car stop); *McLeod v. Mickle*, 765 F. App'x 582, 584–85 (2d Cir. 2019) (involving prolonged traffic stop subsequently used for a drug search of a vehicle); *Hicks v. Ferreyra*, 2022 WL 268762, at *7 (D. Md. Jan. 28, 2022) (extending *Bivens* to two unsupported traffic stops where the officer "operated within the criminal law context"). Furthermore, none of these cases involved claims against military police, a wholly new category of defendant.

of the military precluded the extension of a *Bivens* remedy particularly with regard to injuries that "ar[o]se out of or [we]re in the course of activity incident to service." 483 U.S. at 679, 683.

Accordingly, the Fourth Circuit and courts within this circuit have repeatedly declined to extend *Bivens* to military personnel and Department of Defense civilian personnel. *See Cioca*, 720 F.3d at 517 ("[N]o case has permitted a *Bivens* action for money damages in the military setting."); *Lebron v. Rumsfeld*, 670 F.3d 540, 550 (4th Cir. 2012) (rejecting *Bivens* claim against military officers related to plaintiff's detention); *Doe v. United States*, 381 F. Supp. 3d 573, 618 (M.D.N.C. 2019) (holding "the DoD context" of a *Bivens* claim against Department of Defense school officials for failing to act on allegations of sexual abuse was a special factor counseling hesitation); *Heap v. Carter*, 112 F. Supp. 3d 402, 430 (E.D. Va. 2015) (rejecting *Bivens* claim related to plaintiff's application for military employment). Plaintiff's claims against a DA civilian police officer and detective come within this caselaw. In addition, there are particular military related concerns posed by Plaintiff's claims. Plaintiff's claims against Officer Armstrong relate to an encounter that Armstrong engaged in, in part, because Plaintiff was near a military base that Armstrong was tasked with protecting. *See* Ex. 1 10: 3-6, 13:3-5. And Plaintiff's claims against Detective Shepherd are tied to Plaintiff's prior tenure in the military as Shepherd's investigative activities were based on the suspicion that Plaintiff stole military equipment upon leaving military service. *See* SAC ¶ 213 (alleging Shepherd "falsely impl[ied] that the Rifle Plate was known to have shipped to Mr. Wells' unit while he was present at that unit"). Furthermore, the fact that Plaintiff's claims may "not involve sensitive issues of national security or the administration of a uniquely defense-orientated institution," does not undercut that the "DoD context" of his claims against military personnel is, in of itself, a special factor counseling hesitation, particularly given the instruction of *Stanley* and *Chappell*. *Doe*, 381 F. Supp. 3d at 618. Particularly salient to all of these decisions is the fact that, despite Congress' legislation as to military matters, it "has never created an express cause of action as a remedy" against military officers, and (crucially) Congress has remained

silent in the face of a multitude of judicial decisions declining to extend *Bivens* to these officers. *Cioca*, 720 F.2d at 517.

The existence of alternative remedial structures are also special factors that militate against extending *Bivens* here. Individuals who take issue with the conduct of Department of Defense employees, including DA civilian police and investigators such as Officers Armstrong and Shepherd, can submit a complaint to the Department of Defense Office of Inspector General among other remedies. *See, e.g.*, Submit a Hotline Complaint, Department of Defense Office of Inspector General, https://www.dodig.mil/Components/Administrative-Investigations/DoD-Hotline/Hotline-Complaint/ (last accessed Aug. 22, 2022). Some courts have found that the ability to file complaints with an Office of Inspector General constitutes an alternative remedial structure. *See, e.g.*, *Freedland v. Mattingly*, 2021 WL 1017253, at *9 (M.D. Pa. Mar. 17, 2021); *Shorter v. United States*, 2020 WL 4188455, at *5 (D.N.J. July 21, 2020). And the Fourth Circuit has held similar grievance schemes constitute alternative remedial structures that preclude the extension of *Bivens*. *See Tun-Cos*, 922 F.3d at 526.

Another special factor, at least as to Detective Shepherd, is that the Fourth Circuit and other courts have declined to extend *Bivens* to claims against investigators, given that it would "require courts to interfere in the executive branch's investigative and prosecutorial functions." *Annappareddy*, 996 F.3d at 137; *see also Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) ("The first special factor present here is a variation on one the Supreme Court has already identified: the risk of burdening and interfering with the executive branch's investigative and prosecutorial functions."). Specifically, the Fourth Circuit in *Annappareddy* cautioned that courts could not recognize such a claim and "avoid a wide-ranging dive into all actions taken by each actor as well as all evidence available to investigators, prosecutors, judges, and juries." *Id.* (quotations omitted). This special factor thus counsels against recognizing any kind of claims against Detective Shepherd brought by Plaintiff. In short, the Court should not extend *Bivens* here despite Plaintiff's invitation to do so otherwise.

