IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CURTIS LEVAR WELLS, JR.,

   Plaintiff,

v.                                      Case No. 1:22-cv-00140-MSN-IDD

JAVIER FUENTES, SCOTT WANEK,
MICHAEL P. ARMSTRONG, ASHLEY
BARNICKLE, LAUREN LUGASI,
KIMBERLY SOULES, AUSTIN KLINE,
JOHN VANAK, KEITH SHEPHERD,
COUNTY OF ARLINGTON, JOHN AND
JANE DOES 1-10 AND UNITED STATES
OF AMERICA,

   Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT ON BEHALF OF SCOTT WANEK

Plaintiff Curtis Levar Wells, Jr. accuses Detective Scott Wanek ("Detective Wanek") of violating his constitutional rights in the course of investigating his possession of a rifle plate improperly removed from Joint Base Meyer-Henderson Hall ("JBM-HH"). Neither Plaintiff's allegations nor documents in the public record support Plaintiff's conclusory—or entirely speculative—allegations of unconstitutional conduct. Because Detective Wanek acted reasonably and in good faith, and because he did not violate Plaintiff's clearly established constitutional rights, Detective Wanek should be dismissed from this case with prejudice.

### ALLEGATIONS AND CLAIMS

Detective Wanek respectfully incorporates the Allegations and Claims and Procedural Posture stated in the Brief in Support of Motion to Dismiss Second Amended Complaint on

Behalf of Defendants Fuentes, Lugasi, Soules, Kline, and Vanak, ECF No. 60, as if fully set out herein.

## LEGAL STANDARD

The purpose of a motion to dismiss is "to test the legal sufficiency of the Complaint." *Randall v. U.S.,* 30 F.3d 518, 523 (4th Cir. 1994). "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Twombly,* 550 U.S. at 556. A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where they permit a court to infer no more than a possibility of misconduct. See *Iqbal,* 556 U.S. at 678–79. Thus, where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678.

The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a Complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); see also, *Tobey v. Jones*, 706 F.3d 379, 387–88 (4th Cir. 2013).

# ARGUMENT

I. **Plaintiff cannot rely on a theory of "concert of action."**

Much like the original Complaint, the Second Amended Complaint repeatedly invokes a theory of "concert of action" in an apparent attempt to hold each Defendant responsible for the decisions and actions of each other Defendant in this action. *See, e.g.*, ECF No. 48 ¶¶ 169, 170, 181. Plaintiff's invocation of this theory is inconsistent with the Fourth Circuit's instruction that a plaintiff affirmatively show "that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

"Liability under § 1983 has always been personal in nature." *Arebaugh v. Dalton*, 600 F. Supp. 1345, 1348 (E.D. Va. 1985). "Each defendant is entitled to have [her] case considered individually." *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009); see also, *Parker v. Keen*, 7:16-CV-00568, 2017 WL 1234077 (W.D. Va. April 4, 2017); *Trulock v. Freeh*, 275 F.3d. 391, 402 (4th Cir. 2001) ("[L]iability is personal, based upon each defendant's own constitutional violations."); *Octave v. Wade*, No. 3:16-CV-00338-JAG, 2017 WL 465467, at *3 (E.D. Va. Feb. 3, 2017) ("[T]he culpability of one government official does not infect his or her colleagues by osmosis.").

Accordingly, to the extent Plaintiff relies on this theory—by which an officer could be held responsible for the unspecified actions of her colleagues—as to Detective Wanek, the Second Amended Complaint does not state a claim.

## II. Standard for Qualified Immunity.

Qualified immunity provides immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, it should be resolved at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646, n.6 (1987) (emphasis added). Indeed, qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017). The safe harbor of qualified immunity ensures that public employees will not be liable for bad guesses in gray areas, but only for transgressing bright lines. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The Supreme Court has outlined a two-pronged test governing qualified immunity. The first prong considers whether the facts, viewed in the light most favorable to the plaintiff, make out a violation of a constitutional right. If they do, the second prong considers whether the constitutional right in question was "clearly established" at the time of the defendants' alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). The Court has discretion to determine which prong to address first. *Hunsberger v. Wood*, 570 F.3d 546, 552 (4th Cir. 2009). A clearly established right is not discussed in a generalized fashion, but instead must be defined at a high level of particularity. *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003). The Supreme Court has reiterated that "clearly established law must be 'particularized' to the facts of the case . . . [o]therwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S. Ct. 548, 552 (2017) (emphasis added).

