FILED by Arlington County Circuit Court
02/20/2020



CM20000192-00
SW
oth

FILE NO.

**TO ANY AUTHORIZED OFFICER:**
    You are hereby commanded in the name of the Commonwealth to forthwith search the following place, person or thing either in day or night

One Gray 2008 Pontiac bearing Texas registration HNM1133; to include lock boxes, safes, storage containers, after market hidden compartments, tires, spare tires, and any areas of the vehicle where records or information pertaining to the possession, transfer, sale, etc. of stolen property can be concealed.

**SEARCH WARRANT**

**COMMONWEALTH OF VIRGINIA**

for the following property, objects and/or persons:
  See attachment.

*v./In re*

Gray 2008 Pontiac bearing

Texas registration HNM1133

You are further commanded to seize said property, persons, and/or objects if they be found and to produce before the _County of Arlington_ ........................ Circuit Court an inventory of all property, persons, and/or objects seized.

This SEARCH WARRANT is issued in relation to [X] an offense substantially described as follows:
[ ] a person to be arrested for whom a warrant or process for arrest has been issued identified as follows:

Receiving, etc., stolen goods in violation of § 18.2-108, 1950 Code of Virginia, as amended.

**FILED**

FEB 20 2020

PAUL FERGUSON, Clerk
Circuit Court Arlington County, VA
by:_____ Deputy Clerk

I, the undersigned, have found probable cause to believe that the property or person constitutes evidence of the crime identified herein or tends to show that the person(s) named or described herein has committed or is committing a crime, or that the person to be arrested for whom a warrant or process for arrest has been issued is located at the place to be searched, and further that the search should be made, based on the statements in the attached affidavit sworn to by

Corporal A. Barnickle #1574
NAME OF AFFIANT

2/18/20  4:39 PM
DATE AND TIME

[ ] CLERK   [X] MAGISTRATE   [ ] JUDGE

**EXHIBIT
4**

FORM DC-339 (MASTER, PAGE ONE OF TWO) 07/17

## SEARCH INVENTORY AND RETURN

The following items, and no others, were seized under authority of this WARRANT:

1. BLACK IPHONE WITH BLACK CASE
2. SUITSUPPLY WOMEN'S SWEATER SIZE M
3. 6" HEMORRAGE BANDAGE
4. DART SPIKES w/ HOLDER
5. LOCK SET "XINROL"
6. ~~GITT~~ BANDAGE + GAUZE
7. 24 HR PARKING PASS
8. CAMBRIDGE NOTEPAD
9. PROVERBS 3:5 NOTEBOOK
10. BLACK BAG CONTAINING UNKNOWN POWDER SUBSTANCE
11. RIFLE MAGAZINE WITH 28 ROUNDS
12. 

The statement above is true and accurate to the best of my knowledge and belief.

2/20/20
DATE

[signature] #1574
EXECUTING OFFICER

Subscribed and sworn before me this day

2.20.20
DATE

[signature]
[X] CLERK  [✓] MAGISTRATE  [ ] JUDGE

### FOR NOTARY PUBLIC'S USE ONLY:

State of ..................................... [ ] City  [ ] County of ...........................................................

Acknowledged, subscribed and sworn to before me this ............ day of ......................................... , 20 ...........

......................................
NOTARY REGISTRATION NUMBER

_____
NOTARY PUBLIC
(My commission expires: ...................................... )

---

### EXECUTION

Executed by searching the within described place, person or thing.

1650
FEBRUARY 18, 2020 C H:30 HRS.
DATE AND TIME EXECUTED

A. BARNICKLE #1574
EXECUTING OFFICER

Certified to Arlington

Circuit Court on 2.20.20
DATE

[signature] #1574
EXECUTING OFFICER

Received [✓] in person [ ] by certified mail
[ ] by electronically transmitted facsimile

on 2.20.20
DATE

by: [signature]
CLERK OF CIRCUIT COURT

---

# AFFIDAVIT FOR SEARCH WARRANT

Commonwealth of Virginia          VA. CODE § 19.2-54

The undersigned Applicant states under oath:

1. A search is requested in relation to [X] an offense substantially described as follows:
   [ ] a person to be arrested for whom a warrant or process for arrest has been issued identified as follows:

   Receiving, etc., stolen goods in violation of § 18.2-108, 1950 Code of Virginia, as amended.

