UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| **CURTIS LEVAR WELLS, JR.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.**    **1:22-cv-00140-MSN-IDD** |
| | ) | **Next Event:  Motion Hearing** |
| **JAVIER FUENTES,** et al., | ) | **December 16, 2022** |
| Defendants | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT WANEK'S MOTION TO DISMISS**

COMES NOW Plaintiff, Curtis Wells, by and through counsel and for his Memorandum in Opposition to Defendant Wanek's Motion to Dismiss (Dkt. No. 63), and therefore, respectfully states as follows:

In the interests of brevity and not repeating briefing commonly applicable, Plaintiff incorporates by this reference Plaintiff's Memorandum in Opposition to Defendant County of Arlington's Motion to Dismiss; incorporating, as if restated herein in its entirety, Plaintiff's Introduction, Factual Background, and Legal Standard stated therein.

**WANEK-SPECIFIC FACTUAL BACKGROUND**

In addition to the factual allegations incorporated above, facts specific to Mr. Wells' claims against Wanek include the following:

On February 10, 2020, without Mr. Wells' knowledge or consent, and without a warrant or any Fourth Amendment exception, and with sufficient time to go through the warrant process, Defendant Wanek searched through the property held in the Arlington County Police Department ("ACPD") and Wanek made several unreasonable guesses that some of the property might be stolen.  According to Wanek's notes, he, and other officers, guessed that almost everything

1

brought to the ACPD as "Safekeeping" might be stolen – there was no reasonable basis or probable cause to believe any of it might be stolen.  But Wanek kept guessing.

According to his notes, Wanek guessed an iPad was stolen so he contacted a possible owner, a woman whose business card was in Mr. Wells' possession; she said she gave talks about the real estate industry and regularly gives out her cards and that she was not missing anything.  Mr. Wells was interested in the real estate business, and the conversations he had with the ACPD Officers on February 9, 2020, and his documents found in his car reflected as much.  Wanek also guessed Mr. Wells' pistol was stolen because it had a "US" mark on it, an exceptionally common mark on a used firearm, and he traced the firearm and found it was indeed lawfully purchased by Mr. Wells.

Wanek kept guessing and moved his attention to the Rifle Plate.  SAC ¶ 80.  He contacted Defendant Shepherd who also frivolously guessed it might be stolen.  SAC ¶¶ 88-89.  Shepherd alleged to have contacted someone at the manufacture of the Rifle Plate, Ceradyne; however, in response to an evidence preservation notice, Ceradyne responded and indicated the company changed hands approximately one month before Shepherd would have contacted them and they were unaware of any contact with any person relating to that case.  **Exhibit 1**.  It is, of course, possible that Shepherd spoke with someone at Ceradyne, this is just the response they decided to provide.

Wanek attempted to contact Mr. Wells' former roommate, one Mr. Devin Dotson.  From the notes and emails obtained by Plaintiff, it appears there was some dispute regarding Mr. Dotson and the spelling of his name and that there were two with phonetically similar names of "Dodson" or "Dotson" in the unit; ultimately, Mr. Dotson refused to testify and asserted his Fifth Amendment privilege against being a testimonial witness against himself.  From the assertions of

the Commonwealth's Attorney, however, Mr. Dotson affirmatively told the ACA he was not missing a Rifle Plate.  **Exhibit 2**.  Defendant Wanek was so desperate to have Mr. Wells arrested that he attempted to farm out the arrest to the Fairfax Police related to a soft body armor that Wanek falsely claimed Mr. Wells also confessed to have stolen; fortunately, no one would take his bait.  Running out of time, Wanek found in the Rifle Plate an item with an origin and value that he could obfuscate sufficiently to have a magistrate issue an arrest warrant based upon false or misleading information.

The items taken by Defendants Armstrong, Fuentes, Lugasi, Soules, Kline, and Vanak on February 9, 2020, demonstrate nothing other than Plaintiff had a messy trunk cluttered with items left over from his move, items sent to him by his parents, items he kept in his trunk for the purposes of playing airsoft and, as he explained, he had recently gone to the shooting range and had his unloaded rifle in his trunk.  Despite these boring and true explanations, the Defendants made unreasonable and false claims about what they found.  These unreasonable, misleading, and false claims infected each stage thereafter and were used in affidavits for warrants, in testimony to the Court, ostensibly in claims made to the Commonwealth's attorney, and, ultimately, the grand jury returned a true bill based upon them.

