Statement of Material Facts

In re: search of



5017 Caryn Court, Alexandria, VA (Fairfax County), apartment # 201

I, Detective Scott Wanek, hereby known as Affiant being a duly sworn law enforcement officer,

hereby declare and state:

## A. Introduction and Background

1.  I make this affidavit in support of an application for a search warrant pursuant to

    § 19.2-53, 1950 Code of Virginia, as amended, for the residence of 5017 Caryn

    Court, Alexandria, VA, apartment # (hereby **SUBJECT RESIDENCE**)

    which is located in Fairfax County, Virginia, the 2016 Ford Mustang bearing VIN

    1FA6P8CF0G5302296, and the person of WELLS. Based on the facts adduced in

    this affidavit, there is probable cause to believe that in the account described,

    there exists evidence of the offense of Receiving, etc., stolen goods in violation of

    § 18.2-108, 1950 Code of Virginia, as amended.

2.  Your Affiant is a police officer with the Arlington County Police Department and

    is currently a Detective positioned within the Criminal Investigation Section.

    During his employment as a police officer within the Arlington County Police

    Department, your Affiant has received both formal and informal training in

    criminal investigations. Your Affiant has undertaken numerous investigations

    into the same that have resulted in both arrests and convictions with Arlington

    County General District Court and Circuit Court. Your Affiant has served as a

1

PLAINTIFF'S
EXHIBIT

**7**

Task Force Officer (TFO) with the Federal Bureau of Investigation. Furthermore, your Affiant received his bachelor's degree from George Mason University with a concentration in Criminal Justice.

## TECHNICAL TERMS

1. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state or country.

b. An "Internet Protocol address," or "IP address," is a unique numeric address used to identify computers or other electronic devices on the Internet. The standard format for IP addresses consists of four numbers between 0 and 255 separated by dots, *e.g.*, 149.101.10.40. Every computer or other electronic device connected to the Internet (or group of computers using the same account to access the Internet) must be assigned an IP address so that Internet traffic, sent from and directed to a particular computer or other electronic device, is directed properly from its source to its destination.

c. Electronic email, or "email," sent over the Internet contain records of IP addresses that can be used to determine the origin and destination of the message. The "header" of an email, which is attached to the top of every email and contains IP addresses of computers or other electronic devices that have transmitted the email, may be used to identify the "path" through the Internet the email traveled from its origin to its destination. The header will often contain the IP addresses of any and all servers from which the given email "bounced" en route to

its destination. These IP addresses may be traced to determine the sender of a specific email.

    d.  A "wireless telephone," or "mobile telephone" or "cellular telephone," is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records at least the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include Global Positioning System (GPS) technology for determining the location of the device; and may record GPS data.

    e.  A "digital camera" is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    f.  A "portable media player," or "MP3 Player" or "iPod," is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.

However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

g.     A "Global Positioning System navigation device" uses GPS technology to display its current location. It often records the locations where it has been. Some GPS navigation devices (or capabilities within a wireless telephone) can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

h.     A "personal digital assistant," or "PDA," is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives.

This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

      i.     A "tablet" is a mobile computer, such as an iPad, that is typically larger than a phone yet smaller than a notebook and is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 Wi-Fi networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving email, and participating in Internet social networks.

      j.     A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## PROBABLE CAUSE

2. On February 9, 2020, at about 3:36 PM, Curtis Lavar WELLS, Jr. was contacted by Arlington County Police Officers at 1 Southgate Road in Arlington County. WELLS was outside the vehicle speaking on the telephone and pointing toward Joint Base Fort Myer Henderson Hall. WELLS drove to that location in a 2016 Ford Mustang, bearing VIN 1FA6P8CF0G5302296, without current registration and was issued a traffic summons for same. Prior to towing the vehicle, an inventory search of the vehicle was done.

