**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| CURTIS LEVAR WELLS JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:22-cv-00140-MSN-IDD |
| | ) | |
| JAVIER FUENTES, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

In their opening Memorandum, Federal Defendants laid out various issues warranting dismissal of Plaintiff's claims against them. *See* ECF No. 57 (hereinafter "Memorandum" or "Mem."). Plaintiff's Second Amended Complaint, *see* ECF No. 48 (hereinafter "Second Amended Complaint" or "SAC"), seeks to extend disfavored constitutional claims—Counts 6 and 7—under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), to new circumstances against Department of the Army ("DA") civilian law enforcement officers Michael P. Armstrong and Keith Shepherd in their individual capacities. Special factors counsel hesitation in such an extension here such as the fact that the claims are brought against military adjacent officers and an investigator, and courts have repeatedly declined to extend *Bivens* into these contexts. Further, these officers are entitled to qualified immunity as they did not violate any constitutional rights let alone any clearly established ones. Finally, as to the Federal Tort Claims Act ("FTCA") claims against the United States of America (Counts 3, 4, and 9), Plaintiff has not plausibly pleaded tort claims against the United States for the investigative and law enforcement acts of Armstrong and Shepherd, and these acts are shielded from suit by the discretionary function exception of the FTCA in any event.

In response, Plaintiff's Opposition seeks to deflect from the array of legal issues in his pleadings by raising new allegations in his responsive briefing and then asserting that there are "factual issues" precluding this Court from granting Federal Defendants' motion *to dismiss*. *See generally* ECF No. 80 (hereinafter "Opposition" or "Opp."). Plaintiff's gambit fails. Any factual "disputes" are brought by Plaintiff for the first time in his Opposition, insufficiently pleaded in any event, and contradicted by the materials incorporated in his own Second Amended Complaint. More importantly, any disputes are immaterial to the resolution of Federal Defendants' motion to dismiss. Even accepting his new allegations by way of Opposition, Plaintiff has no response to the fact that he seeks to extend *Bivens* to a new class of defendants and new claims, and Plaintiff cannot rebut well-

established caselaw holding that there are special factors counseling hesitation here. Plaintiff still cannot identify any clearly established law the officers violated, and thus they are still entitled to qualified immunity. Plaintiff still cannot point to any directive that these officers violated or rebut well-established caselaw noting the discretionary nature of their decisions, which precludes subject matter jurisdiction over the FTCA claims against the United States under the discretionary function exception. And Plaintiff still cannot show that he has pleaded the requisite malice needed to bring an otherwise disfavored malicious prosecution claim and has no rebuttal to the fact that his false imprisonment claim must be dismissed because Armstrong's alleged conduct still entitles him to qualified immunity. Plaintiff's pleadings simply fail to state a claim against Federal Defendants and fail for lack of subject matter jurisdiction, and the claims against Federal Defendants should be dismissed.

## ARGUMENT

### I.     Plaintiff Cannot State *Bivens* Claims Against Shepherd and Armstrong.

#### a.   Plaintiff Cannot Bring Disfavored *Bivens* Claims.

Federal Defendants explained in their Memorandum that Plaintiff cannot bring constitutional *Bivens* claims against Armstrong and Shepherd in their individual capacities. In rebutting this, Plaintiff recognizes that *Bivens* "is a narrow claim," and yet maligns Federal Defendants for treating it as such while arguing that the facts of *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019), *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), and *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) are factually distinguishable from his allegations. *See* Opp. at 1-2. Plaintiff misses the forest for the trees. The import of those cases is how much of a disfavored remedy *Bivens* is and how binding Supreme Court and Fourth Circuit authority have consistently rejected extending *Bivens* to new claims, defendants, and circumstances beyond those specifically recognized in *Bivens*, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980). *See* Mem. at 7-8. Far from "using an electron scanning microscope," Opp. at 1, the simple state of the law is that "expanding the *Bivens* remedy" to any circumstances other than

those precisely identified by the Supreme Court previously "is . . . a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff does not mention this principle, and regardless, his *Bivens* claims fail under the applicable two-step framework.

### i. Plaintiff Seeks to Extend *Bivens* to New Circumstances.

As exhaustively discussed in Federal Defendants' Memorandum, Plaintiff's claims present a wholly new context from *Bivens*, *Carlson*, or *Davis*, requiring the Court to move to the second step of the *Bivens* analysis. *See* Mem. at 10-12. To start, Plaintiff is attempting to have the Court recognize a Fifth Amendment due process claim against both individual capacity defendants and a claim against an investigator, to which *Bivens* has never been extended and thus these claims present a new context. *See Annappareddy*, 996 F.3d at 132-38. Plaintiff has no retort to this point whatsoever in his Opposition.[1] In addition, Plaintiff has no response to the fact that his claims against Armstrong relate to a vehicular stop and his claims against Detective Shepherd relate to an investigation, which are noticeably different from *Bivens* itself, which involved "a claim against FBI agents for handcuffing a man in his own home without a warrant." *Abbasi*, 137 S. Ct. at 1860; *see also* Mem. at 11-12.[2] These are even further from the "parallel circumstances," which the Supreme Court has recently warned would still be an extension of *Bivens*. *Egbert v. Boule*, 142 S. Ct. 1793, 1809 (2022).

Instead, Plaintiff's argument is focused on factually distinguishing Federal Defendants' cited cases and strenuously arguing that "Armstrong and Shepherd were not military officers [but] were

---

[1] At best, as to Detective Shepherd, Plaintiff argues that "Shepherd acted in concert with Wanek, Wanek consulted Shepherd, and Shepherd is liable for the natural results of his conduct, even in a *Bivens* action." Opp. at 5. Plaintiff's argument is devoid of any caselaw or necessary reference to the applicable *Bivens* two-step framework for whether a *Bivens* claim can exist against Shepherd.

