IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CURTIS LEVAR WELLS, JR.,

Plaintiff,

v. Case No. 1:22-cv-00140-MSN-IDD

JAVIER FUENTES, SCOTT WANEK, MICHAEL P. ARMSTRONG, ASHLEY BARNICKLE, LAUREN LUGASI, KIMBERLY SOULES, AUSTIN KLINE, JOHN VANAK, KEITH SHEPHERD, COUNTY OF ARLINGTON, JOHN AND JANE DOES 1-10 AND UNITED STATES OF AMERICA,

Defendants.

**REPLY IN SUPPORT OF ACPD OFFICER'S MOTION TO DISMISS**

On February 9, 2020, Plaintiff was contacted while sitting behind the wheel of an improperly registered vehicle outside Arlington National Cemetery and Joint Base Meyer-Henderson Hall. Plaintiff had an AR-15, 150 rounds of ammunition, a Glock handgun, masks, a smoke grenade, knives, and body armor when he was contacted by police. At the time, Plaintiff claimed he possessed these items for professional reasons.[1] Apparently acknowledging that he had no such professional obligations, Plaintiff now wishes to reframe his narrative as describing the allegedly unjustified targeting of an African American male because of his race. ECF No. 77 at 1. Plaintiff's protestations are as inconsistent with the alleged facts before the Court as they are unfair to the law enforcement officers who are Defendants in this case.

[1] ECF No. 59-1 at 4:43:20.

Plaintiff's claims against Officers Fuentes, Lugasi, Soules, Kline & Vanak[2] can be reduced to three issues: (1) Did the ACPD Officers reasonably believe they were conducting an inventory search of Plaintiff's Mustang?; (2) Did the ACPD Officers violate the Second Amendment in their approach to Plaintiff's firearms?; and (3) If so, are the ACPD Officers nonetheless entitled to qualified immunity? The evidence properly before the Court demonstrates that the officers believed they were inventorying the Mustang and that Plaintiff consented to placing his weapons in safekeeping. And Plaintiff fails to identify a single case holding that the ACPD officers violated clearly established constitutional rights in either regard. Their motion to dismiss should be granted.

**I. Plaintiff cannot rely on "concert of action" to state a claim.**

Plaintiff seeks to hold each and every individual Defendant responsible for the actions of each and every other individual Defendant in this matter simply by alleging "concert of action" among the Defendants. Plaintiff argues he can do so because tortfeasors are responsible for the "natural consequences" of their actions. ECF No. 79 at 1.

To be sure, 42 U.S.C. § 1983 defendants are responsible for the "natural and foreseeable consequences of their actions." *Shaw v. Stroud*, 13 F.3d 791, 800 (4th Cir. 1994). But Plaintiff's conclusory allegation of "concert of action" identifies no facts to support his contention that every officer's independent actions were the natural or foreseeable result of any other officer's actions. Instead, Plaintiff merely seeks to bolster his claims against one by pretending each officer committed every act described in the Second Amended Complaint. Plaintiff is attempting to proceed against Defendants as a conspiracy, without having to meet his burden of pleading the elements of such a claim. "The evidence must, at least, reasonably lead to the inference that the

[2] Officers Fuentes, Lugasi, Soules, Kline & Vanak will be referred to collectively as the "ACPD Officers."

defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Penley v. McDowell Cnty. Bd. of Ed.*, 876 F.3d 646, 658 (4th Cir. 2017) (internal quotation omitted). Plaintiff does not even assert a conspiracy claim, much less evidence to support such a meeting of the minds. As the Fourth Circuit observed in *Penley*, "There is a reason why we do not allow this level of conjecture to determine lawsuits: such adventures of the mind tend to be unreliable." *Id.* (quotation omitted).

Plaintiff, therefore, cannot rely on his mere assertion of concert of action to state a claim against any Defendant, including the ACPD Officers. Plaintiff's claims must rise and fall on the strength of specific allegations against each individual. Those allegations are plainly insufficient as to the ACPD Officers, as outlined below.

## II. Under the facts alleged by Plaintiff, Officer Fuentes reasonably relied on Armstrong's decision to detain Plaintiff.

Plaintiff's response to Officer Fuentes's reasonable reliance on Armstrong's detention of Plaintiff is to argue that Armstrong has created a "factual dispute" by stating in his Memorandum, ECF No. 57, that he did not detain Plaintiff. But the Motion before the Court is not one for summary judgment. The existence of an alleged factual dispute among defendants is no reason to deny a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) when the movant has accepted the facts as Plaintiff alleged them—that is, Plaintiff's best version of the facts—for purposes of the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation omitted).