### b. The Individual Defendants are Entitled to Qualified Immunity.

If this Court nonetheless elects to create a new *Bivens* remedy against Armstrong and Shepherd, these officers would still be entitled to qualified immunity, and thus Plaintiff's claim should be dismissed on this alternative basis. The Supreme Court has held that individual officers enjoy qualified immunity from suit unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). The Court has articulated the rationale behind the qualified immunity doctrine on several occasions, notably in *Anderson v. Creighton*, 483 U.S. 635 (1987):

> [P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liabilities and harassing litigation will unduly inhibit officials in the discharge of their duties.

*Id.* at 638; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).

Determinations into whether a particular officer enjoys qualified immunity are generally governed by a two-pronged analysis. First, a court asks whether the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 199 (2001). Only if a court answers this initial inquiry in the affirmative must it then "determine whether the contours of the right were clearly established such that a reasonable official would understand that what he [was] doing violated that right." *Pike v. Osbourne*, 301 F.3d 182, 184 (4th Cir. 2002). Despite this two-step test, the Supreme Court has also held that a court "may exercise [its] sound discretion" to dismiss an action on clearly-established grounds without opining on whether the conduct actually violated the Constitution. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The inquiry into whether the particular right in question was "clearly established" is synonymous with the question of "notice." As such, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Saucier*, 533 U.S. at 202 (emphasis added). As one

court in this district has put it: "[t]he Supreme Court has continually reinforced that what is to be considered established law should not be defined in an overly general manner, but rather 'the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Omeish v. Kincaid*, 2022 WL 2904876, at \*2 (E.D. Va. July 22, 2022) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). As relevant in the instant case, "the 'specificity' of the rule is 'especially important in the Fourth Amendment context.'" *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Under either prong, Defendants Armstrong and Shepherd are shielded by qualified immunity given Plaintiff's pleadings.

### i. Plaintiff Does Not Plausibly Plead Constitutional Violations.

As to the first prong, Plaintiff does not plausibly plead constitutional violations by either Defendants Armstrong or Shepherd.

a.     With respect to Count 6 against Detective Shepherd, Plaintiff effectively brings a malicious prosecution claim under the Fourth and Fifth Amendments (which tracks his state tort law claim). *Compare* SAC ¶¶ 211, 213 *with* ¶¶ 233-34. The Fourth Circuit has clarified that, even in the constitutional context, a "malicious prosecution claim" "is simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort of malicious prosecution." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (quotation omitted). "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). As to the second prong, "[f]or probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002).

As to Detective Shepherd, Plaintiff's allegations do not show how he "caused" Plaintiff's prosecution as Plaintiff does not plead that Shepherd instituted any prosecution or asked for it to be brought about, only that he provided information to the Commonwealth's Attorney. *See* SAC ¶ 213. That does not suffice for the kind of "but-for and proximate causation" necessary for a malicious prosecution claim. *Evans*, 703 F.3d at 647; *see also Hamden v. Denny*, 2022 WL 824852, at *5 (W.D. Va. Mar. 18, 2022) ("[C]ourts look to whether a defendant affirmatively, actively, and voluntarily took steps to instigate or to participate in the arrest of the defendant, and whether the defendant exercised some level of control over the decision to have the plaintiff arrested.") (quotation omitted).

Plaintiff also fails to plausibly plead how Detective Shepherd's investigative activities were not supported by probable cause, and his allegations actually establish the contrary. Indeed, Plaintiff's allegations note that he ultimately admitted to possessing Army property upon his discharge—the very thing that Shepherd investigated. As to probable cause, Plaintiff has not plausibly pleaded how exactly Detective Shepherd's investigation of Plaintiff was not supported by probable cause. Plaintiff alleges that Shepherd "provided false statements to the prosecution," and "provid[ed] misleading information . . . relating to what documentation he possessed and receipts falsely implying that the Rifle Plate was known to have shipped to Mr. Wells' unit." SAC ¶¶ 211, 213. However, the Second Amended Complaint is devoid of any indicia of what these false statements and misleading information were. Further, while Plaintiff claims that Shepherd had "documentation" and "receipts," Plaintiff does not allege what this documentation or receipts were or when Shepherd provided this information to state officials investigating Plaintiff. This bare allegation cannot support Plaintiff's claim because Plaintiff wholly fails to allege what supposed false information Shepherd provided and how it impacted his prosecution. Consequently, this allegation fails under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678 (legal conclusions, "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are insufficient) (cleaned up).