The Supreme Court has stated that,

> [A] court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted. If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to

4

qualified immunity. If not, however—i.e., if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "[I]n other words, the legal question must be 'beyond debate.'" *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 725 (E.D. Va. 2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

### III. Detective Wanek did not violate Plaintiff's Fourth Amendment rights as asserted in Count I of the Second Amended Complaint.

Although the Second Amended Complaint does not so clarify, Plaintiff's Fourth Amendment claim against Detective Wanek appears to be most analogous to a malicious prosecution claim. *Smith v. Munday*, 848 F.3d 248, 257 (4th Cir. 2017) ("[A] claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause."). To prove such a claim, Plaintiff must show that Detective Wanek "(1) caused (2) a seizure … pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [his] favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

Specifically, Plaintiff contends that the warrant for his arrest was not supported by probable cause because Detective Wanek made a number of knowing omissions or misrepresentations to the magistrate, the Grand Jury, and the Commonwealth's Attorney. To succeed on this claim, Plaintiff must show that Detective Wanek "deliberately or with 'reckless disregard for the truth' made material false statements … or omitted … material facts with the intent to make, or with reckless disregard of whether they thereby made [his representations] misleading." *Miller v. Prince George's County, MD*, 475 F.3d 621, 627 (4th Cir. 2007) (internal quotations omitted). A plaintiff can establish reckless disregard through "evidence that an officer acted with a high degree of awareness of a statement's probable falsity; that is, when

5

viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.*

Plaintiff identifies a series of alleged misstatements or omissions by Detective Wanek. None of the sources on which Plaintiff purports to rely, however, corroborate his assertions. First, Plaintiff asserts that Detective Wanek falsely stated that the rifle plate was not available to civilians and was valued at more than $500. ECF No. 48 ¶ 171. Plaintiff further claims that Detective Wanek falsely assumed that the rifle plate was at JBM-HH at the same time as Plaintiff, and that Plaintiff knew it was stolen. *Id.* Plaintiff points to Detective Wanek's investigation notes, dated February 10, 2020, as allegedly corroborating these assertions. *Id.* at ¶¶ 81-82. Instead, these notes demonstrate that Detective Wanek received information directly from Shepherd about the origin, history and value of the rifle plate. Exhibit 6 at 1-3. Plaintiff further contends that these notes show Detective Wanek's awareness—prior to obtaining a warrant for Plaintiff's arrest—that the rifle plate was allegedly removed from service in 2016; they do not.[1] ECF No. 48 ¶ 82; Exhibit 6 at 2.

Detective Wanek was not unreasonable in relying on information obtained from an investigator employed by another law enforcement agency. *United States v. Hensley*, 469 U.S. 221, 231 (1985). "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111 (1965). And, to the extent any of the facts on

---

[1] To the extent Plaintiff relies on alleged testimony of Detective Wanek or Shepherd, that testimony would have been offered during Plaintiff's preliminary hearing in General District Court. ECF No. 48 ¶ 82. That court, therefore, was aware of this alleged information *prior* to finding probable cause to certify the charge against Plaintiff to the grand jury. *See Commonwealth v. Curtis Levar Wells, Jr.*, No. GC20000810-00 (Arlington Gen. Dist. Ct. March 16, 2020). That probable cause finding is an intervening cause of Plaintiff's subsequent prosecution, insulating Detective Wanek from liability. *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).

6

which Detective Wanek relied in obtaining a warrant for Plaintiff's arrest were mistaken—a contention Detective Wanek does not concede—his reasonable reliance on information obtained from his fellow officers shows that his statements to the magistrate and grand jury did not amount to knowing or reckless misrepresentations sufficient to impose civil liability. *See Mom's Inc. v. Willman*, 109 Fed. Appx. 629, 636 (4th Cir. 2004) (finding that the reasonableness of conduct of the officer relying on information from another severed the causal connection between the allegedly improper conduct and the subsequent acquisition of the search warrant).

Plaintiff further contends that Detective Wanek falsely represented the value of the rifle plate because he should have known it was in unserviceable condition. ECF No. 48 ¶ 171b. Not only had Detective Wanek received contrary information from Shepherd regarding the value of the rifle plate, but the photos to which Plaintiff points again do not support his position regarding the allegedly "obvious" condition of the rifle plate.[2] Exhibit 7.