[ ] CONTINUED ON ATTACHED SHEET

2. The place, person or thing to be searched is described as follows:

   One Gray 2008 Pontiac bearing Texas registration HNM1133; to include lock boxes, safes, storage containers, after market hidden compartments, tires, spare tires, and any areas of the vehicle where records or information pertaining to the possession, transfer, sale, etc. of stolen property can be concealed.

[ ] CONTINUED ON ATTACHED SHEET

3. The things or persons to be searched for are described as follows:

   See attachment.

[ ] CONTINUED ON ATTACHED SHEET

(OVER)

FORM DC-338 (MASTER, PAGE ONE OF TWO) 07/17

---

| FILE NO. |
|---|

**AFFIDAVIT FOR
SEARCH WARRANT**

APPLICANT:

Barnickle, A #1574
NAME

Corporal
TITLE (IF ANY)

1425 North Courthouse Road
ADDRESS

Arlington, Virginia 22201

Certified to Clerk of

.................................................. Circuit Court
CITY OR COUNTY

on ...........................................................
DATE

.......................          .......................
TITLE                              SIGNATURE

Original Delivered [ ] in person   [ ] by certified mail
[ ] by electronically transmitted facsimile
[ ] by use of filing/security procedures
defined in the Uniform Electronic
Transactions Act

to Clerk of ...................................... Circuit Court
CITY OR COUNTY WHERE EXECUTED

on ...........................................................
DATE

.......................          .......................
TITLE                              SIGNATURE

4. The material facts constituting probable cause that the search should be made are:

**See attached Statement of Material Facts.**

5. The object, thing or person searched for [X] constitutes evidence of the commission of such offense [X] is the person to be arrested for whom a warrant or process for arrest has been issued.

6. [X] I have personal knowledge of the facts set forth in this affidavit AND/OR

[X] I was advised of the facts set forth in this affidavit, in whole or in part, by one or more other person(s). The credibility of the person(s) providing this information to me and/or the reliability of the information provided may be determined from the following facts:

**All officers mentioned in this affidavit are police officers currently in good standing with the Arlington County Police Department.**

The statements above are true and accurate to the best of my knowledge and belief.

| Corporal | Barnickle, A #1574 |
|---|---|
| TITLE OF APPLICANT | APPLICANT |

Subscribed and sworn to before me this day.

| 2/18/20   4:59 PM | |
|---|---|
| DATE AND TIME | [ ] CLERK   [X] MAGISTRATE   [ ] JUDGE |

FORM DC-338 (MASTER PAGE TWO OF TWO) 07/17

Statement of Material Facts

In re: search of

**Gray 2008 Pontiac bearing Texas registration HNM1133**

I, Corporal Ashley Barnickle, hereby known as Affiant being a duly sworn law enforcement

officer, hereby declare and state:

## A. Introduction and Background

    a.  I make this affidavit in support of an application for a search warrant pursuant to

        § 19.2-53, 1950 Code of Virginia, as amended, for the black **Gray 2008 Pontiac**

        **bearing Texas registration HNM1133** which is located in Arlington County,

        Virginia. Based on the facts adduced in this affidavit, there is probable cause to

        believe that in the account described, there exists evidence of the offense of

        Receiving, etc., stolen goods in violation of § 18.2-108, 1950 Code of Virginia, as

        amended.

    b.  Your affiant is a police officer with the Arlington County Police Department and

        is a Corporal temporarily assigned to the Criminal Investigation Section.  During

        her employment as a police officer within the Arlington County Police

        Department, your affiant has received both formal and informal training in

        criminal investigations. Your affiant has investigative experience involving

        vehicles, electronics, money, credit cards, drugs, etc.  Your affiant has undertaken

        numerous investigations into the same that have resulted in both arrests and

        convictions with Arlington County General District Court and Circuit Court.

c. Your affiant has been employed as a sworn law enforcement officer during all the dates and times stated herein and all information contained in this affidavit is based upon personal knowledge of your affiant. All facts or observations not made by your affiant were relayed directly to her by the person who made such observations. This affidavit contains the information necessary to support probable cause and is not intended to document every fact of the investigation that is known to your affiant or the government.