These unreasonable and false claims included, without limiting, an affirmative claim that Mr. Wells had "a handwritten list of chemical compounds that have potential to make the human body bulletproof or even invincible."  SAC ¶ 96.  Such assertion can be heard by an officer at the 5:10 PM mark stating "the thing about making your skin bulletproof is weird…"[1]  From the notes, it appears Kline then reported such facially false statement.

---

[1] Believed to be Soules.

Such assertion was made, and repeated, by Defendants throughout the subsequent malicious prosecution; such assertion is facially false because no such list can possibly exist, let alone be in Mr. Wells' possession.  Such obvious falsity aside, it is also representative of how irrational the Defendants were in their hope to find some way to fool a magistrate into issuing an arrest warrant for Mr. Wells.  The Defendants viewed a series of handwritten notes Mr. Wells had made relating to health products, specifically the company named "Bulletproof" and a product they make "Bulletproof Choline Force."  SAC ¶¶ 99 – 100.  Such false information was based upon the illegal seizures conducted on February 9, 2020, and appears to have been initially reported by, at least, Defendants Kline and Soules, and repeated and used by Wanek and Barnickle in their applications for warrants, among others.  SAC ¶ 98 – 99.

Ultimately, Wanek had a hunch that the Rifle Plate was stolen.  The Rifle Plate was lawfully owned by Plaintiff and unlawfully seized on February 9, 2020, unlawfully removed from a closed container, the soft outer carrier, and was not in plain view because it was inside its carrier, and they were in Mr. Wells' trunk.  At the time of its unlawful seizure, the soft carrier[2] was completely closed, and the Rifle Plate was not in plain view.  With no reasonable articulable suspicion or probable cause that it was related to any crime, and it could bear no relation to the citations issued on February 9, 2020, a Defendant on February 9, 2020, removed the Rifle Plate from its carrier and photographed it, thus documenting their violation of the Fourth Amendment and Va. Code §19.2-59.

Thereafter, Wanek and Shepherd, starting on February 10, 2020, through February 14, 2020, investigated this Rifle Plate, its value, and origin.  It is unclear from the notes exactly

---

[2] Plaintiff owned two soft armors at the time, one was seized with the Rifle Plate, the other was left in the car on February 9, 2020, and seized on February 18, 2020.

when, however, Wanek and Shepherd each seem to indicate they received information relating to the U.S. Army purchasing this particular Rifle Plate in 2009 and its value was $471.38.  **Exhibit 3**.  It seems this information was not given to Mr. Wells' attorney until June 2, 2020, and was not given to the Commonwealth's Attorney until late May.  **Exhibit 4**.  Wanek and Shepherd testified, misleadingly and falsely, during the Preliminary Hearing on March 16, 2020, relating to this topic and these documents.

In response to questions relating to the particular Rifle Plate in question, Shepherd conveyed information he learned about the Rifle Plate, and he was directly asked about the ***purchase price*** of the specific Rifle Plate, however, he mislead the Court and Commonwealth's Attorney by providing the ***replacement cost***.  Prelim. Hrn'g. Tr. 35:17 – 36:22, March 16, 2020.[3] If a soldier fails to turn in his Rifle Plate he would be charged an amount as indicated by Central Issue Facility's website, the CIF, at that time, would charge the soldier the higher amount of $590.91.  **Exhibit 6**.  Shepherd's shift from his prior testimony about the actual Rifle Plate in question and its purchase back in 2009 to the replacement cost stated by CIF is a sleight of hand and evinces a guilty mind and intentional deception.  On information and belief, both Shepherd and Wanek were soldiers and knew how this system worked from first-hand experience – thus their false statements about out-processing procedures were knowingly false.

Shepherd testified and admitted he had no evidence that the Rifle Plate actually ended up near Mr. Wells and that he only assumed the Rifle Plate in question made it to Ft. Myer, as quoted in Plaintiff's SAC.  SAC ¶ 88.  Prelim. Hrn'g. Tr. 43:17 – 44:8, March 16, 2020.  Wanek then falsely stated he received and read actual receipts indicating that the Rifle Plate was sent to

---

[3] Attached hereto as Exhibit 5.