3. The following items were found inside the 2016 Ford Mustang belonging to WELLS:

a.  Black Glock 19 9mm pistol, Serial Number: CWX611 (The frame had a "US" following the serial number; however, the slide only had CWX611.)

b.  Black Diamondback DB15 AR-15, Serial Number: DB1751540, equipped with a black Python butt stock, green laser attached to the 15" M-Lok hand rail, a fore grip, a Tacticon Armament red dot sight, and a rifle scope. There were 5 fully loaded 30 round P-Mag AR 5.56 magazines.

c.  DJI Phantom GL300F Drone

d.  Black Dell Latitude 3550 laptop with serial number 26857847918

e.  Multiple US Army patches

f.  Stanley Fat Max 24-inch yellow crowbar

g.  Neon orange plastic mallet hammer

h.  2 black rubber knives

i.  Pair of black gloves with padded knuckles

j.  Hard black face mask

k.  White Fortnite face mask with a red heart around the eye

l.  2 Vests with bulletproof armor

m.  **Medium Ceradyne, Inc. rifle plate with serial number: 2923205**

n.  Black drop holster compatible with the Glock 19

o.  Enola Gaye wire pull smoke grenade

p.  Texas license plate "HNM 1133"

q.  2 Midland Radio Walkie-Talkies

r.  A list of "Dark Web" web sites

s. Mail with the following addresses: 7139 Rock Ridge Ln APT L Alexandria,

VA.22315 USPS change of address- 233 Sheridan Ave 421 Barracks Ft Myer,

VA. 22211 from Navy Federal Credit Union

t. Crystal Woods parking pass in Mr. Wells' name

u. Handwritten list of Mr. Wells' weapons and equipment fund that he had and/or

needed to purchase

v. Tan leather women's Michael Kors purse

w. A handwritten list of chemical compounds that have potential to make the human

body bulletproof or even invincible

4. WELLS recovered his 2016 Ford Mustang from the contractor lot on or about February

10, 2020 and is currently in possession of the vehicle.

5. A check of WELLS military records found he had been assigned to Echo Company, 4/3

Infantry Regiment "The Old Guard", Fort Myer, Virginia but had been separated from the

US Army on or about May 3, 2019 for Patterns of Misconduct, with a General Under

Honorable Conditions discharge (this discharge is one step below a normal Honorable

Discharge). As part of WELLS separation, he was required to surrender all issued

military equipment.

6. Your Affiant learned that US Army soldiers are specifically briefed that they are not

allowed possess US Army issued body armor plates upon and after separation from the

US Army.

7. Your Affiant learned that after WELLS cleared the Fort Myer equipment issue surrender

process, he was given a 'statement of no charges', meaning that WELLS had returned all

issued equipment and did not owe the US Army for missing equipment.

8. Your Affiant learned that the Medium Ceradyne, Inc. rifle plate with serial number: 2923205, found in WELLS' possession, was purchased by the US Army from Ceradyne on or about June 10, 2011. The value for one plate is $590.00 US.

9. Your Affiant learned that DOD Policy identifies the Medium Ceradyne, Inc. rifle plate as a 'DEMIL D' item, meaning that they are not resold to the civilian market. Upon determination that they are no longer of use they are transferred to the appropriate US Army facility and destroyed.

10. Your Affiant learned that Joint Base Myer-Henderson Hall Police Department Investigations Branch did a search for cases of stolen property with a focus on Medium Ceradyne, Inc. rifle plates and discovered a Larceny of Government and Personal Property Case #00421-2019-MPC041 reported on March 29, 2019. This case occurred in Echo Company, 4/3 Infantry Regiment shortly before WELLS departure from the US Army. A review of the Case found several pairs of Medium Ceradyne, Inc. rifle plates were stolen along with a large amount of US Government and personal tactical equipment, the total value over $5,000.00 US. Because of this recent incident, WELLS has been identified as a "Person of Interest" in the 2019 Larceny case due to his possession of a similar plate and the proximity of his departure from the Military.

11. You Affiant believes that WELLS is in possession of several pairs of Medium Ceradyne, Inc. rifle plates that were reported stolen from the US Army, in addition to other tactical gear owned by the US Army.

12. Since WELLS cannot physically bear such a large amount of military equipment on his own, your Affiant believes that WELLS will attempt to sell this equipment to 3rd parties.