[2] Here, Plaintiff reiterates the argument that he makes elsewhere in that he believes there is a factual dispute over the kind of interaction Armstrong had with Plaintiff on February 9, 2020. *See* Opp. at 4-5. Yet, even if Armstrong had not stopped Plaintiff in a community caretaker function and had actively searched his possessions, this would still be different from the circumstances in *Bivens*, to mention nothing of Detective Shepherd's alleged conduct, which bears no resemblance to *Bivens* whatsoever.

federal law enforcement officers enforcing the criminal law in a Fourth Amendment search and seizure context." Opp. at 3. But Plaintiff's premise that Armstrong and Shepherd are exactly like federal law enforcement officers generally enforcing criminal law is an incorrect, reductive argument that also ignores the Supreme Court's admonition that a new context is created where officers operate under a different "statutory or other legal mandate." *Abbasi*, 137 S. Ct. at 1860. This admonition is particularly applicable in the instant case as DA civilian police operate pursuant to Army Regulation 190-56, statutorily remain responsible to the U.S. Army, and cannot be used for general federal law enforcement. *See* 18 U.S.C. § 1385 (prohibiting "any part of the Army" being used "as a posse comitatus"); 32 CFR § 631.14 (noting DA police remain under the command of the Army even when aiding civilian law enforcement). They are thus not like the federal law enforcement personnel in *Bivens*, and Plaintiff's own allegations highlight that these officers became involved not out of a general law enforcement purpose but because of a distinct connection to their status and particularized duties as DA civilian officers; *i.e.*, Armstrong approached Plaintiff because he was near two military sites Armstrong patrolled while Shepherd investigated Plaintiff based on an allegation of stolen military equipment. *See also* ECF No. 78-5 31:17-20 (noting Shepherd's "duties and responsibilities are basically to investigate any and all instances that might have a nexus to the Department of Defense").

Plaintiff separately attempts to minimize a long line of caselaw holding that the application of *Bivens* to military and military adjacent personnel presents a new context. Plaintiff repeats the facts of *Doe v. Meron*, 929 F.3d 153 (4th Cir. 2019), and claims that the Fourth Circuit "reject[ed] applying *Bivens* [there] because the facts are too significantly different." Opp. at 3-4. This minimization is unavailing. Plaintiff omits that the Fourth Circuit in *Doe* held that the "claims [there] present[ed] a new *Bivens* context" because "in contrast to *Bivens*, the[] defendants [in *Doe*] were officers in the United States Navy or employees of the Department of Defense, operating under naval regulations." 929 F.3d at 169. Regardless of how often Plaintiff reflexively claims that Officers Armstrong and Shepherd were

general federal law enforcement, he cannot deny that they were employees of the Department of Defense ("DoD"), operating under regulations of a DoD component. Thus, *Doe* is squarely on point and makes clear that any *Bivens* claims against Armstrong and Shepherd also present a new *Bivens* context. Plaintiff otherwise scrutinizes the facts of the Supreme Court's holdings in *Chappell v. Wallace*, 462 U.S. 296 (1983) and *United States v. Stanley*, 483 U.S. 669 (1987). But he ignores that the import of these rulings is that the Supreme Court has twice explicitly declined to extend *Bivens* to claims against military or military adjacent officers. *See Abbasi*, 137 S. Ct. at 1857. The same principle applies here, and so Plaintiff's claims would open up a *Bivens* remedy into "new contexts."

### ii. Special factors counsel against implying new *Bivens* claims here.

Plaintiff largely has no response to Federal Defendants' arguments at the second step of the *Bivens* inquiry, instead presuming that he has satisfied the first step and, as such, is comfortably within existing *Bivens* caselaw. *See* Opp. at 5. Plaintiff has no retort, for instance, to the point that there is an alternative remedial structure available or to the point that the Fourth Circuit and other courts have found that special factors counsel against permitting *Bivens* claims against investigators, like Plaintiff's claim against Detective Shepherd. *See* Mem. at 14. At most, Plaintiff accuses Federal Defendants of relying on "incident to service cases" in their special factors' analysis and blithely claims that "it is dishonest and a waste of judicial resources for Federal Defendants to raise it." Opp. at 6. Putting aside the *ad hominem*, Plaintiff's allegations actually do have a connection to his military service, *see infra* Part II.b, and, in any event, Plaintiff is selectively cribbing Federal Defendants' cited caselaw, which in the *Bivens* context is not so limited to the incident to service doctrine that precludes "claims of military personnel incident to their service." *Feres v. United States*, 340 U.S. 135, 144 (1950).

Federal Defendants' cited cases stand for a much broader point that, regardless of whether claims are raised by servicemen or civilians, the Supreme Court and other courts have *repeatedly* declined to extend *Bivens* to military personnel and DoD civilian personnel and noted that any kind of

military adjacent circumstances can operate as a special factor counseling hesitation. *See Cioca v. Rumsfeld*, 720 F.3d 505, 517 (4th Cir. 2013) ("[N]o case has permitted a *Bivens* action for money damages in the military setting."). Indeed, a review of these cases demonstrates that courts have declined to apply *Bivens* in any kind of suit against military personnel and DoD civilian personnel, regardless of whether it is related to military service. *See Doe*, 929 F.3d at 169 (finding lawsuit by minor children still "arose in a military context"); *Lebron v. Rumsfeld*, 670 F.3d 540, 550 (4th Cir. 2012) (rejecting *Bivens* claim by an *enemy* combatant against military officers related to plaintiff's detention); *Doe v. United States*, 381 F. Supp. 3d 573, 618 (M.D.N.C. 2019) ("This is not an incident-to-service case."); *Heap v. Carter*, 112 F. Supp. 3d 402, 429-430 (E.D. Va. 2015) (involving claims relating to plaintiff's application for military employment and observing that "the Fourth Circuit has rejected the formalistic separation between military and non-military plaintiffs" in deciding whether a *Bivens* remedy is available). In sum, multiple special factors—not least of which is that Plaintiff brings suit against military adjacent officers—counsel hesitation in recognizing Plaintiff's *Bivens* claims, and the Court should dismiss his *Bivens* claims accordingly.