Even were the Court to consider the testimony Armstrong submitted in support of his Motion to Dismiss, however, it unequivocally establishes that Officer Fuentes had—at a minimum—reasonable suspicion to detain Plaintiff from the moment he arrived on scene

because Armstrong informed Officer Fuentes of the issue with Plaintiff's vehicle registration. ECF No. 57-1 at 51:17-20; 52:8-11; 52:19-22; 77:20-78:4. There is no "dispute of fact," therefore, as to whether reasonable suspicion to support a traffic stop existed at the time Officer Fuentes encountered Plaintiff.

Finally, Plaintiff fails to identify any case holding that a police officer who arrives on the scene of a traffic stop already in progress violates the Fourth Amendment when he does not conduct his own independent evaluation of whether reasonable suspicion or probable cause existed at the time the stop began. Indeed, it is difficult to imagine how police officers could ever efficiently perform their responsibilities if every back-up unit were required to perform such an inquiry. As the ACPD Defendants argued in their Brief in Support of Motion to Dismiss, ECF No. 59 at 19, the case law is clear that officers may rely on the decisions of their fellow officers under these circumstances. *See United States v. Avagyan*, 164 F. Supp. 3d 864, 884 (E.D. Va. 2016); *United States v. Hensley*, 469 U.S. 221, 231 (1985)).

Plaintiff's failure to identify any contrary authority demonstrates that Officer Fuentes was not unreasonable in his response to Armstrong's call for assistance and is entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)

## III. The ACPD Officers reasonably believed they were conducting an inventory search of the Mustang.

In their Brief in Support of Motion to Dismiss, the ACPD Officers outlined, in detail, the facts supporting their reasonable belief they were conducting an inventory search, including specific citations to the audio recording of the stop establishing that fact. Plaintiff's sole response is to place his fingers in his ears and pretend he cannot hear.

Specifically, the first officer informed Plaintiff that his car had to be towed at 4:38:35 P.M. ECF No. 59-1 at 4:38:35. Ten minutes later, another officer told Plaintiff the same. *Id.* at

4:48:12. Plaintiff tried to buy the officers dinner to avoid the tow. *Id.* Plaintiff specifically discussed the location to which his car would be towed—not his home—with the officers. *Id.* at 5:02:30. And thirteen minutes later, approximately thirty-seven minutes after Plaintiff was first informed that his car would be towed, Plaintiff asked if he could just tow the car directly to his home, to which the officers unequivocally said "no" because it had to be taken to the impound lot. *Id.* at 5:15:29.

Plaintiff simply ignores every single one of these recorded interactions. Instead, he insists that the ACPD officers "knew" throughout the entirety of their interaction with Plaintiff that his vehicle would not be towed to the impound lot. The Court can ignore Plaintiff's allegations that are inconsistent with the exhibits properly incorporated into the Second Amended Complaint[3]. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails." *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation omitted)).

Plaintiff further faults the ACPD Defendants for not attaching the ACPD policy on conducting inventory searches to their Brief in Support of Motion to Dismiss. But, unlike the recording of the stop, from which Plaintiff purports to quote in the Second Amended Complaint, Plaintiff did not quote from or otherwise rely on the ACPD inventory policy. To the extent Plaintiff does rely on that policy, it is to incorrectly assert that the ACPD Officers did not follow it by failing to fill out the inventory form or document what was taken from the vehicle. Plaintiff's assertions are inaccurate as to both accounts. *See*, *e.g.*, Exhibit 1, Impound Form.

Finally, the question of whether the ACPD Officers properly followed the inventory Policy is an aside from the key issue: did the ACPD officers reasonably believe they were

[3] In fact, Plaintiff filed his Notice of Agreement with the filing of the video with audio exhibit and the Court's consideration of the exhibit by the Court for any purpose. ECF No. 75.

conducting an inventory search at the time? And if so, did the ACPD Officers violate any clearly established right of Plaintiff? Public employees are entitled to qualified immunity when they engage in a course of conduct that a reasonable official would have believed lawful. *Anderson*, 483 U.S. at 638-39. Here, the audio recording of the stop, as well as Plaintiff's inability to find another person who could take possession of his personal items, ECF No. 59-1 at 4:48:30, demonstrates that the ACPD Officers reasonably believed an inventory search of Plaintiff's Mustang was necessary.[4]

Because Plaintiff fails to cite a single case holding that a police officer who reasonably believes himself to be conducting an inventory nonetheless violated the plaintiff's or criminal defendant's clearly established constitutional rights, the ACPD Officers are entitled to qualified immunity from Plaintiff's claims related to the search of the Mustang.