17

At best, Plaintiff's allegations are that Shepherd's investigation was not supported by probable cause because Shepherd's conclusion that Plaintiff stole the Rifle Plate was "based upon bare assumption and speculation" that the Rifle Plate was at Plaintiff's military base when he was still in the military. SAC ¶¶ 81, 88. But Plaintiff does not allege why it would have been illogical (or improper) for Detective Shepherd to assume that Plaintiff—a recently discharged military member—had obtained a military issue Rifle Plate used to stop bullets while he was in the military.[7] That would, in fact, be a logical assumption to make. In fact, it ultimately was as Plaintiff subsequently admitted to taking the Rifle Plate when he left the Army. *See* SAC ¶ 142; ECF No. 1-3. This fact, on its own, establishes that there was probable cause for Shepherd's investigation, and Plaintiff's constitutional malicious prosecution claim fails accordingly. *See Brown*, 278 F.3d at 367; *cf. United States v. Sandoval*, 847 F.2d 179, 185 (5th Cir. 1988) ("Although an officer's bare 'hunch' that a person has committed a crime does not constitute probable cause, the hunch on which the agents originally proceeded was confirmed by later observations that justified the arrest.").

b.      With respect to Count 7 against Officer Armstrong, Plaintiff alleges that Armstrong engaged in an invalid search and seizure when he briefly blocked Plaintiff's vehicle and "detain[ed]" him. *See* SAC ¶¶ 241-42. Plaintiff's claim, brought under the Fourth and Fifth Amendments and invoking "due process," *id.* ¶ 237, is best understood as a Fourth Amendment claim for an unreasonable search and seizure. *See Smith v. Travelpiece*, 31 F.4th 878, 885 (4th Cir. 2022) ("[N]o matter its dress, that is a Fourth Amendment unreasonable-search claim and not a due-process claim."). However, even as alleged by Plaintiff, Officer Armstrong's brief encounter did not constitute a seizure triggering the protections of the Fourth Amendment. Moreover, any "seizure" would still be constitutional under the

---

[7] Plaintiff claims that "the Rifle Plate would, most likely, have been removed from service in approximately 2016," SAC ¶ 82, but once again offers nothing more than a conclusory allegation on this point and does not assert how Shepherd was on notice or should have been on notice that Plaintiff's alternative explanation could have been true.

community caretaker exception.

At the outset, "[i]n the absence of a seizure, a police-citizen encounter is considered consensual and will not trigger Fourth Amendment scrutiny." *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998) (quotation omitted). In determining the contours of a seizure, the Supreme Court has emphatically and repeatedly held "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Fla. v. Bostick*, 501 U.S. 429, 434 (1991). Rather, a seizure only occurs where such an interaction "loses its consensual nature," which happens "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (quotation omitted). By this well-trodden rubric, Plaintiff was not subject to a seizure by Officer Armstrong. To recount, Officer Armstrong briefly conversed with Plaintiff for less than a minute during which Armstrong did not inform Plaintiff that he was being stopped or otherwise detained; did not turn on his sirens; and then backed his car away after making sure Plaintiff was alright. Ex. 1 18:1-12, 20:20-21:7, 64:10-15, 66:10-16. That is not a seizure under both the Supreme Court's explicit instructions and subsequent caselaw. *See United States v. Serrano*, 695 F. App'x 20, 22 (2d Cir. 2017) (holding officers' conversation with defendant "without touching him, or displaying weapons, or receiving any of his possessions or identification, or giving him any orders—was not a seizure within the meaning of the Fourth Amendment"); *Sullivan*, 138 F.3d at 133 ("[W]e nevertheless disagree that the brief one-minute dialogue . . . amounted to a seizure implicating the Fourth Amendment.").

However, even if this brief, voluntary encounter constituted a seizure, Plaintiff does not allege a Fourth Amendment violation. In support of his claim that Officer Armstrong's conduct was illegal, Plaintiff makes much of the fact that Officer Armstrong was operating outside of his jurisdiction as a DA civilian police officer, *see* SAC ¶ 241, but the majority of courts have concluded that extraterritorial seizures do not constitute a "*per se* violation of the Fourth Amendment." *United States v. Atwell*, 470 F.