Finally, Plaintiff contends that Detective Wanek "misrepresented" the content of Plaintiff's interview and written statement to the magistrate, Commonwealth's Attorney, and grand jury. ECF No. 48 ¶ 172. First, Detective Wanek obtained the warrant for Plaintiff's arrest on February 14, 2020, prior to speaking to Plaintiff. Exhibit 6 at 1. Accordingly, no representations regarding Plaintiff's statements could have been made to the magistrate. Second, Plaintiff's assertions that Detective Wanek "misrepresented" his statements rely on his contention that Detective Wanek somehow coerced him into confessing his guilt for receiving stolen property. ECF No. 48 ¶¶ 139-141. But Plaintiff's allegations do not show—nor does he

---

[2] Detective Wanek limits, as he must in the context of a motion to dismiss pursuant to Rule 12(b)(6), his argument regarding the merits of Plaintiff's claims to the facts alleged in the Second Amended Complaint. Detective Wanek notes, however, that he, in fact, took the rifle plate to the United States Army, which tested it and declared it to be in serviceable condition, a fact that was disclosed in the course of Plaintiff's criminal case and of which he should be aware.

allege—that his "will [was] overborne or his capacity for self-determination critically impaired." *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002) (internal quotation omitted). To determine coercion "courts must consider the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Id.* (internal quotation omitted).

Here, Plaintiff does not allege facts showing any impairment to his capacity for self-determination. Nor does Plaintiff allege threats or coercion by Detective Wanek or any other officer. Instead, Wanek's alleged statement "the truth will set you free" was nothing more than an encouragement to tell the truth. *See United States v. Lall*, No. 8:06-cr-508, 2007 WL 1521487, *3-4 (M.D. Fl. May 23, 2007) (noting that courts have concluded that law enforcement officers are entitled to encourage suspects to tell the truth). Plaintiff, therefore, does not show that his written statement was involuntarily made.

Moreover, in light of Plaintiff's voluntary statement, which provides substantial evidence of his involvement in the crime, Plaintiff cannot recover damages from Detective Wanek or any other ACPD Defendant resulting from his prosecution, even had he suffered an unreasonable search or seizure. *See, e.g. Hector v. Watt*, 235 F.3d 154, 157-58 (3d Cir. 2000) ("[V]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, *etc.*; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."). *Accord Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) ("Now [the plaintiff] seeks damages to compensate him for his … time served, on top of the benefit he enjoys as a result of the

suppression. That remedy would vastly over deter police officers and would result in a wealth transfer that is peculiar, if not perverse.").

Finally, to the extent Plaintiff's Fourth Amendment claim against Detective Wanek relies on the transition of his property from "safekeeping" status to "evidence," Detective Wanek reasonably believed that decision was supported by probable cause for the same reasons he reasonably believed there was probable cause to obtain a warrant for Plaintiff's arrest.

Accordingly, Detective Wanek did not make any misrepresentations regarding either the origin or value of the rifle plate, or plaintiff's statements. Moreover, Detective Wanek's assessment of probable cause was supported by his receipt of information from JBM-HH that Plaintiff was a suspect in a theft of Army property—including rifle plates—and that Plaintiff had been involuntarily separated from the Army shortly before this incident occurred. Exhibit 6 at 2. Plaintiff's allegations, and the evidence on which he purports to rely, do not support his claim that the warrant Detective Wanek obtained for Plaintiff's arrest was not supported by probable cause. Count I should be dismissed at to Detective Wanek.

**IV.     Because Plaintiff does not state a claim for relief under the Fourth Amendment, his claim in Count V also fails.**

In Count V of the Second Amended Complaint, Plaintiff purports to state a claim under Va. Code § 19.2-59, which provides that "[n]o officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer." This code section "has consistently 'been held to provide the same protections as the Fourth Amendment.'" *Nazario v. Gutierrez*, No. 2:21-cv-169, 2022 WL 3213538 (E.D. Va. Aug. 9, 2022) (quoting *Amato v. City of Richmond*, 875 F. Supp. 1124, 1143 (E.D. Va. 1994). *See also Carter v. Commonwealth*, 209 Va. 317, 320, 163 S.E.2d 589, 592 (1968).

9

Accordingly, Plaintiff's claim in Count V against Detective Wanek fails for the reasons outlined above as to Count I. It should be dismiss pursuant to Rule 12(b)(6).

**V.     Detective Wanek did not violate Plaintiff's rights under the Second and Fourteenth Amendments as alleged in Count II.**

In Count II, Plaintiff asserts that Detective Wanek violated his Second and Fourteenth Amendment rights to possess firearms. As Plaintiff's reliance on a 2022 decision of the Supreme Court of the United States, as well as decisions of the Seventh and Eighth Circuits, highlights, Plaintiff's right to possess specific firearms while on the public streets of Arlington County was not clearly established in February 2020.