## PROBABLE CAUSE

1. On February 9, 2020, at about 3:36 PM, Curtis Lavar WELLS, Jr. was contacted by Arlington County Police Officers at 1 Southgate Road in Arlington County. WELLS was outside the vehicle speaking on the telephone and pointing toward Joint Base Fort Myer Henderson Hall. WELLS drove to that location in a 2016 Ford Mustang, bearing VIN 1FA6P8CF0G5302296, without current registration and was issued a traffic summons for the same. Prior to towing the vehicle, an inventory of the vehicle was completed.

2. The following items were found inside the 2016 Ford Mustang belonging to WELLS:

    a. Black Glock 19 9mm pistol, Serial Number: CWX611 (The frame had a "US" following the serial number; however, the slide only had CWX611.)

    b. Black Diamondback DB15 AR-15, Serial Number: DB1751540, equipped with a black Python butt stock, green laser attached to the 15" M-Lok hand rail, a fore grip, a Tacticon Armament red dot sight, and a rifle scope. There were 5 fully loaded 30 round P-Mag AR 5.56 magazines.

    c. DJI Phantom GL300F Drone

    d. Black Dell Latitude 3550 laptop with serial number 268578-47918

e.  Multiple US Army patches

f.  Stanley Fat Max 24-inch yellow crowbar

g.  Neon orange plastic mallet hammer

h.  2 black rubber knives

i.  Pair of black gloves with padded knuckles

j.  Hard black face mask

k.  White Fortnite face mask with a red heart around the eye

l.  2 Vests with bulletproof armor

m.  **Medium Ceradyne, Inc. rifle plate with serial number: 2923205**

n.  Black drop holster compatible with the Glock 19

o.  Enola Gaye wire pull smoke grenade

p.  Texas license plate "HNM 1133"

q.  2 Midland Radio Walkie-Talkies

r.  A list of "Dark Web" web sites

s.  Mail with the following addresses: 7139 Rock Ridge Ln APT L Alexandria, VA.22315 USPS change of address- 233 Sheridan Ave 421 Barracks Ft Myer, VA. 22211 from Navy Federal Credit Union

t.  Crystal Woods parking pass in Mr. Wells' name

u.  Handwritten list of Mr. Wells' weapons and equipment fund that he had and/or needed to purchase

v.  Tan leather women's Michael Kors purse

w.  A handwritten list of chemical compounds that have potential to make the human body bulletproof or even invincible

3. WELLS recovered his 2016 Ford Mustang from the contractor lot on or about February 10, 2020 and is currently in possession of the vehicle.

4. A check of WELLS military records found he had been assigned to Echo Company, 4/3 Infantry Regiment "The Old Guard", Fort Myer, Virginia but had been separated from the US Army on or about May 3, 2019 for Patterns of Misconduct, with a General Under Honorable Conditions discharge (this discharge is one step below a normal Honorable Discharge). As part of WELLS separation, he was required to surrender all issued military equipment.

5. Your Affiant learned that US Army soldiers are specifically briefed that they are not allowed possess US Army issued body armor plates upon and after separation from the US Army.

6. Your Affiant learned that after WELLS cleared the Fort Myer equipment issue surrender process, he was given a 'statement of no charges', meaning that WELLS had returned all issued equipment and did not owe the US Army for missing equipment.

7. Your Affiant learned that the Medium Ceradyne, Inc. rifle plate with serial number: 2923205, found in WELLS' possession, was purchased by the US Army from Ceradyne on or about June 10, 2011. The value for one plate is $590.00 US.