Ft. Myer, and that he received those receipts from Shepherd, in contradiction to Shepherd's testimony. *Id.* at 87:2 – 88:18.

Wanek further testified that Mr. Wells' letter he wrote at the urging of Wanek, while in handcuffs in an interrogation room, had indicated Mr. Wells' guilt; it has been referred to as an "admission" by the Defendants in their motions – but it is nothing of the sort.  Dkt. No 48-5. The letter written at the urging of Wanek indicated nothing other than Mr. Wells being petrified of the charges against him, being handcuffed to a table at the hands of a skilled interviewer, and that Wanek had made representations to Mr. Wells that there was some misunderstanding, and that Mr. Wells would be let go if he wrote an apology letter.  The letter speaks for itself, there is no admission of any wrongdoing therein. *Id.*  Wanek falsely testified that Mr. Wells "confessed to having taken that plate from someone on Fort Myer.  He said that it did belong to Fort Myer. He recognized that it was a serialized piece of issued equipment from Fort Myer, and he indicated that he took it from someone in the barracks. Yeah."  Prelim. Hrn'g. Tr. 67:17-20, March 16, 2020.

Wanek also falsely alleged that Mr. Wells had armor piercing 5.56 ammunition.  Mr. Wells possessed the extremely common "green-tip" ammunition that is not armor piercing because the projectile is made up primarily of lead.  18 U.S.C. 921(a)(17)(B).  The Court specifically referenced Wanek's testimony regarding armor piercing ammunition when announcing its determination to hold Mr. Wells as a danger to the community, as Wanek knew would happen.

Wanek applied for and received an arrest warrant and search warrants on February 14, 2020.  **Exhibit 7**.  The only matter in the Warrant Affidavit's Probable Cause Statement by Wanek that is not mere *boilerplate content*, likely copied from other affidavits, is a list of the

lawfully owned items taken from Mr. Wells on February 9, 2020, a statement and description of where Mr. Wells lived, and Wanek included the necessarily false allegation that Mr. Wells possessed, "[a] handwritten list of chemical compounds that have potential to make the human body bulletproof or even invincible," Wanek included the false statement of the value[4] of the Rifle Plate, a misleading explanation of what 'DEMIL D' implies, using it as a method of asserting that Mr. Wells is guilty until proven innocent and there could be no innocent way in which Mr. Wells could have come into possession of the Rifle Plate, and an inclusion of the *evidence laundering*[5] between Shepherd and Wanek.

That is, when one removes the boilerplate information that does not relate to Mr. Wells, removes the false or misleading statements, and removes statements of mere guesswork, Wanek's warrant affidavit on February 14, 2020, is devoid of any fact or circumstance within Wanek's knowledge sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown that Mr. Wells had committed a crime.  SAC ¶¶ 76, 80 – 87.  This warrant affidavit is likely a mirror of what Wanek orally stated to the Magistrate to receive the arrest warrant on the same day, similarly devoid of probable cause.

## ARGUMENT

### SECTION I – CONCERT OF ACTION.[6]

Wanek substantially restates the ACPD Officers' Memorandum regarding the claim that

---

[4] The facially unserviceable Rifle Plate that was nearing a decade old had practically no value at the time of the suspected theft.

[5] Wanek informing Shepherd of Wanek's suspicion that Mr. Wells stole the Rifle Plate thus making Mr. Wells a suspect in Shepherd's investigation and then Wanek using Shepherd's inclusion of Mr. Wells as a suspect in the federal investigation as evidence that Mr. Wells probably stole the Rifle Plate.

[6] Plaintiff responds, *seriatim*, to Wanek's Argument section.

Plaintiff cannot rely upon the Concert of Action theory of recovery. Such assertion is equally incorrect. *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996). "1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link." *Malley v. Briggs*, 475 U.S. 335, 344 n.7, 106 S. Ct. 1092, 1098 (1986). In the interests of brevity, Plaintiff incorporates Section I of his Memorandum in Opposition to the ACPD Officers' Motion to Dismiss, as if restated in full.

Factually, Plaintiff's SAC sufficiently alleges that Wanek concurrently, on and after February 10, 2020, worked with the ACPD Defendants, Barnickle, and Shepherd to violate Plaintiff's civil rights. SAC ¶ 54, 76, 80-93, 96, 98, 99, 101-114, 119. The natural consequences of Wanek's actions foreseeably resulted in the harms and damages claimed in the SAC.