13. You Affiant knows from his training and experience that suspects attempting to buy and sell stolen property tend to use personal communication devices, such as personal computers and smartphones, to coordinate the sales.

**Additional Information Regarding the SUBJECT RESIDENCE and the 2016 Ford Mustang bearing VIN 1FA6P8CF0G5302296**

14.     Based on my training and experience, a person sending an email must use a computer or mobile device, such as a tablet or wireless telephone, to transmit such communications. Furthermore, in my training and experience, these devices typically travel with a subject or remain in their residence. It is therefore, reasonable to believe that computers, tablets, wireless telephones, and other electronic storage media may be present in the **SUBJECT RESIDENCE or the 2016 Ford Mustang bearing VIN 1FA6P8CF0G5302296**. Further, because it is possible to store certain mobile devices, such as removable storage media and wireless telephones, in a pocket, it is reasonable to believe that mobile devices may be found on the person of **Curtis Lavar WELLS, Jr.**

15. Through my training and experience, I am familiar with cybercrime actors using numerous email accounts. Often times, they will create and use "criminal" accounts to make threats, obtain contraband, or commit fraud, while using and maintaining "legitimate" accounts to conduct lawful activities, such as registering for social media accounts open to the public.

**SUBJECT RESIDENCE**

16.     The **SUBJECT RESIDENCE** includes the residence located at 5017 Caryn Court Apartment 201 in Fairfax County, Virginia. The apartment has a light beige door and brushed silver door knob. The door has a peep hole situated in the upper middle portion of the

door and a door knocker just above. There is a navy blue rectangular placard directly to the left of the door, which reads "████" in lightly colored letters.

17. Your Affiant knows that the SUBJECT residence is resided in by WELLS due to the information provided by a leasing representative for the property located at 5017 Caryn Ct Alexandria, VA regarding individual Curtis L. WELLS, DOB 07/22/1998.

18. The leasing office representative which is employed by Gates Hudson Real Estate queried WELLS by name and date of birth and stated that records indicate that he is currently listed as a tenant at 5017 Caryn Ct. apt 201 Alexandria, VA.

19. As of 1159 on 02/14/2020 a Red Ducati motorcycle bearing Virgina license plate Z40255 and a black Mustang bearing VIN 1FA6P8CF0G5302296 are parked directly in front of the address 5017 Caryn Ct Alexandria, VA. A Virgina DMV query of the motorcycle bearing plate Z40255 indicates that it is currently register to Curtis Levar Wells and is valid until 04/30/2021. A query of the Vin# belonging to the Black Ford Mustang matches with that which was operated by subject Curtis Wells during a police contact with Arlington County Police Department on 02/09/2020.

**TRAINING AND EXPERIENCE REGARDING DIGITAL DEVICES**

20.    As described above, this application seeks permission to search for records that might be found at the **SUBJECT RESIDENCE** or on the person of **WELLS**, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive, tablet, or other electronic device or storage media (including scanners and printers with memory capabilities). Another form in which the records might be found is data stored on a wireless telephone. Thus, the warrant applied for would authorize the seizure of computers,

tablets, wireless telephones, and other digital devices or storage media (hereinafter, "digital

devices"),[1] and the copying of electronically stored information.

21.    As described above, I submit there is probable cause to believe that digital devices

will be found at the **SUBJECT RESIDENCE** or on the person of **WELLS**. Based on my

training and experience, a person who sends an email message (like the communications

described above), must do so via a digital device capable of connecting to the Internet, such as a

computer, tablet, or wireless device. Because the IP address associated with the communication

described above traces back to the **SUBJECT RESIDENCE**, it is reasonable to believe that one

or more digital devices are present in the **SUBJECT RESIDENCE** or on the person of **WELLS**.