> **b. Plaintiff Fails to Identify Any Clearly Established Law Armstrong and Shepherd Violated, and They Are Entitled to Qualified Immunity.**

Even if this Court created a new *Bivens* remedy, Defendants Armstrong and Shepherd would still be entitled to qualified immunity. As Federal Defendants previously noted, under the two-step inquiry for qualified immunity a court "may exercise [its] sound discretion" to dismiss an action on clearly-established grounds without opining on whether the conduct actually violated the Constitution. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). And there is no clearly established law that precluded Armstrong and Shepherd's alleged conduct. *See* Mem. at 21-22. In fact, caselaw has held that there is no constitutional violation even if an investigator errs in his or her inferences and even if an officer effectuates a traffic stop outside of his or her jurisdiction. *See id.* (citing *Peck v. Hinchey*, 2017 WL 2929464, at *7 (D. Ariz. July 10, 2017), *Baker v. McCollan*, 443 U.S. 137, 146 (1979), *Byndon v. Pugh*, 350

F. Supp. 3d 495, 508 (N.D.W. Va. 2018), and *McLean v. Leonard*, 2016 WL 4007585, at *7 (E.D.N.C. July 26, 2016)).[3] Plaintiff's only response here is to provide newly pleaded allegations as to both officers and cursorily state—without citing any caselaw—that "[i]t is clearly established by the Fourth Amendment itself that [Plaintiff] had the constitutional right to be free from such unreasonable searches and seizures and that warrants may not issue without probable cause." Opp. at 10.

Plaintiff's complete inability to cite specific authority in support of his point that clearly established law prohibited Armstrong and Shepherd's conduct is conclusive of the fact that these officers are entitled to qualified immunity. Presumably, if the unconstitutional nature of their conduct were clearly established, Plaintiff would be able to proffer at least a single case or two in support. He offers none, and thus the qualified immunity inquiry ends. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999) (finding law was not clearly established where "[p]etitioners ha[d] not brought to . . . attention any cases of controlling authority . . . which clearly established the rule . . . nor . . . identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful"); *Edwards v. Renalds*, 2022 WL 866423, at *7 n.5 (W.D. Va. Mar. 23, 2022) ("The burden of proving clearly established law in a non-obvious case lies with the plaintiff.") (citing *City of Tahlequah v. Bond*, 142 S. Ct. 9, 12 (2021)). To the extent that Plaintiff just cites to the Fourth Amendment's general dictates as clearly establishing the law, binding Supreme Court authority has conclusively held that this is not enough to find the law clearly established. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. . . . Such specificity is especially important in the Fourth Amendment context.") (quotation omitted).

Plaintiff's only substantive arguments, instead, are that there are factual disputes precluding a motion to dismiss and that Shepherd or Armstrong violated the Constitution under the first prong of

---

[3] Plaintiff does not address these cases anywhere in his Opposition despite his overall tact of distinguishing Federal Defendants' cited cases from his own allegations in that Opposition.

the qualified immunity analysis. *See* Opp. at 6-9; *see also Saucier v. Katz*, 533 U.S. 194, 199 (2001). Although the lack of a clearly established law is determinative of Armstrong and Shepherd's entitlement to qualified immunity and Plaintiff has failed to state claims under *Bivens* at the outset, Federal Defendants briefly address below Plaintiff's arguments that there are factual disputes and that these officers engaged in constitutional violations. Neither is availing.

### i. Plaintiff's Oppositions Improperly Plead New Allegations for the First Time and/or Assert Non-Existent, Immaterial Factual "Disputes."

Federal Defendants note for the Court that there are no genuine factual disputes let alone material ones that preclude the Court from granting Federal Defendants' motion to dismiss. In the "Background" section of their Memorandum, Federal Defendants recounted Plaintiff's allegations in his Second Amended Complaint and in the materials incorporated in Plaintiff's Second Amended Complaint. Plaintiff now claims that this was done to create "factual allegations that conflict with Plaintiff's SAC," ECF No. 77 at 4 n.2, but Federal Defendants provided a more fulsome layout of what occurred because Plaintiff's pleadings provided disorganized, confusing, and sometimes inconsistent allegations of the events that give rise to Plaintiff's claims and thus Federal Defendants attempted to construct the chain of events for the Court's benefit. *See, e.g.*, Mem. at 4 n.3 ("Plaintiff's allegations are not entirely clear as to whether Armstrong searched and detained Plaintiff's vehicle[.]" (citing SAC ¶¶ 43-44)).

Seeking to muddy the waters and create non-existent factual disputes as to the merits of Plaintiff's constitutional and tort claims, Plaintiff's oppositions to the various motions to dismiss against him now plead new allegations for the first time and assert that there are factual disputes based on materials on which Plaintiff himself relies. Plaintiff's efforts are improper, incorrect, and immaterial in any event to this Court's legal analysis. Indeed, they have no bearing whatsoever on Plaintiff's inability to bring *Bivens* claims or on the various subject matter jurisdiction bars to his FTCA claims.