**IV. The ACPD Officers precisely identified when Plaintiff consented to the placement of his firearms in safekeeping at ACPD.**

Plaintiff asserts that the ACPD Officers "fail to provide any support" for their assertion that Plaintiff consented to have his property placed in safekeeping. ECF No. 79 at 12. On the contrary, the ACPD Officers precisely identified the times at which they offered Plaintiff the option of obtaining a ride from the scene such that he could take his property with him. They repeatedly asked him over the course of forty-two minutes if he could obtain a ride. ECF No. 59-1 at 4:38:35; 4:40:10; 4:48:30 (informing Plaintiff that "you can take all your stuff"); 4:48:50

[4] The ACPD Officers first asked Plaintiff if he could call anyone to come pick both him and his property up from the scene at 4:38:35. ECF No. 59-1 at 4:38:35. In the ensuing forty-two minutes, Plaintiff attempted a single phone call to a friend before deciding that he would not pursue getting a ride from the scene any further. Moreover, even had Plaintiff obtained a ride, officers would nonetheless have had to impound the vehicle because no driver could legally operate the improperly registered Mustang on the streets of Arlington County. Plaintiff's reliance on the District of Maryland's decision in *United States v. Johnson*, No. TDC-16-0135, 2017 U.S. Dist. LEXIS 78035, at *45 (D. Md. May 22, 2017) is, therefore, inapposite, because that vehicle could still be lawfully operated.

(informing Plaintiff the officers would "prefer if somebody picked you up and you can just take whatever you need and be done with it"); 5:02:00 (asking Plaintiff if he had anyone he could call to come pick him up); 5:06:25 (asking Plaintiff who the officers could call for him). Ultimately, at 5:20:00, Plaintiff decided that he did not want to "keep [the officers] out there longer than necessary" and that he would place his items in safekeeping. *Id.* at 5:20:00.

Moreover, the officers repeatedly informed Plaintiff that they "would prefer" he not simply take and openly carry his loaded firearms down the street. *Id.* at 4:38:40; ECF No. 57-1 at 87:5-19 (testifying that Plaintiff asked if he could take his guns and "I told him he is able to, but I recommended that he do not because he didn't have anywhere to carry the guns.").

Plaintiff argues that his "cordial[ity]" should not be confused with consent. But neither should the Officers' convincing Plaintiff that it would cause a public disturbance for him to walk away from the scene with a loaded AR-15 be confused for coercion. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49 (1973) (holding that whether consent is voluntary is determined by the totality of the circumstances and knowledge of the right to refuse consent is not a prerequisite to a valid consent). Where Plaintiff was, in fact, repeatedly informed that he could take his property with him, and where officers attempted to facilitate their preferred outcome that Plaintiff take his property—including his firearms—with him from the scene, Plaintiff's ultimate decision to place the items in safekeeping cannot be fairly described as coerced.

**V. The ACPD Officers did not violate Plaintiff's clearly established Second Amendment rights.**

Plaintiff maintains that Officer Fuentes and Soules violated his Second Amendment Rights when they "seized" his firearms at the conclusion of the traffic stop on February 9, 2020.

As outlined above, *supra* § IV, Plaintiff's decision with regard to the disposition of his firearms on February 9, 2020 was not coerced.

But even had it been coerced, Plaintiff has not alleged a violation of his clearly established constitutional rights. Plaintiff's argument relies exclusively on the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and two decisions subsequent to the events at issue in this case in 2022. *Heller* did not stand for the proposition that the Second Amendment is a totally unrestricted right not subject to reasonable governmental regulation. In fact, *Heller* did not even declare that there is a constitutionally protected right to bear firearms outside the home. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022) ("In [*Heller*], we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."). A clearly established right to bear a handgun was not recognized until the *Bruen* decision in 2022.

Moreover, even in the *Bruen* decision, Justice Thomas recognized that the Second Amendment right to carry firearms is subject "to certain, reasonable, well-defined restrictions." *Bruen*, 142 S. Ct. at 2156. The reasonableness of any alleged restriction imposed by a governmental official must be viewed in light of the totality of the circumstances presented to the officer. Here, the ACPD Officers encountered Plaintiff sitting outside a military installation from which he had recently been discharged "after having difficulty adjusting to his unit and command." ECF No. 77 at 3. Plaintiff was in possession of an AR-15, a Glock handgun, 150 rounds of ammunition, masks, a smoke grenade, walkie-talkies, knives, and body armor. Plaintiff even acknowledged understanding why the ACPD Officers were "freaked out" about their encounter with Plaintiff. ECF No. 59-1 at 4:59:00. The ACPD Officers, therefore, were

reasonably concerned about Plaintiff's posing an imminent threat to public safety on February 9, 2020.

Plaintiff provides no authority for his argument that a temporary seizure of firearms—for safekeeping, from which Plaintiff could retrieve them at any time—was a clearly established unreasonable restriction of Plaintiff's Second Amendment rights under the circumstances at issue in this case in 2020. For that reason, Officer Fuentes and Officer Soules are entitled to qualified immunity from Plaintiff's claim.