Supp. 2d 554, 573 (D. Md. 2007) (collecting cases). Furthermore, the circumstances of Officer Armstrong's encounter with Plaintiff highlight that any search and seizure claim against him would be shielded under the so-called "community caretaker exception." Both the Supreme Court and the Fourth Circuit have, as to vehicle stops, "recognized that a police officer serving as a community caretaker to protect persons and property is constitutionally permitted to make searches and seizures without a warrant." *Phillips v. Peddle*, 7 F. App'x 175, 178 (4th Cir. 2001) (citing *Cady v. Dombrowski*, 413 U.S. 433 (1973)). Probable cause is not required under this exception for a search or seizure "because police often come into contact with vehicles for reasons related to the operation of vehicles themselves and this often noncriminal contact with automobiles will bring local officials in plain view of evidence, fruits, or instrumentalities of a crime, or contraband." *United States v. Johnson*, 410 F.3d 137, 144 (4th Cir. 2005) (quotation omitted).[8]

In the present case, Officer Armstrong encountered Plaintiff in a community caretaker function unrelated to any criminal investigation as he was concerned about whether or not Plaintiff was suffering from a medical emergency or if his car had broken down. *See* Ex. 1 13:3-18. Thus, the exception is directly relevant here and precludes any finding of a Fourth Amendment violation for any alleged stop by Officer Armstrong and any ensuing search of Plaintiff's vehicle that occurred after Armstrong called ACPD. Indeed, the Fourth Circuit has recognized that the exception applies even when federal officers who conduct a vehicle stop suspecting a medical emergency then subsequently search a vehicle *themselves*. *See Johnson*, 410 F.3d at 145-146 (affirming warrantless search of a glove compartment when United States Park Police Officer responded to a medical emergency).

### ii. Plaintiff's Rights Alleged to Have Been Violated Were Not Clearly Established.

---

[8] Most recently, the Supreme Court has ruled that the community caretaker exception does not justify "warrantless searches and seizures in the home." *Caniglia v. Strom*, 141 S. Ct. 1596, 1598 (2021). However, that ruling is inapplicable to the present case, which concerns the same kind of vehicular encounter upheld in *Cady* and which the *Caniglia* court acknowledged and did not overrule.

Assuming *arguendo* that Plaintiff has established constitutional violations given his pleadings and the incorporated materials, the alleged constitutional rights at issue were not clearly established.

a.      As to Detective Shepherd, Federal Defendants are not aware of a single case that holds, as in circumstances like these, that a detective violates the Fourth Amendment by entertaining "theories" about an investigation—let alone a logical inference that an employee has potentially stolen goods from his or her former employer—and when a detective investigates further when an employee is in possession of items uniquely attributable to their past employment. To the extent that Plaintiff asserts that Detective Shepherd should not have assumed that Plaintiff's Rifle Plate was one that Plaintiff had taken during his time in the Army, it is not clearly established that this was improper. To the contrary, there is caselaw noting that an investigator "may be wrong in her inferences and deductions without violating a clearly established constitutional right." *Peck v. Hinchey*, 2017 WL 2929464, at *7 (D. Ariz. July 10, 2017). That there is not a clearly established right on this point is not surprising. Investigators often act on inferences, and while Plaintiff may believe that the detectives investigating him should have accepted and further explored his theories for why he was not in possession of a stolen Rifle Plate, Detective Shepherd and his state counterparts were not obligated by the Constitution "to investigate independently every claim of innocence" or "to perform an error-free investigation." *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

b.      As to Officer Armstrong, it is not clearly established that a federal officer cannot perform a quick welfare check on an individual in a vehicle and then cannot report potentially suspicious circumstances to local authorities. To the contrary, courts have indicated that the kind of short conversation that Officer Armstrong had with Plaintiff does not constitute a stop, and the Fourth Circuit has re-affirmed the ability of officers to perform welfare checks and further upheld searches performed as a result of any such welfare checks. *See Johnson*, 410 F.3d at 145-146. Plaintiff otherwise appears to suggest that Officer Armstrong should have been on notice that his conduct was improper