First, to the extent Plaintiff seeks to rely on either the Fourteenth Amendment's due process standard, or the Fifth Amendment's Takings Clause, he does not state a claim for relief. "[T]he Supreme Court has made clear, allegations of false arrest, malicious prosecution, and unlawful seizure are all governed not by the procedural and due process components of the Fourteenth Amendment, but by the Fourth Amendment…" *Emesowum v. Arlington County*, No. 1:20-cv-113, 2020 WL 3050377 (E.D. Va. June 5, 2020) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Similarly, "[i]t is well-settled that the Fifth Amendment Takings Clause is not implicated when the government exercises its police power." *Id.* (citing *Mugler v. Kansas*, 123 U.S. 623 (1887)). To the extent Count II presents any claim for relief, therefore, it arises solely under the Second Amendment.

Second, Detective Wanek's decision to hold Plaintiff's firearms as evidence of a crime did not violate Plaintiff's Second Amendment rights. In February 2020 the Supreme Court had not yet held that the Second Amendment to the United States Constitution guaranteed a private right to possess firearms on public streets. Plaintiff points to *District of Columbia v. Heller*, 554 U.S. 570 (2008) to support his claim. The holding in *Heller*, however, was limited to the private

right to possess a handgun in an individual's home. *Heller*, 554 U.S. at 635. Plaintiff similarly points to *New York State Rifle & Pistol Association, Inc., v. Bruen*, 142 S. Ct. 2111 (2022), which had not—of course—been decided in February 2020. In fact, at the time this incident occurred, controlling precedent in the Fourth Circuit held that the Second Amendment did not protect an individual's right to possess any specific type of firearm. *See Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen*, 142 S. Ct. 2111 (2022), (concluding that the Second Amendment did not protect an individual's possession of an AR-15 rifle).

The Fourth Circuit does not appear to have addressed the Second Amendment implications of a seizure of firearms by the police during a stop or arrest. The Seventh Circuit's approach in *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571 (7th Cir. 2014) is instructive. The court observed that "Whether and to what extent the Second Amendment protects an individual's right to possess a particular gun (and limits the power of the police to seize it absent probable cause to believe it was involved in a crime) is an issue that is just beginning to receive judicial attention." *Id.* at 571. "[T]he seizure of a particular firearm did not otherwise interfere with this Second Amendment interests… The defendants did not prohibit [the subject] from retaining or acquiring other firearms." *Id.* (discussing *Walters v. Wolf*, 660 F.3d 307, 317-18 (8th Cir. 2011)). An argument that the Second Amendment prohibits the seizure of a particular firearm "implicates not only the individual's right to possess a firearm, but the ability of the police to take appropriate action when they are confronted with a firearm that *may or may not* be lawfully possessed, and which, irrespective of the owner's right to possess the firearm, may pose a danger to the owner or others." *Id.* at 572.

Accordingly, Plaintiff's allegations regarding Detective Wanek's holding Plaintiff's firearms as evidence of a crime does not articulate a clearly established violation of the Second

Amendment. For this reason, Detective Wanek is entitled to qualified immunity. Plaintiff's claim against him for a violation of the Second Amendment should be dismissed with prejudice.

### VI. Plaintiff does not state a cause of action against Detective Wanek for false imprisonment.

In Count 3, Plaintiff charges Detective Wanek with false imprisonment under Virginia law. "To prevail in an action for false imprisonment, a plaintiff must prove that [his] liberty was restrained, either by words or acts that [he] would fear to disregard, and that there was no sufficient legal excuse to justify the restraint." *Dill v. Kroger Limited Partnership I*, 300 Va. 99, 114, 860 S.E.2d 372, 380 (2021). "However, in no case may a person prevail on a claim of false imprisonment if [his] arrest was lawful." *Id.* at 114, 381.

Here, as outlined above in § III, Detective Wanek reasonably believed there was probable cause to obtain a warrant for Plaintiff's arrest for receipt of stolen property. Detective Wanek received information from Shepherd that the rifle plate should not have been possessed by a civilian, that it was present at JBM-HH at the same time as Plaintiff, that it was valued at more than $500, and that Plaintiff was a suspect in a broader theft on the base prior to his involuntary separation from the Army. Plaintiff now asserts that Detective Wanek knew that this information was untrue at the time he petitioned for a warrant for Plaintiff's arrest on February 14, 2020, but the evidence to which he points—namely, Detective Wanek's notes dated February 10, 2020, *see* Exhibit 6—contradict his assertions.