8. Your Affiant learned that DOD Policy identifies the Medium Ceradyne, Inc. rifle plate as a 'DEMIL D' item, meaning that they are not resold to the civilian market. Upon determination that they are no longer of use they are transferred to the appropriate US Army facility and destroyed.

9. Your Affiant learned that Joint Base Myer-Henderson Hall Police Department Investigations Branch did a search for cases of stolen property with a focus on Medium

Ceradyne, Inc. rifle plates and discovered a Larceny of Government and Personal Property Case #00421-2019-MPC041 reported on March 29, 2019. This case occurred in Echo Company, 4/3 Infantry Regiment shortly before WELLS departure from the US Army. A review of the Case found several pairs of Medium Ceradyne, Inc. rifle plates were stolen along with a large amount of US Government and personal tactical equipment, the total value over $5,000.00 US. Because of this recent incident, WELLS has been identified as a "Person of Interest" in the 2019 Larceny case due to his possession of a similar plate and the proximity of his departure from the Military.

10. Your Affiant believes that WELLS is in possession of several pairs of Medium Ceradyne, Inc. rifle plates that were reported stolen from the US Army, in addition to other tactical gear owned by the US Army.

11. Since WELLS cannot physically bear such a large amount of military equipment on his own, your Affiant believes that WELLS will attempt to sell this equipment to 3rd parties.

12. Your Affiant knows from her training and experience that suspects attempting to buy and sell stolen property tend to use personal communication devices, such as personal computers and smartphones, to coordinate the sales.

13. On February 18, 2020 WELLS returned to the Arlington County Police Department in an attempt to obtain his personal property. He was driving a **Gray 2008 Pontiac bearing Texas registration HNM1133** which contained evidence to include a personal communication device.

## TRAINING AND EXPERIENCE REGARDING DIGITAL DEVICES

14. As described above, this application seeks permission to search for records that might be found in the **Gray 2008 Pontiac bearing Texas registration HNM1133** in whatever

form they are found.  One form in which the records might be found is data stored on a computer's hard drive, tablet, or other electronic device or storage media (including scanners and printers with memory capabilities).  Another form in which the records might be found is data stored on a wireless telephone.  Thus, the warrant applied for would authorize the seizure of computers, tablets, wireless telephones, and other digital devices or storage media (hereinafter, "digital devices"),[1] and the copying of electronically stored information.

15.     Based on my training and experience, a person sending an email must use a computer or mobile device, such as a tablet or wireless telephone, to transmit such communications.  Furthermore, in my training and experience, these devices typically travel with a subject or remain in their residence.  It is therefore, reasonable to believe that computers, tablets, wireless telephones, and other electronic storage media may be present in the **Gray 2008 Pontiac bearing Texas registration HNM1133.** If digital devices are in the **Gray 2008 Pontiac bearing Texas registration HNM1133,** there is probable cause to believe those records will be stored on those devices, for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that wireless telephones have capabilities that allow them to serve as: telephones, as described above in Paragraph 11(d); digital cameras, as described above in Paragraph 11(e); portable media players, as described above in Paragraph 11(f); GPS navigation devices, as described above in Paragraph

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); GPS devices and navigation systems; and security devices.

11(g); and PDAs, as described above in Paragraph 11(h).  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

   b. Further, based on my knowledge, training, and experience, I know that digital devices—like computers, tablets, wireless telephones, and other electronic devices or storage media—can store information for long periods of time.  Similarly, things that have been viewed on the Internet via a device are typically stored for some period of time on the device. This information sometimes can be recovered with forensic tools.