**SECTION II – QUALIFIED IMMUNITY.**

Wanek substantially restates the ACPD Officers' section on Qualified Immunity and, therefore, Plaintiff incorporates by this reference Section II of his Memorandum in Opposition to the ACPD Officers' Motion to Dismiss, as if restated in full.

Wanek bears the burden to prove Qualified Immunity applies to the instant case and fails to carry such burden. The SAC provides well-pleaded allegations that Wanek crossed bright lines and violated clearly established constitutional protections. On February 10, 2020, without a warrant, without probable cause, with no consent, with no Fourth Amendment exception, and with plenty of time to go through the warrant process if any probable cause existed, Wanek searched Mr. Wells' property allegedly held as "safekeeping." SAC ¶¶ 80-100. Such conduct further supports the allegation that Mr. Wells' property was unlawfully taken as a mere ruse to

rummage through it to find contraband.  Unable to find any contraband, Wanek created it out of whole cloth.  Wanek lied to or provided substantially misleading testimony to the magistrate and, upon such lies or misleading statements, the magistrate was tricked into issuing warrants for Mr. Wells' arrest, and further searches of his property on February 14, 2020; when such statements are removed, there exists no probable cause.  SAC ¶¶ 101-114.

From the conflict between Wanek's testimony and Shepherd's testimony related to the receipts that Shepherd never had nor sent to Wanek, discussed *supra*, at 5-6, when Wanek applied for and received the warrants on February 14, 2020, Wanek had no reason to believe the Rifle Plate was stolen, had no reason to believe Mr. Wells stole it, had no reason to believe Mr. Wells may have received it knowing to be stolen, and he had no reason to believe the Rifle Plate had a value above $500.00.  In fact, Wanek had affirmative knowledge the value of the plate was substantially lower than $500.00 due to its facially obvious condition and age, with the stamps indicating it was nearing a decade old, and the Ceradyne Receiving Report indicating its value was $471.38,[7] and Wanek falsely stated it was above $500.00.

Wanek's actions were not mere mistakes, not bad guesses, were not good-faith mistakes, were not good-faith reliance upon another officer, and were not negligence; such conduct demonstrated Wanek knowingly crossed bright lines in violation of Mr. Wells' Fourth Amendment rights that were clearly established on February 10, 2020, and thereafter.

### SECTION III – WANEK'S FOURTH AMENDMENT VIOLATIONS.

Plaintiff's SAC contained well-pleaded allegations of both Fourth Amendment violations and, also, Malicious Prosecution.  Wanek's Fourth Amendment violations are, as outlined in

---

[7] *See* **Exhibit 3**.

Plaintiff's SAC, in summary:

1) unreasonably searching Mr. Wells' property when Wanek converted it from "safekeeping" to "evidence" without a warrant, without probable cause, with plenty of time to receive a warrant and go through the proper procedures, and without any exception to the Fourth Amendment;

2) seeking and obtaining warrants without probable cause based upon the false and misleading statements as pleaded in the SAC;

3) causing the unreasonable searches and seizures on and after February 18, 2020;

4) causing unreasonable searches and seizures of Plaintiff and his property based upon on facially false statements such as Mr. Wells having chemicals to make his skin bulletproof; and,

5) unreasonably valuing the Rifle Plate above $500.00.

<u>WANEK-SHEPHERD DISPUTE.</u>

In attempting to rebut the claims of the Fourth Amendment violations well-pleaded in the SAC, Wanek asserts that he reasonably relied upon information from Shepherd about the origin, history, and value of the Rifle Plate.  However, Shepherd and Wanek's testimony were in direct contradiction to each other.  Wanek alleged he received emails of receipts and documents, but Shepherd explicitly stated he had no such documents and was relying exclusively on assumption and speculation.  SAC ¶ 88.  *See also* Prelim. Hrn'g. Tr. 43:17 – 44:8, March 16, 2020.[8]  Wanek proceeds to claim he is entitled to rely on *fellow officers* – such claims should be summarily ignored due to the flat contradictions between Shepherd's testimony and Wanek's testimony on March 16, 2020.