22.    If digital devices are found at the **SUBJECT RESIDENCE** or on the person of

**WELLS**, there is probable cause to believe those records will be stored on those devices for at

least the following reasons:

　　　a.    Based on my knowledge, training, and experience, I know that wireless

telephones have capabilities that allow them to serve as: telephones, as described above in

Paragraph 11(d); digital cameras, as described above in Paragraph 11(e); portable media players,

as described above in Paragraph 11(f); GPS navigation devices, as described above in Paragraph

11(g); and PDAs, as described above in Paragraph 11(h). In my training and experience,

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of
storing or processing data in digital form, including central processing units; desktop, laptop,
notebook, and tablet computers; personal digital assistants; wireless communication devices,
such as telephone paging devices, beepers, mobile telephones, and smart phones; digital
cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters,
monitors, and drives intended for removable media; related communications devices, such as
modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks,
memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog
tapes such as VHS); GPS devices and navigation systems; and security devices.

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

        b.     Further, based on my knowledge, training, and experience, I know that digital devices—like computers, tablets, wireless telephones, and other electronic devices or storage media—can store information for long periods of time. Similarly, things that have been viewed on the Internet via a device are typically stored for some period of time on the device. This information sometimes can be recovered with forensic tools.

     23.    As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital device found at the **SUBJECT RESIDENCE** or on the person of **WELLS** because:

        a.     Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. There are so many types of digital devices and software programs in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched.

        b.     Digital data is particularly vulnerable to inadvertent or intentional modification or destruction. Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden,"

erased, compressed, encrypted, or password-protected data. As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is essential to conducting a complete and accurate analysis of data stored on computers, tablets, wireless telephones, or other electronic devices or storage media devices.

     c.    The volume of data stored on many digital devices will typically be so large that it will be highly impractical to search for data during the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 500 or more gigabytes are now commonplace. Consequently, just one device might contain the equivalent of 250 million pages of data, which, if printed out, would completely fill three 35' x 35' x 10' rooms to the ceiling. Further, a 500 gigabyte drive could contain as many as approximately 450 full run movies or 450,000 songs.

     d.    Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files saved to a hard drive can be stored for years with little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. Normally, when a person deletes a file from a digital device, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, *i.e.*, space on a hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space, for long periods of time before they are overwritten. In addition, a device's operating system may also keep a record of

deleted data in a swap or recovery file. Similarly, files that have been viewed on the Internet are often automatically downloaded into a temporary directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently downloaded or viewed content. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment. Recovery also can require substantial time.

       e.      Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications and materials contained on the digital devices are, as described further in the attachments, called for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole. Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, email programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the

times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

        f.     Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device. For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device. Evidence of the absence of particular data on a computer, tablet, wireless telephone, or other electronic device or storage media device is not segregable from the digital device. Analysis of the device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment and can require substantial time.

        g.     Digital device users can attempt to conceal data within digital devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Digital device users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, digital device users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by

using steganography a digital device user can conceal text in an image file that cannot be viewed when the image file is opened. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. A substantial amount of time is necessary to extract and sort through data that is concealed, encrypted, or subject to booby traps, to determine whether it is evidence, contraband or instrumentalities of a crime. In addition, decryption of devices and data stored thereon is a constantly evolving field, and law enforcement agencies continuously develop or acquire new methods of decryption, even for devices or data that cannot currently be decrypted.

2020 FEB 19  PM 2: 55
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA
FILED
CRIMINAL

~~24.   that would establish successive failed attempts to the requirement to use the authorized passcode or password.~~

~~25.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.~~

**Basis for Facts contained in this Affidavit**

26. Your Affiant makes this affidavit, in part, based on personal knowledge derived from my participation in this investigation, and in part, based upon information form the following sources:

    a.  Keith Shepherd who is a Fort Myer Detective in good standing and has knowledge of this investigation.

    b.  Special Agent Charles Starr who is a Task Force Officer with the FBI in good standing and has knowledge of this investigation.

**CONCLUSION**

27.   Your Affiant has not set forth each and every fact learned during the course of his investigation. Rather, your Affiant has set forth only those facts believed to be necessary to establish probable cause for the issuance of a search and seizure warrant based on this affidavit.

28.   For all the reasons described above, there is probable cause to believe the items listed in Attachment B, are evidence, fruits, and instrumentalities of the offenses described in Attachment B, and will be found in a search of the **SUBJECT RESIDENCE**, the **2016 Ford Mustang bearing VIN 1FA6P8CF0G5302296**, and/or a search of **WELLS** described in the Attachments A-1, A-2, and A-3.