In his oppositions, Plaintiff raises a variety of new allegations against Officer Armstrong and

Detective Shepherd.[4] As to Officer Armstrong, Plaintiff claims that on February 9, 2020, Armstrong asked Plaintiff "a classic trope that African Americans are accustomed to hearing from white police officers," requested to see Plaintiff's license and paperwork, ordered Plaintiff to "sit tight," affirmatively participated in the search and seizure of Plaintiff's effects for 2 hours, and "initiated this encounter based upon nothing but a hunch that a black man sitting in a nice vehicle was doing something wrong." ECF No. 77 at 4-6. As to Detective Shepherd, Plaintiff alleges that Shepherd misleadingly provided the replacement price while testifying as to the purchase price of the Rifle Plate that Plaintiff was alleged to have stolen. *See* ECF No. 78 at 4-5. These newfound allegations appear nowhere in Plaintiff's Second Amended Complaint or the incorporated materials therein and cannot be raised in his Opposition because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quotation omitted). The Court should disregard them accordingly.

Plaintiff claims other "factual disputes" that preclude this Court's resolution of the motion to dismiss, but there are no genuine disputes. One such claimed "dispute" is Plaintiff's assertion that Armstrong supposedly initiated a traffic stop and then participated in a prolonged, two-hour long search of Plaintiff, but this was not alleged in his Second Amended Complaint. It is also, in fact, contradicted by the very materials that Plaintiff cites and relies on in his Second Amended Complaint. *See* ECF No. 78-5 at 9:5-9 ("Q And who else assisted with that inventory [search], if you remember? A My Recruit Officer Klein . . . Corporal Wanik, Officer Pearson, and Officer Fuentes did to some degree"); *see also* ECF No. 57-1 at 104 (noting that Officer Fuentes searched and handcuffed Plaintiff).[5]

---

[4] Plaintiff lays these allegations out in a somewhat haphazard fashion in his oppositions to the motions to dismiss directed at the Arlington County Defendants, *see* ECF Nos. 77-78, rather than in the Opposition to Federal Defendants' motion. For the Court's ease of reference, Federal Defendants recount Plaintiff's factual allegations and arguments from those separate oppositions herein.

[5] Plaintiff now claims that "[i]n the audio recording, at approximately 4:43 and 4:45 PM mark, Armstrong can be heard participating in the baseless and unlawful search." ECF No. 77 at 6. No such

Plaintiff next claims a dispute regarding how Armstrong initiated his encounter with Plaintiff. But his allegation that Armstrong initiated his encounter based on "hunch that a black man sitting in a nice vehicle was doing something wrong," is neither pleaded in his Second Amended Complaint nor accurate based on Plaintiff's cited source materials. ECF No. 77 at 6. Indeed, in Plaintiff's incorporated materials—namely the transcript of Plaintiff's motion to suppress hearing—Armstrong stated that he approached Plaintiff as a caretaker who was initially concerned with whether Plaintiff needed assistance before then suspecting something odd was afoot *after* encountering Plaintiff. *Compare* ECF No. 57-1 13:2-14:18 (explaining Armstrong decided to approach the vehicle believing Plaintiff's movements suggested a need for assistance) *with id.* 18:15-22, 41:20-44:11 (explaining Armstrong's assessment of Plaintiff's demeanor after he approached him, which made him believe "something [was] off about the situation" and which prompted Armstrong to call ACPD).[6]

Finally, Plaintiff asserts that there is a dispute over whether Armstrong had moved his vehicle allowing Plaintiff to reverse out and leave the area where Plaintiff was parked after Plaintiff's initial encounter with Armstrong on February 9, 2020. *See* ECF No. 77 at 5. There is no such dispute, and it is not material to whether Armstrong approached Plaintiff as a community caretaker. Further, Federal Defendants' Memorandum never asserted that Plaintiff could leave the area[7] and—contrary to

---

thing is heard. During the referenced segments, an individual is heard asking Plaintiff about his military status and then noting that he would file a "report of incident." Nothing in those excerpts discuss or show Armstrong's involvement in a search of Plaintiff's effects or vehicle at all.

[6] Federal Defendants also provided the hearing testimony because Plaintiff's Second Amended Complaint gave no indication as to why Officer Armstrong approached him. Plaintiff's current claim that Armstrong approached him based on a "hunch" cites to the excerpt of the motion to suppress testimony, which explains why Armstrong contacted ACPD *after* he spoke with Plaintiff and not why Armstrong initially came up to Plaintiff on February 9, 2020. *See* ECF No. 77 at 6.

[7] Plaintiff also asserts that "[c]ontrary to the Federal Defendants' Motion to Dismiss, Armstrong did not move his vehicle – as confirmed by Fuentes' later testimony" at the motion to suppress hearing. ECF No. 77 at 5. Fuentes did not contradict Armstrong's testimony that Armstrong moved his vehicle but rather testified that Plaintiff could not have reversed out of the parking lot and left on February 9, 2020. *See* ECF No. 57-1 at 93:12-17 ("Q And your testimony was that if that Mustang backed out,

Plaintiff's claim that "Armstrong falsely stated to the Court" regarding whether Plaintiff was able to leave at the motion to suppress hearing, ECF No. 77 at 5-6—Armstrong's testimony noted that he had initially blocked in Plaintiff's vehicle, remained in the area to wait for ACPD to come, and explained the layout of where his vehicle was vis-à-vis Plaintiff's vehicle. *See* ECF No. 57-1 63:1-66:1 (explaining Armstrong's understanding of the question and noting the layout of vehicles).