## VI. Plaintiff does not state a claim for false imprisonment.

For the first time in his opposition to the ACPD Officers' Motion to Dismiss, Plaintiff asserts that it was not the *fact* of his detention, but the *length* of his detention, that constituted his "false imprisonment." ECF No. 79 at 17. "To the extent [Plaintiff] seeks to amend his complaint by raising new matters in a response to a motion, he may not do so through a brief in response to a motion to dismiss." *Porter v. Hamilton*, No. 1:20cv203, 2022 WL 619959, at *1 n.3 (E.D. Va. Mar. 2, 2022) (citing *Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017)). Moreover, Plaintiff merely asserts, without citation to a single case, or even allegations in his own Second Amended Complaint, that "two hours" was excessive for citing him for his improper registration and license issue. Plaintiff fails to account, however, for the inventory search necessitated by the fact that his vehicle could not be legally operated in Arlington County, and for the allowances the ACPD Officers made for Plaintiff to find a ride away from the scene. Plaintiff was lawfully detained pursuant to probable cause and proper process on February 9, 2020. The Second Amended Complaint does not state a claim against the Officer Defendants.

**VII. Plaintiff does not state a claim for malicious prosecution.**

Again without citation to a single case, Plaintiff argues he stated a claim for malicious prosecution against the ACPD Defendants.[5] Plaintiff argues that the ACPD Officers "materially cooperated" with his prosecution by providing "misleading notes" about his notes regarding "Bulletproof Choline Force" products. But Plaintiff does not explain how these "notes" were in any way a motivating force—or even played a role at all—in his ultimate prosecution for receiving stolen property. The ACPD Officers simply submitted reports, as well as a copy of the notes themselves to the file. ECF No. 62-5. Plaintiff provides no evidence that it was any characterization of the notes recovered during the inventory search by the ACPD officers, rather than the notes themselves or even the fact of the notes at all, that led to Plaintiff's prosecution.

Plaintiff does not allege that any of the ACPD instituted his prosecution, nor does he allege their material involvement. *Lewis v. Kai*, 281 Va. 715, 722, 708 S.E.2d 884, 889 (2011). Plaintiff, therefore, fails to state a claim and the ACPD Officers should be dismissed.

**CONCLUSION**

For the reasons outlined above, as well as the ACPD Officers' Brief in Support of Motion to Dismiss, Plaintiff has not stated a claim against the ACPD Officers. They should be dismissed from this action with prejudice.

**JAVIER FUENTES, LAUREN LUGASI, KIMBERLY SOULES, AUSTIN KLINE AND JOHN VANAK**

By Counsel

[5] Because Plaintiff does not respond to Officer Fuentes's arguments regarding the traffic citations issued on February 9, 2020, Plaintiff concedes the merits of Officer Fuentes's position and appears to have abandoned any claim based on those citations. *See Ameur v. Gates*, 950 F. Supp. 2d 905, 918 n.4 (E.D. Va. 2013) (noting that a plaintiff's failure to respond to arguments is grounds for the Court to deem them conceded).

/s/ Leslie A. Winneberger
David P. Corrigan (VSB No. 26341)
Leslie A. Winneberger (VSB No. 45040)
Blaire H. O'Brien (VSB No. 83961)
Counsel for Javier Fuentes, Scott Wanek, Ashley Barnickle,
Lauren Lugasi, Kimberly Soules, Austin Kline and John Vanak
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
lwinneberger@hccw.com
bobrien@hccw.com

**C E R T I F I C A T E**

I hereby certify that on the 22nd day of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Matthew A. Crist, Esq. (VSB No. 85922)
Matthew A. Crist, PLLC
10432 Balls Ford Road
Suite 300
Manassas, VA 20109
571-551-6859 - Phone
mcrist@MACPLLC.net

Ryan C. Samuel (VSB No. 84400)
Arlington County
One Courthouse Plaza
2100 Clarendon Blvd, Suite 403
Arlington, VA 22201
703-228-3100 - Phone
703-228-7106 - Fax
rsamuel@arlingtonva.us

Yuri S. Fuchs, Esq.
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3799 - Phone
703-299-3983 - Fax
yuri.fuchs@usdoj.gov

/s/ Leslie A. Winneberger

David P. Corrigan (VSB No. 26341)
Leslie A. Winneberger (VSB No. 45040)
Blaire H. O'Brien (VSB No. 83961)
Counsel for Javier Fuentes, Scott Wanek, Ashley Barnickle, Lauren Lugasi, Kimberly Soules, Austin Kline and John Vanak
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
lwinneberger@hccw.com
bobrien@hccw.com