because he "had no authority or jurisdiction" where he met Plaintiff. SAC ¶ 37. However, the Fourth Circuit has never ruled on whether a lack of statutory authority to make a search or seizure in a region violates the Fourth Amendment, and courts within the Fourth Circuit have held that even an *arrest* "outside of [an officer's] territorial jurisdiction does not rise to the level of a constitutional violation." *Atwell*, 470 F. Supp.2d at 573 (involving a military police officer's pursuit and arrest of an individual for a traffic violation outside of a military base); *see also Byndon v. Pugh*, 350 F. Supp. 4955, 508 (N.D.W. Va. 2018) (granting officer qualified immunity where officer effectuated a traffic stop outside of his territorial limits); *McLean v. Leonard*, 2016 WL 4007585, at *7 (E.D.N.C. July 26, 2016) (similar). In fact, holding to the contrary would be counterintuitive as it would hamstring officers from responding to emergencies or infractions in plain sight just because they had stepped over a formalistic geographic boundary. Officer Armstrong's common sense action to check up on a potential emergency and then suspicious circumstances should not subject him to liability because he was along the curtilage of his territorial jurisdiction.

## II.        Plaintiff's FTCA Claims (Counts 3, 4, & 9) Should Be Dismissed.

Plaintiff's remaining non-constitutional tort claims relating to the conduct of Officers Armstrong and Shepherd—who have been appropriately substituted by the United States of America as a defendant on Counts 3 & 4, *see* ECF No. 55—should be dismissed for lack of subject matter jurisdiction and failure to state a plausible claim. At the outset, it is worth clearing up exactly what is at issue before the Court. While Plaintiff initially brought false arrest and malicious imprisonment tort claims against the officers in their individual capacities (Counts 3 & 4) and a separate "respondeat superior" claim against the United States (Count 9), Plaintiff's state tort claims against the officers are only proper against the United States, and Plaintiff's stand-alone respondeat superior claim (Count 9) is, in fact, not cognizable as the FTCA *only* applies to the conduct of a federal "employee . . . while acting within the scope of his office or employment." 28 USC § 2674. In other words, "[a]ll FTCA

liability is respondeat superior liability." *Johnson v. Sawyer*, 47 F.3d 716, 730 (5th Cir. 1995).[9]

### a. Plaintiff's Claims Are Barred by the Discretionary Function Exception.

Plaintiff's FTCA claims must be dismissed outright for lack of subject matter jurisdiction as they are covered by the discretionary function exception. Because it is a sovereign, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). While the FTCA waives the United States' sovereign immunity for civil suits for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b)(1), "this broad waiver of sovereign immunity is cabined by a list of exceptions," *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020). When a plaintiff does not come within the FTCA's terms or an exception applies, there is no waiver of the United States' immunity, and a federal district court lacks subject matter jurisdiction over any FTCA claims. *See id.* The burden in demonstrating that an action comes within the FTCA lies with the plaintiff. *See Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017) ("Because waivers of sovereign immunity must be strictly construed, the plaintiff bears the burden of demonstrating jurisdiction and showing that none of the FTCA's exceptions apply.").

One of these exceptions is the so-called "discretionary function exception," whereby sovereign immunity is not waived for any claim based on the performance of or failure to perform "a discretionary function on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). A claim is based upon an agency's performance of a discretionary function when: (1) "the challenged governmental conduct involves an

---

[9] As relief against these officers, Plaintiff seeks punitive damages. However, such damages are unavailable as to any tort claims against the United States under the FTCA and may only be part of Plaintiff's *Bivens* claims against Officers Armstrong and Shepherd. *See Dunbar Corp. v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990) ("[P]unitive damages may be awarded in a *Bivens* suit . . . . But punitive damages in an FTCA suit are statutorily prohibited.").

element of judgment or choice" because no "statute regulation, or policy prescribes a specific course of action," and (2) "the judgment was one that the exception was designed to protect, namely a judgment based on considerations of public policy." *Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015). "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 315, 324–25 (1991).[10]

1.      The first condition for the exception is determined by looking at "whether the challenged conduct involves an element of judgment or choice." *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009); *Gaubert*, 499 U.S. at 322. In making this determination, courts look to whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Indem. Ins. Co. of N. Am.*, 569 F.3d at 180. If no such directive exists, then the conduct involves the exercise of judgment. Here, there is no statute, regulation, or policy that specifically prescribed the course of action taken by the United States in either: a) the encounter between Plaintiff and Officer Armstrong that serves as the basis for Plaintiff's false arrest claim; or b) the investigative activities of Detective Shepherd that serve as the basis for Plaintiff's malicious prosecution claim.