Detective Wanek's decision to obtain a warrant for Plaintiff's arrest, therefore, was lawful at the time it was made and supported by probable cause. And, because Detective Wanek obtained a regular and valid warrant from a neutral and detached magistrate on February 14, 2020, Plaintiff cannot now maintain an action against him for false imprisonment. *Dill*, 300 Va. at 114, 860 S.E.2d at 381. Count 3 should be dismissed at to Detective Wanek.

## V. Plaintiff does not state a cause of action against Detective Wanek for malicious prosecution.

In Count IV, Plaintiff charges Detective Wanek with malicious prosecution under Virginia law. "In an action for malicious prosecution, the plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kai*, 281 Va. 715, 722, 708 S.E.2d 884, 889 (2011).

First, as outlined above in § III, Plaintiff's allegations and the evidence on which he purports to rely do not support his contention that he was arrested without probable cause. Moreover, although the Commonwealth elected to *nolle prosequi* Plaintiff's criminal case when the circuit court granted a motion to dismiss, that decision resulted from the suppression of incriminating evidence, rather than a conclusion that Detective Wanek lacked probable cause.

In addition, Plaintiff does not allege sufficient facts to establish the element of malice. The sole allegation to which Plaintiff points is the alleged absence of probable cause at the time he petitioned for the warrant for Plaintiff's arrest on February 14, 2020. ECF No. 48 ¶¶ 204-05. Although malice may be inferred from a want of probable cause, *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 276 (1967), the documents on which Plaintiff relies do not support his allegations.

Specifically, Detective Wanek's investigation notes, Exhibit 6, do not show that he was aware on February 14, 2020 that any of the information provided to him by Shepherd was unreliable or inaccurate. In fact, Detective Wanek's notes establish the precise source of each piece of information on which he relied and the additional steps he took to corroborate that information. Rather than establish malice, Detective Wanek's conduct as demonstrated through

his notes shows the reasonable approach he took to investigating Plaintiff's possession of the rifle plate.

For this reason, and the reasons outlined, *supra* § III, Plaintiff does not allege a cause of action against Detective Wanek for malicious prosecution. His claims in Count IV should be dismissed.

## CONCLUSION

For the reasons outlined above, as well as the reasons stated in Detective Barnickle's and Officers Fuentes, Soules, Kline, Vanak, and Lugasi's Briefs in Support of their respective Motions to Dismiss, the Second Amended Complaint does not state a claim against Detective Wanek. The Second Amended Complaint should be dismissed as to Detective Wanek with prejudice.

SCOTT WANEK

By Counsel

/s/ Leslie A. Winneberger
David P. Corrigan (VSB No. 26341)
Leslie A. Winneberger (VSB No. 45040)
Blaire H. O'Brien (VSB No. 83961)
Counsel for Javier Fuentes, Scott Wanek,
Ashley Barnickle, Lauren Lugasi, Kimberly Soules,
Austin Kline and John Vanak
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
lwinneberger@hccw.com
bobrien@hccw.com

# **C E R T I F I C A T E**

I hereby certify that on the 6th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Matthew A. Crist, Esq.(VSB No. 85922)
>Matthew A. Crist, PLLC
>10432 Balls Ford Road
>Suite 300
>Manassas, VA 20109
>571-551-6859 - Phone
>mcrist@MACPLLC.net
>
>Ryan C. Samuel, Esq. (VSB No. 84400)
>Arlington County
>One Courthouse Plaza
>2100 Clarendon Blvd, Suite 403
>Arlington, VA 22201
>703-228-3100 - Phone
>703-228-7106 - Fax
>rsamuel@arlingtonva.us
>Jessica D. Aber, Esq.
>United States Attorney's Office for
>the Eastern District of Virginia
>600 East Main Street, Suite 1800
>Richmond, VA 23219
>804-819-5465 – Phone
>jessica.d.aber@usdoj.gov
>
>Yuri S. Fuchs, Esq.
>Office of the United States Attorney
>2100 Jamieson Avenue
>Alexandria, VA 22314
>703-299-3872 – Phone
>703-299-3983 – Fax
>yuri.fuchs@usdoj.gov

/s/ Leslie A. Winneberger
David P. Corrigan (VSB No. 26341)
Leslie A. Winneberger (VSB No. 45040)
Blaire H. O'Brien (VSB No. 83961)
Counsel for Javier Fuentes, Scott Wanek, Ashley Barnickle, Lauren Lugasi, Kimberly Soules, Austin Kline and John Vanak
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
lwinneberger@hccw.com
bobrien@hccw.com