  16. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any digital device found in the **Gray 2008 Pontiac bearing Texas registration HNM1133.**

   a. Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment.  There are so many types of digital devices and software programs in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search.  In addition, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched.

   b. Digital data is particularly vulnerable to inadvertent or intentional modification or destruction.  Searching digital devices can require the use of precise, scientific

procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data. As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is essential to conducting a complete and accurate analysis of data stored on computers, tablets, wireless telephones, or other electronic devices or storage media devices.

        c.      The volume of data stored on many digital devices will typically be so large that it will be highly impractical to search for data during the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 500 or more gigabytes are now commonplace. Consequently, just one device might contain the equivalent of 250 million pages of data, which, if printed out, would completely fill three 35' x 35' x 10' rooms to the ceiling. Further, a 500 gigabyte drive could contain as many as approximately 450 full run movies or 450,000 songs.

        d.      Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files saved to a hard drive can be stored for years with little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. Normally, when a person deletes a file from a digital device, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, *i.e.*, space on a hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space, for long periods of time

before they are overwritten.  In addition, a device's operating system may also keep a record of deleted data in a swap or recovery file.  Similarly, files that have been viewed on the Internet are often automatically downloaded into a temporary directory or cache.  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently downloaded or viewed content.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.  Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment.  Recovery also can require substantial time.

      e.      Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well.  In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications and materials contained on the digital devices are, as described further in the attachments, called for by this warrant.  Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole.  Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used.  Web browsers, email programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords.  Operating systems can record additional

data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

       f.     Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device. For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device. Evidence of the absence of particular data on a computer, tablet, wireless telephone, or other electronic device or storage media device is not segregable from the digital device. Analysis of the device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment and can require substantial time.

17.    Digital device users can attempt to conceal data within digital devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Digital device users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, digital device users can conceal data within another seemingly unrelated and

innocuous file in a process called "steganography."  For example, by using steganography a

digital device user can conceal text in an image file that cannot be viewed when the image file is

opened.  Digital devices may also contain "booby traps" that destroy or alter data if certain

procedures are not scrupulously followed.  A substantial amount of time is necessary to extract

and sort through data that is concealed, encrypted, or subject to booby traps, to determine

whether it is evidence, contraband or instrumentalities of a crime.  In addition, decryption of

devices and data stored thereon is a constantly evolving field, and law enforcement agencies

continuously develop or acquire new methods of decryption, even for devices or data that cannot currently be decrypted.

18.     Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

**Basis for Facts contained in this Affidavit**

19. Your Affiant makes this affidavit, in part, based on personal knowledge derived from my participation in this investigation, and in part, based upon information form the following sources:

    a.   Detective Scott Wanek who is a detective in the Homeland Security Section of the Arlington County Police Department.

    b.   Keith Shepherd who is a Fort Myer Detective in good standing and has knowledge of this investigation.

    c.   Special Agent Charles Starr who is a Task Force Officer with the FBI in good standing and has knowledge of this investigation.

**CONCLUSION**

20.     Your Affiant has not set forth each and every fact learned during the course of her investigation. Rather, your Affiant has set forth only those facts believed to be necessary to establish probable cause for the issuance of a search and seizure warrant based on this affidavit.

21.     For all the reasons described above, there is probable cause to believe the items listed in Attachment B, are evidence, fruits, and instrumentalities of the offenses described in Attachment B, and will be found in a search of the **Gray 2008 Pontiac bearing Texas registration HNM1133** described in the Attachments A-1.



## ATTACHMENT A-1

*Vehicle to Be Searched*

The vehicle to be searched is:

**Gray 2008 Pontiac bearing Texas registration HNM1133**



## ATTACHMENT B

**A.    Items to be Seized**

1.    All items that constitute fruits, evidence, or instrumentalities of violations of evidence of the offense of Receiving, etc., stolen goods in violation of § 18.2- 108, 1950 Code of Virginia, as amended and including, but not limited to, the following:

   a.    Stolen property, including Medium Ceradyne, Inc. rifle plates;

   b.    records or information pertaining to the offense of Receiving, etc., stolen goods in violation of § 18.2- 108, 1950 Code of Virginia, as amended;

   c.    records or information pertaining to the possession, transfer, sale, etc. of stolen property;

   d.    records or information pertaining to the creation or communication of any materially false statement or representation to a law-enforcement officer, who is in the course of conducting an investigation of a crime by another;

   e.    records or information relating to accounts with Internet service providers that are affiliated with, or assigned to, the WELLS or WELL's residence;

   f.    records or information referring or relating to any storage facilities, safety deposit boxes, mailboxes, or other locations where any of the foregoing items may be located;

   g.    all containers in which the items described above may be stored, including, but not limited to, briefcases, backpacks, bags, shoe boxes, safes, storage containers, or tool boxes;

   h.    records and information relating to the keys, codes, or combinations for any briefcases, backpacks, bags, safes, storage containers, or tool boxes in which the items described above may be stored;