---

[8] Attached as **Exhibit 5**.

WHAT DID WANEK KNOW, AND WHEN DID HE KNOW IT?

Furthermore, the timeline of events is substantially important in the consideration of what Wanek knew and when he knew it.  On February 10, 2020, Wanek knew nothing about the Rifle Plate from Shepherd; he knew nothing about it except for what he could see on its face.  The fact that Wanek could see the Rifle Plate's face was *already a violation of the Fourth Amendment because it was secured inside a closed container*.  As demonstrated in the photographs of the Rifle Plate, it states its own criteria for when it is unserviceable, not an uncommon thing to find on military equipment; notably, the condition of the cover and whether the tile material is exposed, as can be seen from the photographs.  SAC ¶¶ 108-110.  The proper valuation method, that is expected to be put on by expert testimony, is that law enforcement officers are educated to use the reasonable market value of the item at the time of the suspected larceny.

> [In *Dunn v. Commonwealth*] the Virginia Supreme Court reversed a conviction of grand larceny where the only evidence of the value of the stolen item, a ten-year-old television set, was its original cost.  The Court stated 'without a showing of the effect of age and wear and tear on the value of an item such as a typewriter, the jury might be misled to believe that original price equals current value.'

*Berryman v. Moore*, 619 F. Supp. 853, 856 (E.D. Va. 1985) (quoting *Dunn v. Commonwealth*, 222 Va. 704 (1981)).  Wanek, instead, contorted the new or replacement purchase price from the CIF online printout[9] in April 2020.  After the misleading statements were exposed, the higher prices were justified by adding other costs to the $471.38 figure in the Ceradyne Receiving Report for the purchase in 2009.[10]  When, on the face of the Rifle Plate when Wanek held it in his hands on February 10, 2020, it would appear to the reasonable officer to be practically worthless and, if any probable cause existed to believe it were stolen, such crime would be a

---

[9] **Exhibit 6**.
[10] The Ceradyne Receiving Report is attached hereto as **Exhibit 3**.

misdemeanor, at most.  Any other conclusion by Wanek demonstrated patently unreasonable conclusions, deliberate lies, or reckless disregard.

### WANEK'S ASSERTION OF NEW MATTER.

In violation of Fed. R. Civ. P. 12(d), Wanek asserts new matter in his Motion to Dismiss by misleadingly referring to testing that Wanek was ordered by the Court to have done *months after Mr. Wells was arrested*.  Wanek claims, in violation of Fed. R. Civ. P. 12(d), that "Detective Wanek notes, however, that he, in fact, took the rifle plate to the United States Army, which tested it and declared it to be in serviceable condition."  Dkt. No. 64 n. 2.  Such assertion should be ignored by the Court at this stage because such testing and report are not self-evident and should be subject to Plaintiff's own discovery; as a preliminary matter Plaintiff proffers that the x-ray testing was done in a rush, to be completed and back to the judge by the next day, and it does not demonstrate the total serviceability or market value of the Rifle Plate in 2020; it shows, only, that the internal plate was intact.  An x-ray examination does not, for example, certify the outer covering is serviceable.

### WANEK'S POST-WARRANT CONDUCT.

Wanek asserts that Wanek's misrepresentations of Plaintiff's written apology letter on February 18, 2020, and the contents of Wanek's interview of Plaintiff on the same day cannot amount to a Fourth Amendment violation because the warrants were received on February 14, 2020.  Wanek confuses the issue.

Plaintiff included Wanek's misrepresentations *after* February 18, 2020, to preempt the claim that Wanek's Fourth Amendment violations are insulated or cut off by the Commonwealth

choosing to charge and the grand jury returning a true bill.  Raising Wanek's later testimony that include clear lies to the Court and, apparently, misleading statements to and withholding evidence from the Commonwealth are included for the purposes of showing that the grand jury returning a true bill and the Commonwealth choosing to prosecute cannot act to insulate Wanek's conduct because those decisions were done based upon Wanek's misleading and false testimony.