DET WANEK #1137
ACPD

R.E. Shop        2/14/2020   6:46 PM

## ATTACHMENT A-1

### *Premises to Be Searched*

1.  The property to be searched is located at 5017 Caryn Court #201 in Fairfax County,

    Virginia, SUSPECT RESIDENCE. The apartment has a light beige door and brushed

    silver door knob. The door has a peep hole situated in the upper middle portion of the

    door and a door knocker just above. There is a navy blue rectangular placard directly to

    the left of the door, which reads "201" in lightly colored letters.



# **ATTACHMENT A-2**

*Persons to Be Searched*

1. The persons to be searched are:

   a. Curtis Levar WELLS, 07/22/1998, black male



## **ATTACHMENT A-3**

*Vehicle to Be Searched*

1.  The vehicle to be searched is:

    a.   black Mustang bearing VIN 1FA6P8CF0G5302296



FILED
CRIMINAL
2020 FEB 19 PM 2:55
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

# ATTACHMENT B

### A.    Items to be Seized

1.    All items that constitute fruits, evidence, or instrumentalities of violations of

evidence of the offense of Receiving, etc., stolen goods in violation of § 18.2- 108, 1950 Code of

Virginia, as amended and including, but not limited to, the following:

a.    Stolen property, including Medium Ceradyne, Inc. rifle plates;

b.    records or information pertaining to the offense of Receiving, etc., stolen

goods in violation of § 18.2- 108, 1950 Code of Virginia, as amended;

c.    records or information pertaining to the possession, transfer, sale, etc. of

stolen property;

d.   records or information pertaining to the creation or communication of any

materially false statement or representation to a law-enforcement officer, who is

in the course of conducting an investigation of a crime by another;

e.    records or information relating to accounts with Internet service providers

that are affiliated with, or assigned to, the SUBJECT PERSON or the SUBJECT RESIDENCE;

f.    records or information relating to the whereabouts of the SUBJECT

PERSONS.

g.    records or information referring or relating to any storage facilities, safety

deposit boxes, mailboxes, or other locations where any of the foregoing items may be located;

h.    all containers in which the items described above may be stored,

including, but not limited to, briefcases, backpacks, bags, shoe boxes, safes, storage containers,

or tool boxes;

i.      records and information relating to the keys, codes, or combinations for any briefcases, backpacks, bags, safes, storage containers, or tool boxes in which the items described above may be stored;

2.      Computers, wireless telephones, or other electronic devices or storage media that may have been used as a means to commit the crimes under investigation;

3.      For any computer, wireless telephone, or other electronic device, storage media, or digital device (hereinafter, "DEVICE") whose seizure is otherwise authorized by this warrant, and any computer, wireless telephone, or other electronic device or storage media that contains, or in which there are, stored records or information that is otherwise called for by this warrant:

a.      evidence of who used, owned, or controlled the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat or instant messaging logs, photographs, and correspondence;

b.      evidence of software that would allow others to control the DEVICE, such as viruses, Trojan horses, and other forms of malicious software;

c.      evidence of security software designed to detect the types of malicious software described above;

d.      evidence of the lack of the types of malicious software described above, as well as evidence of the absence of security software designed to detect the types of malicious software described above;

e.      evidence indicating how and when the DEVICE was accessed or used to determine the chronological context of DEVICE access and use and events relating to the crimes under investigation;

2



f.      evidence indicating the DEVICE user's state of mind as it relates to the crimes under investigation;

g.      evidence of the attachment of the DEVICE to a computer, wireless telephone, or other electronic device or storage media;

h.      evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the DEVICE;

i.      evidence of the times the DEVICE was used;

j.      passwords, encryption keys, and other access devices that may be necessary to access the DEVICE;

k.      documentation and manuals that may be necessary to access the DEVICE or to conduct a forensic examination of the DEVICE;

l.      records of or information about Internet Protocol addresses used by the DEVICE;

m.      records of information about the DEVICE's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and,

n.      contextual information necessary to understand the evidence described in this Attachment.

4.      Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media

3