### ii. Plaintiff Still Fails to Plead Constitutional Violations by Detective Shepherd and Officer Armstrong.

Even assuming Plaintiff's oppositions could amend his Second Amended Complaint, Plaintiff's pleadings still fail to allege constitutional violations against Shepherd and Armstrong, thereby entitling them to qualified immunity under the first prong of the qualified immunity analysis.

a. As to Count 6 against Detective Shepherd, Plaintiff agrees that he is bringing a malicious prosecution claim through a constitutional veil but asserts that it has been well-pleaded. As noted in Federal Defendants' Memorandum, Plaintiff's Second Amended Complaint completely lacked any allegation that Shepherd instituted any prosecution or asked for it to be instituted; indeed, that complaint only alleges that Shepherd provided (unidentified) information to the Commonwealth's Attorney that was supposedly misleading. *See* Mem. at 17. In response, Plaintiff's Opposition now newly asserts that Shepherd was consulted by state detective Wanek before Wanek went to the state magistrate judge on February 14, 2020 to pursue charges against Plaintiff and asserts that Shepherd elsewhere supposedly misled a Virginia state court and the Commonwealth's Attorney about the purchase price of the Rifle Plate that Plaintiff was charged with stealing. *See* Opp. at 7; *see* ECF No. 78 at 5.[8] As previously noted, these newfound allegations are missing from Plaintiff's Second

---

it would hit either one of those vehicles or one of those vehicles? A It could hit one of the vehicles just because the parking is like angled. So it's kind of difficult to back out -- to back straight out.").

[8] Plaintiff offers no explanation what the importance is of Shepherd allegedly misstating the purchase price versus the replacement price—apparently a difference of around $120, *see* ECF No. 78 at 5—to his prosecution. Further, Plaintiff asserts that this alleged misstatement "is sleight of hand and evinces

Amended Complaint and cannot be pleaded for the first time in his Opposition.

But even accepting these allegations, Plaintiff still cannot plausibly plead a malicious prosecution claim—let alone one premised upon the Constitution's Fourth Amendment. Plaintiff fails to plead that the misleading testimony Shepherd allegedly gave had any nexus to the decision to prosecute Plaintiff. Moreover, Plaintiff's new-assertions still do not show the "but-for and proximate causation" necessary for a malicious prosecution claim. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *see also Hamden v. Denny*, 2022 WL 824852, at *5 (W.D. Va. Mar. 18, 2022) ("[C]ourts look to whether a defendant affirmatively, actively, and voluntarily took steps to instigate or to participate in the arrest of the defendant, and whether the defendant exercised some level of control over the decision to have the plaintiff arrested.") (quotation omitted). In fact, Plaintiff's assertions seem to focus on the conduct of state detective Wanek in initiating the prosecution while noting that Shepherd just "cooperated with Wanek's investigation." Opp. at 7; *see also* ECF No. 78 at 3 (alleging "Defendant Wanek was so desperate to have Mr. Wells arrested"). That is not but-for causation by Shepherd. *See Bennett v. R & L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 512 (E.D. Va. 2010) (holding a defendant does not cause a prosecution by responding to police requests for help but rather there needs to be a showing that the defendant "[took] the original steps to initiate the proceeding . . . or by subsequently adopt[ed] and ratif[ied] the steps that others ha[d] already taken").

Finally, the probable cause that existed for Shepherd's investigative activities defeats any malicious prosecution claim. Plaintiff still fails to assert how Detective Shepherd was mistaken in initially assuming and investigating that Plaintiff's Rifle Plate, a piece of distinctly military equipment, was Army property. *See also* ECF No. 78-5 at 44:12-45:6 (noting the Rifle Plate in question was "fairly

---

a guilty mind and intentional deception," because presumably Shepherd should have known the difference. *Id.* But this conclusory statement of a "guilty mind" by Shepherd is unsupported, and it is equally plausible that such a statement could have been a mistake rather than some nefarious deception as Plaintiff now seeks to recast it as.

exclusive to the Army" and not sold publicly in Shepherd's view). And Plaintiff's admission that he kept the Rifle Plate when leaving the Army, would also support, at the very least, probable cause for Shepherd's investigation. Plaintiff now disclaims this, stating that "[n]o such admission ever took place." Opp. at 7. But the statement Plaintiff attached *to his own pleadings* indicates otherwise. ECF No. 1-3 ("I kept the plate in my possession"). In sum, Detective Shepherd did not violate Plaintiff's constitutional rights, let alone *clearly established* constitutional rights.

b.       As to Count 7 against Officer Armstrong, Plaintiff's primary argument is that Officer Armstrong did not have a "brief" encounter with Plaintiff, nor would that encounter be subject to the community caretaker exception. *See* Opp. at 7-9. Once again, Plaintiff is relying on newly pled allegations in his oppositions to assert that there was an extensive traffic stop done by Armstrong. But even accepting that Armstrong's interaction was not brief and that he was engaged in a more fulsome process, he would still be shielded by the community caretaker exception. Plaintiff's Second Amended Complaint nowhere pleads Armstrong's reason for coming up to Plaintiff's vehicle and the incorporated materials demonstrate that Armstrong believed Plaintiff was potentially in need of assistance. Seeking to avoid the application of the community caretaker exception, Plaintiff asserts that "Armstrong stated in his [motion to suppress hearing testimony] . . . [that] he was investigating the expired tag and suspicious circumstances." Opp. at 9. But, as previously noted, Plaintiff is misrepresenting that testimony; Armstrong testified that he came to Plaintiff believing that Plaintiff was in need of assistance and then, *after* encountering him, reported Plaintiff to ACPD in light of his expired tag and suspicious behavior.[9] That does not defeat the applicability of the community caretaker