As to Officer Armstrong, Plaintiff appears to suggest that Armstrong was prohibited from

---

[10] Although the Fourth Circuit has discussed but never squarely ruled on it, *see Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001), there is a split among courts as to whether the discretionary function exception applies where a tort claim seeks relief for federal action that is also a violation of the Federal Constitution. *Compare Shivers v. United States,* 1 F.4th 924, 930 (11th Cir. 2021) *with Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254 (1st Cir. 2003). The United States submits that a constitutional violation does not prevent the application of the discretionary function exception given the Supreme Court's admonition that the FTCA "prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused," *Butz v. Economou*, 438 U.S. 478, 505 (1978) (involving case raising constitutional claims). Nonetheless, even courts that hold the opposing view have recognized that mere *allegations* of constitutional violations cannot defeat the application of the discretionary function exception. In any event, as discussed above, Plaintiff has not sufficiently pleaded constitutional violations by the Federal Defendants.

approaching Plaintiff to ask him questions as Armstrong did not "have any authority or legal justification" and had "abandoned his post." SAC ¶ 198. However, Plaintiff is mistaken as DA civilian police are authorized to engage in off-installation operations and even authorized to apprehend or detain off-post. *See* 32 C.F.R. § 631.14 (permitting "off-installation operations" by DA civilian police). In fact, courts have noted that it is perfectly permissible for military officers to render assistance to civilian law enforcement as Officer Armstrong did when he radioed ACPD to report Plaintiff's expired tags and suspicious behavior. *See, e.g., United States v. Bacon*, 851 F.2d 1312, 1314 (11th Cir. 1988) ("Limited military participation was nothing more than a case of assistance to civilian law enforcement efforts by military personnel and resources. This does not violate the statutory prohibition of the Posse Comitatus Act."). Moreover, no Army or Department of Defense regulations and/or policy precluded Officer Armstrong's welfare check of Plaintiff and Armstrong's reporting of what he saw to local law enforcement.

As to Detective Shepherd, Plaintiff does not suggest which of his investigative activities violated any particular statute or regulation. Moreover, as with Officer Armstrong, Detective Shepherd is permitted by law to assist local law enforcement. *See* 10 U.S.C. § 271(a) ("The Secretary of Defense may . . . provide to Federal, State, or local civilian law enforcement officials any information collected during the normal course of military training or operations that may be relevant to a violation of any Federal or State law . . . ."). Further, Detective Shepherd's cooperation in the ACPD's investigation of Plaintiff is permissible particularly as it related to an investigation of whether Plaintiff had stolen military property, i.e., the Rifle Plate. *See* Army Reg. 190-30 ¶ 4-5 (recognizing the involvement of military police in "off-post" incidents particularly "involving U.S. army property or personnel").

2.    With the first condition satisfied for whether the exception applies, the inquiry turns to "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23. "The basis for the discretionary function exception was Congress'

desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). Both Officer Armstrong's welfare check and Detective Shepherd's investigation are judgments that come within the discretionary function exception.

Courts within the Fourth Circuit have recognized "that claims of negligent investigation or negligent arrest by law enforcement officers are barred by the discretionary function exception." *Burgess v. Watson*, 2014 WL 4540256, at *3 (M.D.N.C. Sept. 11, 2014) (citing *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006)). In addition, "[i]t is well-established that decisions by law enforcement regarding whom to investigate, how to investigate, and whether to prosecute constitute discretionary activity by government officials." *Blanco Ayala v. United States*, 386 F. Supp. 3d 635, 640–41 (E.D. Va. 2019), *aff'd*, 982 F.3d 209 (4th Cir. 2020). Even more on point, the Fourth Circuit has specifically found that the discretionary function exception is applicable to military investigations. *See Blakey v. U.S.S. Iowa*, 991 F.2d 148, 153 (4th Cir. 1993). This caselaw makes clear that Plaintiff's claims of false arrest and malicious prosecution are the kind of discretionary judgments that are shielded from suit under the discretionary function exception. It is not hard to see why. Officer Armstrong's decision on whether to conduct to a welfare check and to report suspicious circumstances is the kind of snap decision by law enforcement that courts are frequently loathe to second guess in hindsight. *See United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) ("*[P]ost hoc* judicial review of police action should not serve as a platform for 'unrealistic second-guessing' of law enforcement judgment calls."). So too with Detective Shepherd's investigation as to whether or not Plaintiff was in possession of stolen miliary property. In sum, Plaintiff's tort claims attack the kind of discretionary decisions protected by the discretionary function exception, and there is no subject matter jurisdiction under the FTCA.