2. Computers, wireless telephones, or other electronic devices or storage media that may have been used as a means to commit the crimes under investigation;

3. For any computer, wireless telephone, or other electronic device, storage media, or digital device (hereinafter, "DEVICE") whose seizure is otherwise authorized by this warrant, and any computer, wireless telephone, or other electronic device or storage media that contains, or in which there are, stored records or information that is otherwise called for by this warrant:

    a. evidence of who used, owned, or controlled the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat or instant messaging logs, photographs, and correspondence;

    b. evidence of software that would allow others to control the DEVICE, such as viruses, Trojan horses, and other forms of malicious software;

    c. evidence of security software designed to detect the types of malicious software described above;

    d. evidence of the lack of the types of malicious software described above, as well as evidence of the absence of security software designed to detect the types of malicious software described above;

    e. evidence indicating how and when the DEVICE was accessed or used to determine the chronological context of DEVICE access and use and events relating to the crimes under investigation;

    f. evidence indicating the DEVICE user's state of mind as it relates to the crimes under investigation;

g.      evidence of the attachment of the DEVICE to a computer, wireless telephone, or other electronic device or storage media;

h.      evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the DEVICE;

i.      evidence of the times the DEVICE was used;

j.      passwords, encryption keys, and other access devices that may be necessary to access the DEVICE;

k.      documentation and manuals that may be necessary to access the DEVICE or to conduct a forensic examination of the DEVICE;

l.      records of or information about Internet Protocol addresses used by the DEVICE;

m.      records of information about the DEVICE's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and,

n.      contextual information necessary to understand the evidence described in this Attachment.

**Definitions**

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing

3



or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" or "storage media" includes any physical device upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

The term "digital devices" collective refers to computers and storage medium/storage media, as defined above.

# INVENTORY OF SEIZED PROPERTY

### (19.2-57 CODE OF VIRGINIA, AS AMENDED)

| OFFICER SEIZING | CASE NUMBER |
|---|---|
| WARNER, Scott #1137 | 2020 - 02090158 |

| OFFICER INVENTORYING | |
|---|---|
| K. AHN #909 | Page 1 of 1 |

| ITEM NO. | DESCRIPTION OF PROPERTY SEIZED |
|---|---|
| 1 | SUITSUPPLY WOMEN'S SWEATER SIZE M. |
| 2 | 6" HEMORRHAGE CONTROL BANDAGE. |
| 3 | DART SPIKES W/ HOLDER |
| 4 | LOCK SET "XINRUI" |
| 5 | CHEST BANDAGE & GAUZE |
| 6 | 24 HR PARKING PASS & DISCHARGE TOOL |
| 7 | MEAD CAMBRIDGE NOTE PAD BLUE |
| 8 | PROBERBS 3:5 NOTEBOOK |
| 9 | BLACK BAG CONTAINING UNKNOWN WHITE POWDER & OTHER SUBSTANCE |
| 10 | RIFLE MAGAZINE (5.56 MM) W/ 28 ROUNDS. |
|  |  |
|  |  |

I, CORPORAL ASHLEY BARNICKLE, of the Arlington County Police Department, certify that the above listed property was seized after execution of a search warrant at THE ARLINGTON COUNTY POLICE IMPOUND LOT on FEBRUARY 20, 2020.

Subscribed and sworn before ABaraKll /#1574, Clerk of the Circuit Court

in and for the County of Arlington, on this 20 day of february, 20 20.

By: _____ DEPUTY CLERK

*White Original – Court     Yellow Copy – Officer     Pink Copy – Defendant*

ACPD 12/00                                                                                                        *5140