Wanek relies upon the *Torchinsky* opinion to say that the finding of probable cause and subsequent prosecution insulates Wanek from civil liability; however, the Fourth Circuit explained, "[t]he significance of these principles for this lawsuit is clear.  In determining whether Siwinski [the defendant-officer] is entitled to qualified immunity, the guiding principle is that 'only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.'"  *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).  Thus, Mr. Wells' SAC clearly alleged that Wanek, and the other Defendants, cannot be shielded by qualified immunity because there was no indicia of probable cause *and* there was clear evidence of impossibility, such as the unreasonable assertion of the list of chemicals to make Mr. Wells bulletproof, that Wanek, and others, relied upon to attempt to conjure probable cause.  Wanek's lies and misleading statements after February 18, 2020, are evidence of his guilty mind and the lack of probable cause before February 14, 2020, and the decision to prosecute by the Commonwealth's Attorney and the Grand Jury returning a true bill based upon Wanek's false and misleading statements cannot insulate Wanek, or the other Defendants, as a superseding intervening cause if those decisions were based upon Wanek and the other Defendants' false and misleading statements.

<u>WANEK'S EVIDENCE LAUNDERING.</u>

Wanek's sleight of hand in asserting to the Court that, in part, Wanek's assessment of probable cause was supported by information from Shepherd that Mr. Wells had been a suspect in a theft of Army property, including rifle plates, cannot be taken seriously.  Wanek is asserting to the Court that his report to Shepherd that Mr. Wells was a suspect in the theft of the Rifle Plate and ***then the subsequent*** inclusion of Mr. Wells as a suspect in Shepherd's investigation can somehow work to support Wanek's finding of probable cause.  This is argumentation by the chicken-or-the-egg paradox.  Which came first?  Wanek's probable cause or Shepherd's suspicion of Mr. Wells as a suspect?

<u>PLAINTIFF'S FEBRUARY 18, 2020, FALSE-APOLOGY LETTER.</u>

Wanek cannot rely on Plaintiff's apology letter as an inculpatory statement or admission.  Primarily, because the letter speaks for itself and does not contain any admission of any crime; at no time does Plaintiff indicate he stole the Rifle Plate, does not indicate that Mr. Wells took the Rifle Plate knowing it to be stolen, and does not indicate any evidence or intent to commit any crime.  Dkt. No. 48-5.[11]  As will come out during discovery, on February 18, 2020, prior to the letter being written and prior to the interview, Wanek falsely implied to Plaintiff that he was in possession of evidence that the Rifle Plate came from Ft. Myer.  Wanek falsely stated in his notes that he had no conversation with Mr. Wells prior to the interview starting; prior to the interview starting, however, Wanek stated to Plaintiff in the hallway and in the elevator that there was some misunderstanding about some military equipment in Mr. Wells' possession.

---

[11] The initial upload of Exhibit 5 to Plaintiff's SAC was made in error and has since been updated by the Clerk to be Plaintiff's handwritten letter.

14

Clearly implying to Mr. Wells that the Rifle Plate was the crux of the issue, Wanek then placed

Mr. Wells through extreme stress.  Being the trusting and naïve young man that he was, Mr.

Wells trusted Wanek's false assertions.  When Mr. Wells explained the truth, that he purchased

the Rifle Plate at an airsoft arena, as is extremely common for practically every airsofter to be

wearing such equipment,[12] Wanek disregarded the truth and kept putting the pressure on.

Mr. Wells then thought that maybe Wanek was telling the truth that he had information

that the Rifle Plate did come from Ft. Myer; Mr. Wells felt utterly trapped.  During the interview,

Mr. Wells confirmed to Wanek if he admitted it came from Ft. Myer, then Wanek would let him

go; Wanek functionally placed Mr. Wells in the false apprehension that he would be set free if

Mr. Wells admitted the Rifle Plate was in his belongings when he out-processed from the

military.  Even in that false story, created by Wanek's leadership, Mr. Wells still did not admit to

any crime, and he said that a federal agent, the sergeant who was overseeing other soldiers

moving Mr. Wells' property out of his barracks room, gave the Rifle Plate to Mr. Wells.  At no

time did Mr. Wells confess to any crime, provide any evidence of his involvement in any crime,

and there was no incriminating evidence of Mr. Wells having committed such crime.

### SECTION IV – WANEK'S VIOLATIONS OF Va. CODE § 19.2-59.

For the same reasons as previously stated and as outlined in Plaintiff's Opposition to the

ACPD Officers' Motion to Dismiss, which is incorporated herein by this reference, Wanek's

conduct constitutes similar violations of Virginia's code.  Again, Plaintiff commends to the

Court the Virginia Supreme Court's holding in *Cromartie v. Billings*, 298 Va. 284 (2020).