---

[9] Plaintiff strangely asserts that "[t]here are no facts or allegations that support that conclusory and false set of circumstances" as to Armstrong's belief. Opp. at 8. But the pleading burden is on Plaintiff here. In any event, Plaintiff is conclusorily challenging Armstrong's *belief* that Plaintiff might have been suffering from a medical emergency, which was amply supported by Armstrong's recollection that he saw Plaintiff moving erratically and was worried Plaintiff could have been an emotionally disturbed individual in close proximity to a military base, Fort Myer. *See* ECF No. 57-1 11:19-12:4, 13:3-10.

exception, and courts applying this exception have found that even subsequent searches and seizures emanating from interactions initiated under this exception are constitutionally permissible under the Fourth Amendment  because "often noncriminal contact with automobiles will bring local officials in plain view of evidence, fruits, or instrumentalities of a crime, or contraband." *United States v. Johnson*, 410 F.3d 137, 144 (4th Cir. 2005); *see also Phillips v. Peddle*, 7 F. App'x 175, 178 (4th Cir. 2001) (citing *Cady v. Dombrowski*, 413 U.S. 433 (1973)). Thus, even if Plaintiff's new claims of an exhaustive search and seizure by Armstrong are accepted, the community caretaker exception is still applicable, and Armstrong's conduct did not violate the Fourth Amendment. More importantly, even accepting Plaintiff's newfound allegations, it is clear that there is no *Bivens* remedy against Armstrong, and he is entitled to qualified immunity because Plaintiff has pointed to no violation of clearly established law.

## II.        Plaintiff Cannot Bring FTCA Claims Against the United States.

Federal Defendants have explained (repeatedly) that any non-constitutional tort claims relating to the conduct of Officers Armstrong and Shepherd are only properly brought against the United States and that these claims should be dismissed for lack of subject matter jurisdiction and failure to state a plausible claim. In response to the fact that the United States must be substituted for any FTCA claims, Plaintiff reiterates the same argument from his motion to strike. *See* ECF Nos. 71-72. Namely, he argues that the Court is not bound by the notice of substitution filed as to these officers on Plaintiff's tort claims or the certification that these officers acted in the scope of their employment, and he argues that the claims against these officers may proceed individually. *See* Opp. at 11-12. As recounted in Federal Defendants' opposition to that motion—to which Plaintiff never filed a reply— Plaintiff has offered no *evidence* whatsoever, as he must, to rebut the certification that the officers were acting in the scope of their federal employment. Thus, the certification is conclusive. *See* ECF No. 76

at 5.[10] Furthermore, Plaintiff's claim that "there is at least some reasonable inference the Court may draw that all such conduct, as alleged in those portions of the SAC, rebuts . . . that such actions were done within the scope of their employment," Opp. at 12, is unpersuasive considering the Second Amended Complaint quite literally alleges the opposite. *See* SAC ¶ 265 ("During the time periods relevant to [Plaintiff's] claims, Shepherd and Armstrong were employees of the United States within the meaning of the FTCA and were acting within the scope of such employment.").

As an aside, Plaintiff also argues that Count Nine is not "a separate *respondeat superior* claim" but rather "arising under the FTCA and cit[ing] to Virginia's common law regarding when an employer may be held liable for the conduct of its employees." Opp. at 12. But again, Plaintiff's pleadings are to the contrary and show that he did plead a non-cognizable *respondeat superior* claim against the United States. *See* SAC ¶ 264 ("The United States is liable to [Plaintiff] under the doctrines of respondeat superior and vicarious liability for the wrongful conduct of Shepherd and Armstrong."). Moreover, Plaintiff's reformulation of Count Nine still attempts to bring the sort of vicarious liability claim that does not exist under the FTCA, which only provides suit for the conduct of a federal employee. *See Thompson v. Dilger*, 696 F. Supp. 1071, 1072 n.1 (E.D. Va. 1988) ("[T]he FTCA subjects the United States to liability only for 'negligent or wrongful acts' of a federal employee. . . . Claims of vicarious or strict liability are, therefore, excluded.") (Ellis, J.). Put a different way, because the United States can only act through its agents, *all* FTCA liability is premised upon principles of *respondeat superior*. In any event, Plaintiff's FTCA claims fail for lack of subject matter jurisdiction and fail to state a claim as

---

[10] Plaintiff notes that "the certification of the United States Attorney provides, only, a rebuttable presumption that the individual defendants were acting within the scope of their employment." Opp. at 11. Missing from that recitation though is that it is the *Plaintiff's* obligation to rebut that presumption. *See Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1155 (4th Cir. 1997) ("If the plaintiff does not come forward with any evidence, the certification is conclusive. Moreover, the plaintiff's submission must be of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation."). Plaintiff has not met that obligation here.

discussed further herein.

   a. **Plaintiff Identifies No Non-Discretionary Duty Applying to the Officers'
   Inherently Discretionary Activities that Precludes the Application of the
   Discretionary Function Exception.**

   The claims against the United States fail at the outset because the United States has not waived

sovereign immunity from suit under the FTCA as a result of the discretionary function exception, 28

U.S.C. § 2680(a). *See* Mem. at 23-26. As Federal Defendants explained: 1) Plaintiff has not identified

any non-discretionary duty or a "statute regulation, or policy [that] prescribe[d] a specific course of

action," taken by Armstrong and Shepherd; and (2) caselaw repeatedly has held that Armstrong and