### b.  Plaintiff's Malicious Prosecution Claim Is Barred by the *Feres* Doctrine.

Plaintiff's malicious prosecution claim relating to the conduct of Detective Shepherd must

also be dismissed for lack of subject matter jurisdiction based on the doctrine announced by the Supreme Court in *Feres v. United States*.[11] Stated broadly, this so-called *Feres* doctrine means "that the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. The Fourth Circuit has held that this "incident to service" test asks "whether 'particular suits would call into question military discipline and decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military matters.'" *Cioca*, 720 F.3d at 515 (quoting *Stanley*, 483 U.S. at 682). Or "[p]ut another way, where a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military, the 'incident to service' test is implicated." *Id.* The Fourth Circuit has further noted that the *Feres* doctrine has been "broadene[ed] . . . to encompass, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military." *Stewart v. United States*, 90 F.3d 102, 105 (4th Cir. 1996) (quotation omitted) (emphasis in original). Accordingly, the doctrine has been applied where "the plaintiff's claims 'are the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" *Id.* (quoting *United States v. Shearer*, 473 U.S. 52, 59 (1985)).

Plaintiff's claim for malicious prosecution is squarely within the *Feres* doctrine under these precedents as it seeks to question a military investigation of Plaintiff that was based on Plaintiff's status as a former service member and Shepherd's suspicion that Plaintiff stole military property (the Rifle Plate) while he was in the military. *See* SAC ¶¶ 88, 211. Thus, Plaintiff is litigating the propriety of an investigation that occurred primarily because of his prior status as a member of the military, and he seeks to involve the Court in reviewing the military's investigation of its former service member.

---

[11] "Because it acts as a constraint of the already narrow waiver of sovereign immunity given by the FTCA, the *Feres* doctrine is jurisdictional and claims within its scope are claims that this Court has no jurisdiction to hear." *Everette v. United States*, 2016 WL 5416591, at *2 (E.D.N.C. Sept. 26, 2016) (collecting cases).

Unsurprisingly, courts have found the *Feres* doctrine applicable to circumstances similar to these. Courts have held that FTCA claims based on subsequent investigations of former service members which are incident to and arising out of their military service are barred by the *Feres* doctrine, even if an investigation itself does not involve the service member being on active duty. *See Duggan v. Dep't of the Air Force*, 2012 WL 1884144, at *4 (S.D. Tex. May 21, 2012); *Burkins v. United States*, 865 F. Supp. 1480, 1495 (D. Colo. 1994).

Further, the allegations against Detective Shepherd raise the core concerns that warrant application of the *Feres* doctrine. For one, although the investigation postdates Plaintiff's time in the military, it is very much a result of Plaintiff's service and status in the Army as Detective Shepherd's involvement—as a *military* investigator—was due to the existence of stolen military property, and Plaintiff himself derides Detective Shepherd for "assum[ing]" that Plaintiff had come into possession of this property while in military service. SAC ¶ 211. As such, Plaintiff's malicious prosecution claims is barred under *Feres* and should be dismissed for lack of subject matter jurisdiction.

### c. Plaintiff Has Not Plausibly Stated Tort Claims for False Imprisonment and/or Malicious Prosecution Even If There Is Subject Matter Jurisdiction.

#### i. Plaintiff Cannot State a False Imprisonment Claim.

"Under Virginia law, false imprisonment is defined as the restraint of a person's liberty without sufficient cause." *Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 846 (E.D. Va. 2014) (citing *Zayre of Va., Inc. v. Gowdy,* 147 S.E.2d 710, 713 (Va. 1966)). As a result, the tort "requires the direct restraint by one person of the physical liberty of another without adequate legal justification." *Hellebuyck v. Gucci Am., Inc.*, 2020 WL 9549909, at *2 (E.D. Va. Dec. 23, 2020). Given these elements, claims for "false imprisonment under Virginia law frequently rise and fall with the reasonableness of the arrest/search underlying such claims." *Vollette v. Watson*, 937 F. Supp. 2d 706, 726 (E.D. Va. 2013). In addition, "Virginia law provides a defense to officers who subjectively 'believed[ ] in good faith, that [their] conduct was lawful' and whose subjective beliefs were objectively reasonable." *Wingate v.*

*Fulford*, 987 F.3d 299, 312 (4th Cir. 2021) (quoting *DeChene v. Smallwood*, 311 S.E.2d 749, 751 (Va. 1984)). As to this latter defense, "Virginia's good-faith exception is congruent with the federal qualified immunity defense." *Id.* In other words, Plaintiff's false imprisonment claim against the United States relating to the conduct of Officer Armstrong, *see* SAC ¶ 198, and any attendant non-jurisdictional defenses on the merits to that claim are coterminous with whether Plaintiff has plausibly pled that Officer Armstrong violated Plaintiff's Fourth Amendment rights, *see* SAC ¶¶ 235-45.