### SECTION V – WANEK'S SECOND AMENDMENT VIOLATIONS IN COUNT II.

---

[12] *See* **Exhibit 9** for two public photographs demonstrative of airsofters' typical equipment and
use of smoke grenades similar to the one in Mr. Wells' possession on February 9, 2020.

Plaintiff does not make a Takings Clause claim; the Takings Clause and First Amendment analogies in Plaintiff's SAC were included to demonstrate the flawed reasoning of the Defendants' Second Amendment argument that it is a *sui generis* constitutional provision that has practically no meaning or effect.  Similar to the recent Third Circuit opinion,[13] Plaintiff's SAC applies Defendants' arguments on the Second Amendment to practically any other provision of the Constitution to illustrate how they cannot survive any scrutiny to show that the Defendants' conduct in this case relating to Plaintiff's firearms was anything other than a violation of the Second Amendment.  Defendants attempt, for example, to say that they did not prohibit Mr. Wells from owning or purchasing other firearms, and therefore there can be no Second Amendment violation; such argument would not hold water in the interpretation of any other constitutional provisions.  For example, applying Defendants' argument to the Free Exercise clause, Defendants would similarly argue that the prohibition of the practice of Catholicism is not a violation of the First Amendment because the complaining Catholic could still practice Hinduism or Judaism.

Wanek falsely asserts to the Court the holding of *Heller*.  Notably, *Heller* was not limited to the private right to possess a handgun in an individual's home.  "There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."  *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008).  "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms."  *Id*. at 582.

Where there is no reasonable articulable fact that the firearms had any relation to any crime or to the traffic citations issued on February 9, 2020, but the firearms were seized anyway,

---

[13] *Frein v. Pa. State Police*, 47 F.4th 247 (3d Cir. 2022).

Mr. Wells' individual rights under the Second Amendment were violated.  Furthermore, the traces demonstrated the firearms were legally purchased by Mr. Wells; Wanek's conduct demonstrated an intentional deprivation of those firearms by insisting on further and further traces in an unreasonable seizure and continued holding of Mr. Wells' firearms.  It is anticipated that expert testimony will show these traces can return results in mere minutes on February 9, 2020.  Finally, Wanek's conduct in concert with the other Defendants makes him liable for the natural results of his conduct.

Wanek relies upon *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), to attempt to show that Mr. Wells had no clearly established right to keep and bear arms and, as a backdrop, an AR-15 style rifle.  However, pistols, historically, have been subject to more regulation than rifles due to their concealability and far greater use in criminal activity.  Thus, *Heller* was focused on the "District of Columbia prohibition on the possession of usable handguns in the home."  *District of Columbia v. Heller*, 554 U.S. 570, 573, 128 S. Ct. 2783, 2787-88 (2008).  "District of Columbia law also requires residents to keep their lawfully owned firearms, such as registered long guns, unloaded and dissembled or bound by a trigger lock or similar device unless they are located in a place of business or are being used for lawful recreational activities."  *District of Columbia v. Heller*, 554 U.S. 570, 575, 128 S. Ct. 2783, 2788 (2008).  Thus, not only did *Heller* clearly establish an individual right to keep and bear any bearable firearm, it observed that rifles in DC were subject to less restriction than pistols.  The right to keep and bear a rifle was already established and unquestioned.  In any event, to the extent the Fourth Circuit opinion in *Kolbe* conflicted with *Heller*, the *Kolbe* decision was dead letter upon printing.

**SECTION VI – FALSE IMPRISONMENT.**

Wanek's argumentation relating to False Imprisonment relies upon his probable cause

assessments discredited above.  As shown above, there existed no probable cause once Wanek's false and misleading statements are removed, his arrest of Mr. Wells, therefore, was not lawful. The SAC sufficiently pleads that Wanek lacked probable cause and legal justification to arrest Mr. Wells.  SAC ¶¶ 90-115, 136-147, 171, 201.  Wanek's False Imprisonment of Mr. Wells morphs, then, into the subsequent Malicious Prosecution.