Shepherd's alleged conduct involves "the judgment[s] . . . that the exception was designed to protect,

namely a judgment based on considerations of public policy." *Rich v. United States*, 811 F.3d 140, 144

(4th Cir. 2015). Plaintiff's Opposition is non-responsive on these main points and again proceeds by

distinguishing the facts of (some of) the cases cited in Federal Defendants' Memorandum without

actually addressing their legal importance or the operative legal framework. *See* Opp. at 12-14. As to

the first prong necessary for the exception to apply, the existence (or lack thereof) of a binding

directive on the challenged conduct, Plaintiff identifies no binding directive that Armstrong and

Shepherd violated. *See Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009) (noting

first condition for the exception is determined by looking at "whether the challenged conduct involves

an element of judgment or choice"). In fact, Plaintiff seems to agree that there was no "specifically

prescribe[d] . . . course of action for [them] to follow." *Id.*; *see* Opp. at 14 ("There was no policy that

Armstrong was applying, interpreting, or guided and given discretion by.").[11]

---

[11] Plaintiff provides other responses to Federal Defendants' discretionary function arguments that are
neither material nor correct. Plaintiff asserts Armstrong "believed he was without jurisdiction to
conduct a traffic stop" and that Armstrong "acted on his own prejudices and assumptions." Opp. at
14. Plaintiff's flippant accusation that Armstrong acted on prejudice is alleged nowhere in his Second
Amended Complaint. Moreover, a host of laws and regulations would have permitted Armstrong to
engage in off-post investigations and permitted Shepherd's investigative activities. *See, e.g.*, 10 U.S.C.
§ 271(a); 32 C.F.R. § 631.14; Army Reg. 190-30 ¶ 4-5.

Given the lack of any policy that prescribed Armstrong and Shepherd's conduct, the inquiry turns to "whether that judgment is of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). On this point, Plaintiff merely recites the facts of cases cited by Federal Defendants that applied the exception simply to show that the facts of those cases are not identical to Plaintiff's allegations. *See* Opp. at 13 (briefly reciting the facts of *Rich*, *Gaubert*, *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006), and *Ayala v. United States*, 982 F.3d 209 (4th Cir. 2020)). This recitation does nothing to inform the Court's analysis.[12] More importantly, Plaintiff has no response to the central thrust of those cases "that decisions by law enforcement regarding whom to investigate, how to investigate, and whether to prosecute constitute discretionary activity by government officials." *Blanco Ayala v. United States*, 386 F. Supp. 3d 635, 640–41 (E.D. Va. 2019), *aff'd*, 982 F.3d 209 (4th Cir. 2020). Even more telling, Plaintiff has no response to Federal Defendants' cited caselaw holding that negligent investigation and arrest claims against federal law enforcement officers, including in the context of military investigations, are squarely protected from suit under the discretionary function exception. *See Blakey v. U.S.S. Iowa*, 991 F.2d 148, 153 (4th Cir. 1993); *Burgess v. Watson*, 2014 WL 4540256, at *3 (M.D.N.C. Sept. 11, 2014); *see also Milligan v. United States*, 670 F.3d 686, 695 (6th Cir. 2012) (holding that "conduct in investigating and apprehending . . . was discretionary conduct that § 2680(a) intended to protect"); *Hart v. United States*, 630 F.3d 1085,

---

[12] Based on the facts of other cases he discusses, Plaintiff writes that "Armstrong and Shepherd were not implementing or making discretionary calls related to policy of banking regulation, prison inmate management policies, FBI Undercover Guidelines, or anything of the like." Opp. at 14. As the Court is undoubtedly aware, these cases are not the limit of the discretionary judgments covered by the discretionary function exception. *See Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) ("Courts have been reluctant to create formulaic categories or to demarcate flashpoints on this spectrum to illuminate which governmental decisions fall within the discretionary function exception."); *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1447 (4th Cir. 1996) (noting "the sphere of discretionary governmental action" is "sufficiently broad"). Plaintiff's observation of some factual differences between his case and others does not change that, as recognized by a wide swath of cases, he is challenging investigative and law enforcement activities that require discretionary judgment.

1090 (8th Cir. 2011) ("We readily conclude a federal law enforcement officer's on-the-spot decisions concerning how to effectuate an arrest . . . fall within the discretionary function exception to the FTCA absent a specific mandatory directive to the contrary."). In short, there is no subject matter jurisdiction over Plaintiff's FTCA claims given that they attack the kind of discretionary decisions protected by the discretionary function exception.

### b. Plaintiff's Malicious Prosecution Claim Distinctly Arises from Plaintiff's Military Background and Is Barred by the *Feres* Doctrine.

Plaintiff's malicious prosecution claim relating to the conduct of Detective Shepherd also fails separately under the *Feres* doctrine because it seeks to question a military investigation that was based on Plaintiff's status as a former service member and Shepherd's suspicion that Plaintiff stole the Rifle Plate while he was in the military. *See* Mem. at 26-28. Plaintiff's response to this argument is to survey the facts of Federal Defendants' cited cases one-by-one for the argument that *Feres* is inapplicable because Plaintiff was not an active duty soldier at the time that he was investigated. *See* Opp. at 15. But, as noted above, Plaintiff cannot deny that the investigation he takes issue with distinctly arises incident to his service, and his own Second Amended Complaint asserts that Shepherd's involvement and allegedly tortious act originated from Plaintiff's prior tenure in the military. *See* SAC ¶ 88 ("Detective Shepherd admitted the whole basis for arresting [Plaintiff] for receiving stolen property regarding this particular Rifle Plate and the conclusion that this Rifle Plate was at Ft. Myer when [Plaintiff] was at Ft. Myer."). By focusing on the fact that Plaintiff was not a service member when he was investigated, Plaintiff cribs what is the actual ambit of the *Feres* doctrine which precludes recovery for "injuries to servicemen where the *injuries arise out of* or are in the course of activity incident to service." 340 U.S. at 146 (emphasis added). And courts have found the doctrine applicable to claims by former service members whose injuries postdate their service but arise out of it. *See, e.g., Monaco v. United States*, 661 F.2d 129, 133 (9th Cir. 1981) (applying *Feres* to bar claim by former member of military for claim that radiation exposure during military service caused cancer that manifested after