For the reasons discussed as to Plaintiff's *Bivens* claims against Officer Armstrong, Plaintiff fails to plead an actionable claim of false imprisonment. *See supra* Part I.b. To begin, the brief one-minute welfare check that Officer Armstrong performed on February 9, 2020—as evidenced in the materials incorporated by Plaintiff's own allegations—did not involve any restraint of his liberty. But even if it did, the encounter between Plaintiff and Officer Armstrong was permissible under the community caretaker exception, which is also recognized as a lawful basis for a stop under Virginia law. *See, e.g.*, *Commonwealth v. Waters*, 20 Va. App. 285, 291 (1995). Further, even assuming that Officer Armstrong's encounter was a seizure and one that was not lawful, a false imprisonment claim against the United States still would not lie for the same reason that Officer Armstrong is entitled to qualified immunity. *See supra* Part I.b.i-ii. That is, the allegations highlight that Officer Armstrong responded (reasonably) to what he saw as a potential medical or vehicular emergency and after observing Plaintiff having an expired tag and acting suspiciously, Armstrong reasonably reported what he saw to local law enforcement. Plaintiff's false imprisonment claim should therefore be dismissed.

### ii.  Plaintiff Cannot State a Malicious Prosecution Claim.

As a general matter, "[m]alicious prosecution actions 'are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applied to other tort cases.'" *Carter v. Khan*, 2015 WL 6738607, at *13 (E.D. Va. Nov. 4, 2015) (quoting *O'Connor v. Tice*, 704 S.E.2d 572, 575 (Va. 2011)). "In Virginia, a plaintiff in a malicious prosecution case must prove 'by a

preponderance of the evidence that the prosecution was: (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.'" *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 625 (E.D. Va. 2010) (quoting *Hudson v. Lanier*, 497 S.E.2d 471, 473 (Va. 1998)). "Malice exists when the individual who institutes or procures the prosecution has a '*controlling* motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.'" *Wingate*, 987 F.3d at 313 (quoting *Hudson*, 497 S.E.2d at 473) (emphasis in original). Although lack of probable cause can be sufficient to show malice in some circumstances, this requires a showing of particular circumstances such as an investigator's complete disregard of information or use of an arrest warrant to punish an individual who would not cooperate willingly. *See Daniczek v. Spencer*, 156 F. Supp. 3d 739, 756 (E.D. Va. 2016). To some extent, Plaintiff's malicious prosecution tort against the United States relating to the conduct of Detective Shepherd is also then coterminous with his *Bivens* malicious prosecution claim against Detective Shepherd.

As discussed previously, Plaintiff does not plead how Detective Shepherd lacked probable cause in investigating Plaintiff. Plaintiff either makes conclusory, unsupported allegations that Detective Shepherd provided "misleading information," or himself notes that Detective Shepherd's investigation of Plaintiff for possessing Army property upon his discharge was actually well-founded. *See supra* Part I.b. And Plaintiff's allegations do not rise to the level of malice as Plaintiff provides no allegations that Detective Shepherd had a controlling motive other than to determine whether or not Plaintiff was involved in the theft of military property. Plaintiff's judicially disfavored malicious prosecution claim therefore should be dismissed.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court dismiss Plaintiff's claims against them for lack of subject matter jurisdiction and failure to state a claim.

Dated: October 6, 2022                    Respectfully submitted,

                                          JESSICA D. ABER
                                          UNITED STATES ATTORNEY

                                    By:  ___/s/_____
                                          YURI S. FUCHS
                                          Assistant United States Attorney
                                          Office of the United States Attorney
                                          Justin W. Williams U.S. Attorney's Building
                                          2100 Jamieson Avenue
                                          Alexandria, Virginia 22314
                                          Tel:    (703) 299-3872
                                          Fax:    (703) 299-3983
                                          Email:  yuri.fuchs@usdoj.gov
                                          *Counsel for Federal Defendants*

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this 6th day of October, 2022, I have electronically filed the

foregoing using the CM/ECF system, which in turn sent notice to all counsel of record who are

registered with that system.


_____/s/_____
Yuri S. Fuchs
Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3872
Fax: (703) 299-3983
Email: yuri.fuchs@usdoj.gov
*Counsel for Federal Defendants*