### SECTION VII – MALICIOUS PROSECUTION.[14]

Wanek substantially relies upon his conclusion that his previous argumentation defeats Plaintiff's allegations.  Wanek's conclusion fails for the reasons previously articulated. Additionally, Wanek argues that because the Commonwealth elected not to pursue charges against Mr. Wells because the Circuit Court granted Mr. Wells' motion to suppress the evidence gathered on February 9, 2020, that somehow Wanek is vindicated and immune because the Circuit Court did not find that Wanek lacked probable cause.  Wanek's argument is fallacious because the fact that the Circuit Court did not opine upon Wanek's probable cause finding bears no weight, either way, on the instant action.

Wanek proceeds in his argument by first claiming that Mr. Wells does not allege sufficient facts to establish the element of malice; then in the next sentence correctly recites *exactly the opposite*.  Also, at this stage, Plaintiff is not able to establish anything.  There is no evidentiary record before the Court; there are only allegations and a small amount of supporting documents.  Mr. Wells has sufficiently alleged facts that make plausible that there was want of probable cause and reasonable articulable facts on February 10, 2020, when Wanek began violating Mr. Wells' civil rights.  Then, as Wanek learned more about the Rifle Plate, for

---

[14] There appears to be a typo in Wanek's Memorandum, it reverts to Section V.  Dkt. No. 64 at 13.

example, that it was valued at $471.38 in 2009,[15] he then proceeded to lie or withhold evidence. The exact timeline of what Wanek knew and when he knew it will be established in discovery.

Wanek attached, as supportive documentation, his notes and claims that as of February 14, 2020, they do not show that Wanek was aware that any of the information provided to him by Shepherd was unreliable or inaccurate.  Fortunately, for Plaintiff, such argument misses the import of Plaintiff's allegations.  Mr. Wells has not merely alleged that Wanek received unreliable or inaccurate information from Shepherd; Plaintiff's SAC alleged that, inter alia,

- Wanek knew of no fact that would cause in the reasonable mind of a reasonable officer the belief that any item seized on February 9, 2020, had any evidentiary support for the citations issued by Fuentes, and knew of no fact to support any probable cause to search Mr. Wells' property, however, despite such absence of any basis or cause, Wanek searched Mr. Wells' property on February 10, 2020.  SAC ¶¶ 76-87.

- Wanek was aware that it was a facially impossible allegation that Mr. Wells had "a handwritten list of chemical compounds that have potential to make the human body bulletproof or even invincible," but Wanek used such necessary falsity to attempt to establish Probable Cause.  SAC ¶¶ 96-100.

- Wanek knew, or recklessly disregarded the fact that, the Rifle Plate was unserviceable and worthless and lied about it or misled the Commonwealth's Attorney, the Magistrate(s), and the Grand Jury.  SAC ¶¶ 101-113.

- That Wanek lied or provided misleading testimony to the Magistrate(s) and Circuit Court about what he received from Shepherd.  SAC ¶¶ 88-93.  Shepherd's relevant testimony is at

---

[15] *See* Ceradyne Receiving Report at **Exhibit 3**.

43:1 – 44:8 and Wanek's testimony is at 87:2 – 88:18.  Prelim. Hrn'g. Tr. March 16, 2020.

**Exhibit 5**.

- That Wanek lied or provided misleading testimony to the General District Court about what was contained in Mr. Wells' apology letter and interview.  SAC ¶¶ 138, 147.  *See* Prelim. Hrn'g. Tr. 67:7 – 68:3, March 16, 2020.

**WHEREFORE**, the premises considered, Plaintiff Mr. Wells respectfully requests the Court DENY Wanek's Motion to Dismiss with prejudice, and for such other or additional relief as the Court may deem reasonable and just.

**Dated November 6, 2022.**

Respectfully submitted,

Curtis Wells,

By:_____/s/_____
Counsel

Matthew A. Crist, VSB No. 85922
mcrist@MACPLLC.net
Matthew A. Crist, PLLC
10432 Balls Ford Rd., Suite 300
Manassas, VA 20109
(571) 551-6859
***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this day, November 6, 2022, that the foregoing paper was filed and served with the Clerk of Court via the Court's CM/ECF system, which will send notice of such filing to all registered users.

_____/s/_____
Matthew A. Crist
***Counsel for Plaintiff***