military service). Indeed, the two cases Plaintiff minimizes as involving active-duty soldiers, *see* Opp. at 15, expressly held that "active duty status is *not* necessary for the 'incident to service' test to apply." *Burkins v. United States*, 865 F. Supp. 1480, 1494 (D. Colo. 1994); *see also Duggan v. Dep't of the Air Force*, 2012 WL 1884144, at *4 (S.D. Tex. May 21, 2012) (finding that the timing of a military investigation relative to plaintiff being on reserve status was immaterial). Ultimately, there is no subject matter jurisdiction over the tort claims against Detective Shepherd under either the discretionary function exception or the *Feres* doctrine.

### c. Plaintiff Still Has Not Plausibly Stated Tort Claims for False Imprisonment and/or Malicious Prosecution on the Pleadings.

Without belaboring the point for the Court, Plaintiff's false imprisonment and malicious prosecution claims fail on the pleadings for many of the same reasons as his constitutional claims.

As to Plaintiff's false imprisonment claim brought against the United States for the conduct of Officer Armstrong, Plaintiff has identified no clearly established law that Armstrong violated, which would also preclude Plaintiff's false imprisonment claim under Virginia law. *See Wingate v. Fulford*, 987 F.3d 299, 312 (4th Cir. 2021) ("Virginia's good-faith exception is congruent with the federal qualified immunity defense."). Plaintiff's Opposition has no response to this. Instead, he repeats his pleaded-by-Opposition assertion that Armstrong "admitted he was conducting an investigation of a suspected crime, of Plaintiff being a suspicious person and having an expired temporary tag, and thus the Community Caretaker exception is defeated by Armstrong's own testimony." Opp. at 16. As noted herein, not only did Plaintiff never plead this in his Second Amended Complaint, but Armstrong's motion to suppress testimony says no such thing. On the plain face of Plaintiff's Second Amended Complaint and its incorporated materials, Officer Armstrong approached Plaintiff in the kind of circumstances that would fall under the community caretaker exception, which would defeat any claim for false imprisonment. *See, e.g., Commonwealth v. Waters*, 20 Va. App. 285, 291 (1995). In any event, even if the Court could accept Plaintiff's re-telling of what he initially alleged in his Second Amended

Complaint, Plaintiff's false imprisonment claim fails because Plaintiff fails to identify authority, both as to his constitutional and his tort claim, that would have alerted Officer Armstrong that his conduct was not authorized under the law. *See Wingate*, 987 F.3d at 312.

As to Plaintiff's malicious prosecution claim brought against the United States for the conduct of Detective Shepherd, Plaintiff has no rejoinder to the fact that such claims are disfavored under Virginia law. *See Carter v. Khan*, 2015 WL 6738607, at *13 (E.D. Va. Nov. 4, 2015). Plaintiff has no response to the fact that his Second Amended Complaint fails to plead the requisite element of malice for such a claim whereby "the individual who institutes or procures the prosecution has a '*controlling* motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.'" *Wingate*, 987 F.3d at 313 (quoting *Hudson*, 497 S.E.2d at 473) (emphasis in original). And Plaintiff's Second Amended Complaint fails to plead how Detective Shepherd lacked probable cause in investigating Plaintiff. *See* Mem. at 30. Instead, Plaintiff now proffers that Shepherd had "knowledge that it was practically impossible for the Rifle Plate to have made it to Ft. Myer at the same time that Plaintiff was there." Opp. at 17. Plaintiff, however, fails to elaborate or cogently explain why this is so, pointing to new exhibits not incorporated in his Second Amended Complaint that just show the cost of the Rifle Plate and a "receiving report," *see* ECF No. 78-3, rather than some conclusive evidence that would have put Shepherd on notice that Plaintiff could not have stolen a Rifle Plate. Plaintiff's Opposition thus does little to help the vague, incoherent allegations of misconduct by Detective Shepherd in his Second Amended Complaint, and Plaintiff's malicious prosecution claim should be dismissed on this and other bases.

## CONCLUSION

For the foregoing reasons and those in their opening Memorandum, Federal Defendants respectfully request that the Court dismiss Plaintiff's claims against them for lack of subject matter jurisdiction and failure to state a claim.

Dated:  November 22, 2022                    Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

*By*:     /s/
          YURI S. FUCHS
          Assistant United States Attorney
          Office of the United States Attorney
          Justin W. Williams U.S. Attorney's Building
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Tel:     (703) 299-3872
          Fax:     (703) 299-3983
          Email:  yuri.fuchs@usdoj.gov
          *Counsel for Federal Defendants*

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this 22nd day of November, 2022, I have electronically filed the

foregoing using the CM/ECF system, which in turn sent notice to all counsel of record who are

registered with that system.


_____/s/_____
Yuri S. Fuchs
Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3872
Fax: (703) 299-3983
Email:  yuri.fuchs@usdoj.gov
*Counsel for Federal Defendants*